Page 1

1       IN THE UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF ILLINOIS

3                EASTERN DIVISION

4    MARCELINO CENTENO,            )

5              Plaintiff,          )

6       -vs-                       )  No.  17-CV-05233

7    LVNV FUNDING, LLC and         )

8    RESURGENT CAPITAL SERVICES,   )

9    L.P.,                         )

10             Defendants.         )

11   JEANETTE AKINS,               )

12             Plaintiff,          )

13      -vs-                       )  No. 17-CV-05693

14   LVNV FUNDING, LLC and         )

15   RESURGENT CAPITAL SERVICES,   )

16   L.P.,                         )

17             Defendants.         )

18   LAURA LEMKE,                  )  No. 17-CV-05897

19             Plaintiff,          )

20      -vs-                       )  DEPOSITION OF

21   LVNV FUNDING, LLC and         )  JEANETTE AKINS

22   RESURGENT CAPITAL SERVICES,   )  JANUARY 24, 2017

23   L.P.,                         )

24             Defendants.         )  (CAPTION CONT'D)

Page 2

1    CORDELL JOHNSON,              )

2              Plaintiff,          )

3       -vs-                       )

4    LVNV FUNDING, LLC,            )  No. 17-CV-06098

5              Defendant.          )

6    HALINA PLEWA,                 )

7              Plaintiff,          )

8       -vs-                       )

9    LVNV FUNDING, LLC and         )  No. 17-CV-06676

10   RESURGENT CAPITAL SERVICES,   )

11   L.P.,                         )

12             Defendants.         )

13

14

15        The deposition of JEANETTE AKINS, called for

16   examination, taken pursuant to the Federal Rules of

17   Civil Procedure of the United States District

18   Courts pertaining to the taking of depositions,

19   taken before JOANNE KLOEPFER, CSR No. 084-001980,

20   a Notary Public within and for the County of Lake,

21   State of Illinois, and a Certified Shorthand

22   Reporter of said state, at Suite 450, 333 West

23   Wacker Drive, Chicago, Illinois, on Wednesday,

24   January 24, 2018, commencing at 1:23 p.m.

Page 3

1    PRESENT:

2         COMMUNITY LAWYERS GROUP,

3         (73 West Monroe Street, Suite 514,

4         Chicago, Illinois 60603,

5         (312) 757-1880), by:

6         HOLLY R. McCURDY,

7         hmccurdy@communitylawyersgroup.com,

8            appeared on behalf of the Plaintiffs;

9

10        BARRON & NEWBURGER, PC,

11        (7320 N. MoPac Expy, Suite 400,

12        Austin, Texas 78731,

13        (512) 649-4022), by:

14        MANUEL H. NEWBURGER,

15        mnewburger@bn-lawyers.com,

16           appeared on behalf of the Defendants.

17

18

19

20

21

22

23   REPORTED BY:  JOANNE KLOEPFER, CSR

24        CSR No. 084-001980

Page 4

1       MR. NEWBURGER:  Swear the witness.

2          (WHEREUPON, the witness was duly

3           sworn.)

4           JEANETTE AKINS,

5    called as a witness herein, having been first duly

6    sworn, was examined and testified as follows:

7           DIRECT EXAMINATION

8    BY MR. NEWBURGER:

9       Q.   Hello.  How are you today?

10      A.   Fine, thank you.  How are you?

11      Q.   Fine, thanks.  Would you mind stating

12   your name for the record, please?

13      A.   Jeanette Akins.

14      Q.   Ms. Akins, I'm Manuel Newburger and I

15   represent the defendants in this case.  I don't

16   think we've met before, have we?

17      A.   No.  Not that I know of.

18      Q.   Let me first say I know the weather is

19   -- going in and out, it's chilly, warm, whatever.

20   If you find yourself uncomfortable, I can try and

21   do something about it; but hopefully we'll keep the

22   room comfortable for you.

23      A.   I'm okay.

24      Q.   And if we need to take a break, there's



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018

5–8

Page 5

1  restrooms on this floor if you need to call a
2  break. This isn't supposed to be an ordeal.
3      A.   Okay.
4      Q.   Let me ask you, have you ever been
5  deposed before?
6      A.   Have I --
7      Q.   Have you ever been in a deposition
8  before?
9      A.   No.
10     Q.   Okay. Have you had a chance to talk to
11 your lawyer about this before now?
12     A.   A little bit, yes.
13     Q.   Okay. So you understand that the court
14 reporter is going to take down everything that we
15 say.
16     A.   Yes.
17     Q.   And that means we have to try to do a
18 couple of things. One, I have to try not to talk
19 over you and ask you not to talk over me. Because
20 if we both talk at the same time, she has to start
21 throwing things at me. She can't take us both down
22 at once. Okay?
23     A.   Okay.
24     Q.   And the second thing I need to ask you

Page 6

1  to do is answer aloud with words. Because if you
2  say uh-huh, uh-uh, shake your head, she really
3  can't get your answers down and the transcript
4  won't be accurate.
5      A.   Okay.
6      Q.   Thank you. Usually when I do a
7  deposition I find the problem with talking to
8  lawyers is we start using a bunch of words and
9  everyone gets confused about what we mean, so I
10 always try to see if at the beginning we can agree
11 on some words so you know what I mean and what I'm
12 talking about.
13         So if I say Credit One, can we agree I'm
14 talking about Credit One Bank?
15     A.   Yes.
16     Q.   And you know who that is, right?
17     A.   Yes.
18     Q.   All right. And if I talk about the
19 account, can we agree I'm talking about the Credit
20 One credit card account that had a number ending in
21 2177 that was issued in your name?
22     A.   Yes.
23     Q.   And you remember that account, right?
24     A.   Yes.

Page 7

1      Q.   It's one you opened.
2      A.   Yes.
3      Q.   Okay. And if I say LVNV, can we agree
4  that I'm referring to LVNV Funding, LLC?
5      A.   What you say now?
6      Q.   If I refer to LVNV, can we agree that
7  I'm talking about LVNV Funding, LLC? That's one of
8  the defendants in this case.
9      A.   Yes.
10     Q.   And if I say Resurgent, can we agree I'm
11 talking about Resurgent Capital Services, L.P.?
12     A.   Yes.
13     Q.   And if I say your attorneys, can we
14 agree I'm talking about Community Law Group?
15     A.   Yes.
16     Q.   Now, do you know who LVNV and Resurgent
17 are?
18     A.   Debt collectors. Debt collectors.
19     Q.   Have you ever talked to anyone from
20 LVNV?
21     A.   No, not that I can remember.
22     Q.   And have you ever talked to anyone from
23 Resurgent?
24     A.   No, not that I remember.

Page 8

1      Q.   Okay. So any communications you've had
2  with the defendants were simply in writing, nothing
3  by telephone, right?
4      A.   Right.
5      Q.   Okay. Is Jeanette Akins your full name?
6      A.   Yes.
7      Q.   Do you have a middle name or maiden
8  name?
9      A.   Harrington.
10     Q.   That's your maiden name?
11     A.   Yes.
12     Q.   And have you ever used any other names?
13     A.   No.
14     Q.   And where do you live?
15     A.   1640 North Lorel Avenue, Chicago,
16 Illinois, 60639.
17     Q.   That's L-o-r-e-l?
18     A.   Yes.
19     Q.   How long have you lived there?
20     A.   Twenty some years.
21     Q.   Is that a house you own or --
22     A.   Yes.
23     Q.   -- one that you --
24         Do you have any other addresses at which

Page 9

1 you ever reside?
2 A. Before that?
3 Q. Any other address that you live at
4 sometimes like, you know, another house that you
5 may live at, another city where you go --
6 A. No.
7 Q. -- sometimes or a place you go to
8 vacation?
9 A. No.
10 Q. Do you have any kind of personal web
11 page?
12 A. No.
13 Q. Anything on social media pages?
14 A. Like what?
15 Q. Like Facebook, My Space.
16 A. No.
17 Q. Any of those kinds of sites.
18 A. No.
19 Q. What's your date of birth?
20 A. 5/17/1959.
21 MR. NEWBURGER: And I'm going to ask you a
22 question; but, before I do, I need to say something
23 to your lawyer for the record.
24     I'm going to ask Ms. Akins for the last

Page 10

1 four digits of her Social Security number; but, for
2 the record, I stipulate if we have to file this
3 page of the transcript, we will redact that number
4 before filing.
5 MS. MC CURDY: Sure.
6 MR. NEWBURGER: Thank you.
7 BY MR. NEWBURGER:
8 Q. What are the last four digits of your
9 Social Security number?
10 A. 7960.
11 THE REPORTER: Seven nine --
12 THE WITNESS: Sixty.
13 THE REPORTER: Six zero.
14 THE WITNESS: Yes.
15 BY MR. NEWBURGER:
16 Q. And do you know your Illinois driver's
17 license number?
18 A. Not by heart.
19 Q. Do you have it with you? Is it
20 something you could get?
21 A. I don't have a driver's license. I have
22 a state ID. I don't drive.
23 Q. I'm getting there. Do you have your ID
24 with you?

Page 11

1 A. Yes.
2 MR. NEWBURGER: If you could take it out.
3 Before I ask you the question, the same
4 stipulation, that if we should have to file this
5 page, we'll redact the number.
6 BY MR. NEWBURGER:
7 Q. Can you give me the last four digits of
8 your state ID number?
9 A. 741A.
10 Q. Thank you.
11 THE REPORTER: Seven four one eight?
12 THE WITNESS: One A.
13 THE REPORTER: A as in apple?
14 THE WITNESS: Yes.
15 BY MR. NEWBURGER:
16 Q. Now, you said you've never given a
17 deposition before?
18 A. No.
19 Q. Have you ever testified before under
20 oath?
21 A. Like --
22 Q. In court, in any kind of matter where
23 you were given an oath like the court reporter did
24 before and you were asked to testify.

Page 12

1 A. (Inaudible.)
2 Q. Excuse me?
3 A. Like bankruptcy or something like that?
4 Q. That would be one place.
5 A. Yes.
6 Q. And so you've been through bankruptcy.
7 A. Yes.
8 Q. When was that?
9 A. I can't remember exactly. Back in the
10 nineties.
11 Q. And you went to what they call a first
12 meeting of creditors where you had to testify under
13 oath, right?
14 A. Yes.
15 Q. Were there any other times that you
16 testified in your bankruptcy case?
17 A. No.
18 Q. And other than your bankruptcy case, has
19 there been any other time when you've had to
20 testify in court?
21 A. No.
22 Q. Have you ever been a party to a lawsuit
23 other than this one?
24 A. In lawsuit?



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
13–16

Page 13

1    Q.   Yes.
2    A.   Yes.
3    Q.   When was that?
4    A.   2000.  I can't remember exactly, but it
5  was in 2000.
6    Q.   Where was that suit?  Was it here in
7  Cook County?
8    A.   Yes.
9    Q.   And what was the lawsuit about?
10   A.   Work injury.
11   Q.   So were you the plaintiff?  Did you file
12  that suit?
13   A.   My attorney did.
14   Q.   Who was your attorney?
15   A.   Carrie Forest (phonetic).
16   Q.   And how did that case come out?
17   A.   (Inaudible.)
18   THE REPORTER:  What?
19   THE WITNESS:  It was approved.
20  BY MR. NEWBURGER:
21   Q.   It was settled?
22   A.   Yes, it was settled.
23   Q.   Okay.  But you never testified in that
24  case.

Page 14

1    A.   No.
2    Q.   Other than that case, have you ever been
3  a party to a lawsuit besides this one?
4    A.   No.
5    Q.   And who was that case against?
6    A.   Podesta (phonetic).  Get the name right.
7  Podesta Rehabilitation Center.  Podesta.
8    Q.   P-o-d-e-s-t-a?
9    A.   B-e-t-h.
10   Q.   Oh, Bethesda.
11   A.   Bethesda Rehabilitation Center.
12   Q.   Okay.  And they're in Chicago?
13   A.   Yes.
14   Q.   How's your health today?
15   A.   Suffering.
16   Q.   I'm sorry to hear that.  Are you sick
17  or --
18   A.   Bad back.  Really bad.
19   Q.   I'm very sorry to hear that.  If you
20  need to take breaks to get up and stretch your back
21  and relieve any pressure on your back, please tell
22  me and I'll be sure we do that, okay?
23   A.   Okay.
24   Q.   I'd rather take an extra 20, 30 minutes

Page 15

1  for short breaks than have this be painful to you.
2  Okay?
3    A.   Okay.
4    Q.   Do you take any medications for your
5  back?
6    A.   Yes.
7    Q.   Do any of those medications affect your
8  memory or your ability to testify?
9    A.   No.
10   Q.   What do you take?
11   A.   Norco.
12   Q.   Anything else?
13   A.   No.
14   Q.   Other than your back, are you otherwise
15  in good health today?
16   A.   High blood pressure.
17   Q.   And what do you take for that?
18   A.   Lipico (phonetic).
19   Q.   And does that affect your memory or your
20  ability to testify?
21   A.   No.
22   Q.   Any other health issues?
23   A.   No.
24   Q.   Is there any medication that you

Page 16

1  normally would take that you didn't take because
2  you were going to give your deposition today?
3    A.   No.
4    Q.   And is there any other thing that would
5  affect your ability to testify today and be able to
6  remember things well and testify accurately?
7    A.   No.
8    Q.   Have you ever served in the military?
9    A.   No.
10   Q.   And I apologize for this.  Your lawyer
11  will tell you it's a standard question, but I
12  always feel guilty asking it.
13   A.   It's okay.
14   Q.   Other than a parking ticket, have you
15  ever been charged with a crime?
16   A.   No.
17   Q.   Okay.  Thank you.  I apologize.  It
18  always feels disrespectful and I don't mean to be.
19   A.   It's okay.
20   Q.   Where do you work?
21   A.   I'm not working.
22   Q.   When did you last work?
23   A.   2007.
24   Q.   And what was your job then?



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
17—20

Page 17

1    A.    CNA.
2    Q.    Excuse me?
3    A.    Certified nurse assistant.
4    Q.    CNA.  Okay.  And where were you doing
5  that job?
6    A.    What did I do?
7    Q.    Where did you work in that job in 2007?
8    A.    Bethesda Rehabilitation Center.
9    Q.    And why did you leave that job?
10    A.    I needed surgery.  I had an incident and
11  I needed surgery for my ankle.
12    Q.    You got hurt on the job?
13    A.    Yes.
14    Q.    What happened?
15    A.    I was doing a patient and I had injured
16  my ankle a long time ago and then it affected it,
17  the way I was positioned doing my patient.
18    Q.    That's one of those unfortunate things
19  that happens in that job, isn't it?
20    A.    Yeah.
21    Q.    So have you been disabled since then?
22    A.    Yes.
23    Q.    And is disability income your main
24  source of income?

Page 18

1    A.    Yes.
2    Q.    How long did you work for Bethesda as a
3  certified nursing assistant?
4    A.    Since 1999.
5    Q.    So you worked there continuously that
6  whole time up until you got hurt?
7    A.    No.  I was working at Norridge first.
8    Q.    Where is that?  Could you spell that?
9    A.    Norridge.  N-o-r-w-b-i-g, something like
10  that.
11    Q.    And where is that located?
12    A.    In -- it's in Norridge, Illinois.
13    Q.    Okay.  And what did you do there?
14    A.    CNA.
15    Q.    So when did you work there?
16    A.    In -- 1999 to 2003.
17    Q.    So why did you leave that job?
18    A.    Terminated.
19    Q.    I'm sorry.
20    A.    On my day off.
21    Q.    Did they give you any reason?
22    A.    Someone told (inaudible) --
23    THE REPORTER:  Someone told?
24    THE WITNESS:  A lie.

Page 19

1    MR. NEWBURGER:  A lie on her.
2    THE REPORTER:  If you could just talk louder,
3  I think it would make it easier for me.  Thank you.
4    THE WITNESS:  I'm sorry.
5  BY MR. NEWBURGER:
6    Q.    And that's when you went to work for
7  Bethesda?
8    A.    Yes.  No, not -- did I go to Bethesda
9  first?  No.  I went to the hospital, Resurrection
10  Hospital, before I went to Bethesda.
11    Q.    And where's Resurrection?
12    A.    Diversey and Central.
13    Q.    Here in Chicago?
14    A.    Yes.
15    Q.    And you were a CNA there too?
16    A.    Yes.
17    Q.    And how long did you -- during what
18  period did you work at Resurrection?
19    A.    Wow.  It was in between 2004 I think.
20  It was a short period of time.
21    Q.    And --
22    A.    2000.  I can't remember exactly what
23  year, but it was a very short time because I had
24  got ill.  And when they would go back in time and

Page 20

1  they terminated me from there from not being able
2  to come back in time, 12 weeks.
3    Q.    So you were out for an extended illness
4  and then terminated because you couldn't recover
5  fast enough?
6    A.    Right.
7    Q.    So after that how long until you went
8  back to work?
9    A.    Right after I got better.
10    Q.    And is that when you went to Bethesda?
11    A.    Yes.
12    Q.    About year would that have been?
13    A.    Had to be 2004 or '05.  2006.
14    Q.    And then you stayed at Bethesda until
15  you got hurt.
16    A.    Um-hum.
17    Q.    So have we covered every place --
18    A.    I'm sorry.  Yes.
19    Q.    -- every place you've worked since 2000?
20    A.    Yes.
21    Q.    No other part-time jobs in there with
22  all that?
23    A.    Yes.
24    Q.    Where else did you work?



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
21–24

Page 21

1    A.   I did home health care in '96 all the
2  way to '98.
3    Q.   But since 2000, have you had any
4  part-time jobs or just the jobs you told me?
5    A.   Since 2000?
6    Q.   Yes.
7    A.   No, I had jobs before then.
8    Q.   Okay. But since then.
9    A.   No.
10    Q.   You've told me everything, right?
11    A.   Right.
12    Q.   Okay. What was the lie someone told
13  about you to get you fired at Resurrection?
14    A.   What you say?
15    Q.   You said someone told a lie on you to
16  get you fired at Resurrection?
17    A.   (Inaudible). No, at Norridge.
18    Q.   At Norridge. What was the lie someone
19  told?
20    A.   What was the lie?
21    Q.   Yes.
22    A.   The person that kept the time, she told
23  them that I told them that I was going to blow the
24  place up.

Page 22

1    Q.   Did you file for unemployment when they
2  fired you?
3    A.   Unemployment, no. What happened is I
4  had got injured there at Norridge, and they was
5  being mean and I had filed a complaint against them
6  for discrimination.
7    Q.   So what came of that?
8    A.   It was settled.
9    Q.   Did you have to file a lawsuit?
10    A.   No.
11    Q.   Just that EEOC claim?
12    A.   Yes. That's when they retaliated.
13  That's when the lie was told that I said that I was
14  going to blow the place up. I don't know anything
15  about any bombs, tell nobody I was going to blow no
16  place up.
17    Q.   I'm sorry. Can you tell me what --
18  what's your highest level of education?
19    A.   Twelve.
20    Q.   And --
21    A.   High school diploma.
22    Q.   Excuse me?
23    A.   High school diploma.
24    Q.   And where was that?

Page 23

1    A.   Wells.
2    Q.   Here in Chicago?
3    A.   Yes.
4    Q.   And since college, other than getting
5  your CNA certification, have you got any other
6  formal education?
7    A.   No.
8    Q.   Any other specialized certifications or
9  trainings besides certified nursing assistant?
10    A.   No.
11    Q.   Have you discussed this case with anyone
12  other than your lawyers?
13    A.   No.
14    Q.   No family or friends you've told about
15  it?
16    A.   No.
17    Q.   Are you married?
18    A.   Yes.
19    Q.   Talked about it with your spouse?
20    A.   No.
21    Q.   How about children?
22    A.   No.
23    Q.   Don't talk about it with any kids?
24    A.   No.

Page 24

1    Q.   All right. Let's talk about this case a
2  little bit. How's that?
3    A.   Okay.
4    Q.   We'll try to get it moving and see if we
5  can get you out of here.
6         (WHEREUPON, a certain document was
7         marked Consolidated Deposition
8         Exhibit No. 13, for identification,
9         as of 01/24/2018.)
10  BY MR. NEWBURGER:
11    Q.   The court reporter has handed you what
12  is marked as Exhibit 13. Is that a document you
13  recognize?
14    A.   Yes.
15    Q.   Have you seen that before today?
16    A.   Yes.
17    Q.   When did you first see it?
18    A.   I can't remember when I first saw it. I
19  remember it sucks.
20    Q.   Did you see it before the lawsuit got
21  filed?
22    A.   Yeah. Yes.
23    Q.   Did you read it to make sure it was
24  accurate?



JEANETTE AKINS                                         January 24, 2018
CENTENO vs LVNV FUNDING                                      25–28

Page 25

1   A.   Yes.
2   Q.   And was it?
3   A.   Yes.
4   Q.   Okay.  So -- give me one moment.  If you
5   would, please turn to Paragraph 17.  That's on Page
6   Number 3.  And if you look at the upper right
7   corner here, you'll see the page numbers.  So that
8   helps a little bit.
9       MS. MC CURDY:  Did you say 17?
10      MR. NEWBURGER:  Paragraph 17.
11      MS. MC CURDY:  Yeah, right here.
12  BY MR. NEWBURGER:
13  Q.   Do you see that?
14  A.   Yes.
15  Q.   It says, "According to defendants,
16  plaintiff incurred an alleged debt for goods and
17  services used for personal purposes originally for
18  a Credit One bank consumer debt -- excuse me --
19  consumer credit account alleged debt."  Did I read
20  that right?
21  A.   Yes.
22  Q.   So you did incur a Credit One debt,
23  correct?
24  A.   Yes.

Page 26

1       (WHEREUPON, a certain document was
2           marked Consolidated Deposition
3           Exhibit No. 14, for identification,
4           as of 01/24/2018.)
5   BY MR. NEWBURGER:
6   Q.   That's for you to look at.  That's
7   Exhibit 14 the court reporter's just handed you.
8   Do you recognize this document?
9   A.   Somewhat, yes.
10  Q.   If you look at the bottom, it's got your
11  name on it, right?
12  A.   Yes.
13  Q.   And that's your address, right?
14  A.   Yes.
15  Q.   And at the top it's got your account
16  number, right?
17  A.   Yes.
18  Q.   These are copies of -- you might want to
19  flip through it and just be sure you see what all
20  is there, but these are copies of bank statements
21  on the account that you opened with Credit One,
22  right?
23  A.   Right.
24  Q.   Do you recognize these as copies of

Page 27

1   statements that were sent to you?
2       MS. MC CURDY:  He's just asking are these --
3   did Credit One send you these bank statements.  Do
4   you recognize these?  You know how they send you
5   statements every month in the mail?
6       THE WITNESS:  Uh-huh.
7       MS. MC CURDY:  These are -- he's saying that
8   these are some of your statements --
9       THE WITNESS:  Yes.
10      MS. MC CURDY:  -- that you would have gotten
11  in the mail.
12      THE WITNESS:  Yes.
13  BY MR. NEWBURGER:
14  Q.   In fact, let's break it up because there
15  actually may be a better way to get there.
16      So you applied for the Credit One --
17  A.   Yes.
18  Q.   -- credit card, right?
19      And they issued a card in your name,
20  right?
21  A.   Right.
22  Q.   And you used that card.
23  A.   Yes.
24  Q.   And when you used it, they sent you

Page 28

1   bills each month, right?
2   A.   Yes.
3   Q.   Okay.  So can you recognize these to be
4   copies of the bills that you got on your account?
5   A.   Yes.
6   Q.   All right.  Now, do you understand how
7   credit card accounts work?
8   A.   Somewhat.
9   Q.   All right.  So basically you know you
10  use your card someplace like a store --
11  A.   Yes.
12  Q.   -- and you charge it, and then the bank
13  pays the store your charges and then that's how
14  they extend credit to you.
15  A.   I understand that much.
16  Q.   They bill you and you pay them, right?
17  A.   Yes.
18  Q.   Kind of a triangle the way it works.
19  A.   Right.
20  Q.   All right.  So you used the card to make
21  purchases, right?
22  A.   Yes.
23  Q.   And, first of all, you're a nice lady;
24  you opened this account in good faith, didn't you?



JEANETTE AKINS                                                January 24, 2018
CENTENO vs LVNV FUNDING                                               29–32

Page 29

1    A.    Yes.
2    Q.    And when you used the card, you used it
3  in good faith, didn't you?
4    A.    Yes.
5    Q.    Every time you used your card, you
6  intended to pay for what you bought, didn't you?
7    A.    Yes.
8    Q.    There's not a single time you ever used
9  this credit card that you used it with the
10 intention not to pay for your purchases, is there?
11   A.    No.
12   Q.    There wasn't a single time you ever used
13 this card with a fraudulent intent, was there?
14   A.    No.
15   Q.    You wouldn't do that, would you?
16   A.    No.
17   Q.    Now, there is a time when you defaulted
18 on the card, right?
19   A.    Yes.
20   Q.    Was that because you were on disability
21 and out of work?
22   A.    Yes.
23   Q.    And you would rather not defaulted,
24 wouldn't you?

Page 30

1    A.    What you say?
2    Q.    I said you would rather not have
3  defaulted, right?
4    A.    Right.
5    Q.    In fact, you'd rather have been able to
6  keep the card and keep using it, wouldn't you?
7    A.    Yes.
8    Q.    And if you could have paid the debt, you
9  would, wouldn't you?
10   A.    Yes.
11   Q.    That's because you knew you owed it,
12 right?
13   A.    Yes.
14   Q.    Even today, if you could pay it, you
15 would, wouldn't you?
16   A.    Yes.
17   Q.    And that's because you know you owe it.
18   A.    Yes.
19   Q.    And it's your injuries that keep you
20 from being able to pay, correct?
21   A.    Yes.
22   Q.    That's what keeps you out of work,
23 correct?
24   A.    Yes.

Page 31

1    Q.    So when you had the account with Credit
2  One and you got the billing statements every month,
3  is there ever a time that you disputed one of your
4  billing statements?
5    A.    Yes. I think so, yes.
6    Q.    Do you know how you disputed the
7  statement?
8    A.    I talked to someone on the phone. I'm
9  not sure. I can't remember.
10   Q.    Did you ever write them a letter?
11   A.    I think so.
12   Q.    You do or you don't think so?
13   A.    I think so.
14   Q.    Do you remember when that would have
15 been?
16   A.    No.
17   Q.    Do you remember what the dispute was
18 about?
19   A.    The payment.
20   Q.    Did you get it taken care of?
21   A.    I don't know. I don't know. I never
22 heard back from them again.
23   Q.    How long was that before the account got
24 charged off, do you remember?

Page 32

1    A.    No.
2    Q.    So a few years before, you think?
3    A.    It could have been.
4    Q.    And after that you made your payments,
5  right?
6    A.    Yes.
7    Q.    You wanted to pay your bill.
8    A.    Yes.
9    Q.    Other than that one phone call, can you
10 remember any other time when you disputed any
11 charges on your account?
12   A.    Not that I can remember.
13   Q.    Now, do you remember getting any
14 correspondence from LVNV or Resurgent?
15   A.    Yes.
16   Q.    How many letters did you get, do you
17 remember?
18   A.    One.
19   Q.    And was that from LVNV or Resurgent?
20   A.    LVNV.
21   Q.    Did you ever get any letters from
22 Resurgent?
23   A.    Not that I know of.
24   Q.    And where is that letter? What did you



JEANETTE AKINS                                      January 24, 2018
CENTENO vs LVNV FUNDING                                      33–36

Page 33

1  do with it?
2      A.   Somewhere at home I think.
3      Q.   So you think you've still got it?
4      A.   I think.  I'm not sure.  I have papers
5  everywhere, so --
6      Q.   Did you do anything when you got that
7  letter?  Did you write back to them?
8      A.   I got in contact with community service.
9      Q.   Community Law Group?
10     A.   Yes.
11     Q.   But other than contacting Community Law
12 Group, did you send any correspondence to Resurgent
13 or LVNV about your debt?
14     A.   No.
15     Q.   And you never called them, correct?
16     A.   Correct.
17     Q.   In fact, you've never spoken to either
18 one.
19     A.   No.
20     Q.   You didn't write them and say I dispute
21 the debt.
22     A.   No.  I told them --
23     Q.   Don't tell me what you told your
24 lawyers.

Page 34

1      A.   It's hard to remember.  My memory sucks.
2      Q.   I just want to be clear.  I'm not asking
3  you what you told your lawyers.  That wouldn't be
4  right.
5           So other than what you told your
6  lawyers, you never did anything to tell Resurgent
7  or LVNV that you disputed the debt, right?
8      A.   Right.
9      Q.   And you never wrote them and said send
10 me information about the debt, right?
11     A.   No.
12     Q.   No, you didn't?
13     A.   Right.  Right.
14     Q.   You never wrote them and said I want --
15 I'm going to use a couple legal words.  You never
16 wrote and said I want verification of the debt,
17 right?
18     A.   Did I ever do that?
19     Q.   Right.
20     A.   No.
21     Q.   You never -- I'm going to use one more
22 legal term.  You never wrote and said could I have
23 validation of the debt.
24     A.   No.

Page 35

1      Q.   Okay.  Now, have you dealt with other
2  bill collectors?
3      A.   Have I?
4      Q.   Yes.
5      A.   Yes.
6      Q.   Have some of them been mean?
7      A.   Pretty much.
8      Q.   Disrespectful?
9      A.   Yes.
10     Q.   Just downright rude?
11     A.   Yes.
12     Q.   But you haven't talked to anyone at LVNV
13 or Resurgent, so they haven't been mean to you,
14 have they?
15     A.   No, I haven't talked to them.
16     Q.   They haven't been rude to you, have
17 they?
18     A.   No.
19     Q.   They haven't been disrespectful to you,
20 have they?
21     A.   Not that I recall, no.
22     Q.   Good.  I just want to make sure.  And
23 why did you decide to take the letter from LVNV to
24 Community Law Group?

Page 36

1      A.   Because I didn't (inaudible).
2      THE REPORTER:  I'm sorry.  I'm sorry.  Can you
3  start again?  Because I didn't?
4  BY THE WITNESS:
5      A.   I didn't want to mess my credit up.
6  BY MR. NEWBURGER:
7      Q.   Now, how many accounts do you have that
8  went into collections, do you know?
9      A.   No.
10     Q.   Are you still getting calls or letters
11 from collection agencies?
12     A.   No.
13     Q.   Have you paid off any of the accounts
14 that went into collections?
15     A.   (Inaudible.)
16     THE REPORTER:  I'm sorry?
17 BY THE WITNESS:
18     A.   I really can't remember any of them that
19 went into collections.
20 BY MR. NEWBURGER:
21     Q.   Can you recall any account that went
22 into collections that you actually paid?
23     A.   No, I can't remember.
24     Q.   So besides the Credit One account that



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
37–40

Page 37

1 got charged off and sold, what other accounts do
2 you have that went into collections?
3     A.    None that I can remember.
4     Q.    So what were the circumstances where you
5 talked to other bill collectors?
6     A.    They been getting me mixed up with my
7 daughter.  Her name is Janet, my name is Jeanette,
8 so they call.
9     Q.    Does she live with you?
10     A.    She used to.
11     Q.    So you get all of her collection calls?
12     A.    Yes.
13     Q.    Now, when up became disabled, did you
14 have other accounts that went into default?
15     A.    No.
16     Q.    Was this your only credit card account?
17     A.    Yes.
18     Q.    Did you have any loans that went into
19 default?
20     A.    No.
21     Q.    Did you have any loans?
22     A.    No.
23     Q.    Let me ask you, if you would, please, to
24 turn to -- if you look on Exhibit 13, you'll see

Page 38

1 there's a bunch of exhibits that come after the
2 complaint.
3     MS. MC CURDY:  In the back.
4 BY MR. NEWBURGER:
5     Q.    In the back of it.
6     A.    This one?
7     MS. MC CURDY:  Yeah.  I think it's the next
8 page before.  You're going to the letter.
9     MR. NEWBURGER:  Yes.  Exhibit E.
10     MS. MC CURDY:  Exhibit E, yeah.
11 BY MR. NEWBURGER:
12     Q.    And I'm going to ask you to take just a
13 minute to look at that exhibit and read through it.
14 Do you recognize Exhibit E?
15     A.    Yes.
16     Q.    When did you first see it?
17     A.    Today.
18     Q.    So prior to today, you've never seen
19 Exhibit E to the complaint.
20     A.    Right.
21     Q.    You didn't even know it existed, did
22 you?
23     A.    Yes.  I think so.
24     MS. MC CURDY:  Had you seen this before today?

Page 39

1     THE WITNESS:  No.
2     MS. MC CURDY:  No.
3 BY MR. NEWBURGER:
4     Q.    So you didn't even know this particular
5 letter existed.  You knew you had a lawsuit, right?
6     A.    Right.
7     Q.    But you didn't know this letter existed,
8 right?
9     A.    Right.
10     Q.    No, you didn't?
11     A.    No.
12     Q.    So let's take a look at the letter.
13 See, there's a first big paragraph there.  It says,
14 starting at the end of the second line, "This
15 client regrets not being able to pay."  That's
16 true, isn't it?
17     A.    Yes.
18     Q.    You do regret not being able to pay.
19     A.    Yes.
20     Q.    Because you told me you would if you
21 could because you know you owe it, right?
22     A.    That's right.
23     Q.    It says, "However, at this time they are
24 insolvent as their monthly expenses exceed the

Page 40

1 amount of income they receive."  Is that true?
2     A.    Yes.
3     Q.    So what's your monthly income?
4     A.    $409.
5     Q.    And what do your monthly expenses run?
6     A.    Way over that amount.
7     Q.    Excuse me?
8     A.    Way over that amount.
9     Q.    So are you falling further and further
10 behind in debt every month?
11     A.    No.
12     Q.    So how are you paying the difference?
13     A.    My husband.
14     Q.    So what does he do for a living?
15     A.    He's a car parker attendant, manager.
16     Q.    And does he make enough money to cover
17 all the expenses?
18     A.    Pretty much, yes.
19     Q.    So when all is said and done, you
20 actually manage between the two of you to have more
21 than your expenses each month?
22     A.    What you say now?
23     Q.    By the time all is said and done, do the
24 two of you together make more than your monthly



JEANETTE AKINS

January 24, 2018

CENTENO vs LVNV FUNDING

41–44

Page 41

1  expenses?

2  A.  Yes.

3  Q.  Okay.  So you're not falling behind

4  every month.

5  A.  No.

6  Q.  In fact, you've probably got some money

7  left over to spend for things, right?

8  A.  Well, we separate.  I use my money for

9  my part when I pay at the home.  He pay the rest.

10  We're not (inaudible).

11  THE REPORTER:  We're not what?

12  BY THE WITNESS:

13  A.  We're not in tune when it comes to

14  finances.  I try to do whatever I can by myself.

15  BY MR. NEWBURGER:

16  Q.  Okay.  Let's go back and look at some

17  more of the complaint.  Go back to Page 3.  If you

18  see Paragraph 18, it says, "Due to his financial

19  circumstances, plaintiff could not pay any debts

20  and the alleged debt went into default."

21  Any idea why your lawyers used the word

22  his when they're referring to you?

23  MS. MC CURDY:  Objection, speculation.

24  BY MR. NEWBURGER:

Page 42

1  Q.  Do you know?

2  A.  No.

3  Q.  Had they met with you at the time this

4  complaint was drafted?

5  A.  Yes.

6  Q.  So they knew you were a woman, right?

7  A.  Yes.

8  Q.  All right.  So Paragraph 19 says, "LVNV

9  subsequently purchased the alleged debt and through

10  its servicer Resurgent began collecting the alleged

11  debt of plaintiff."

12  So to be clear, you don't dispute that

13  LVNV owns your Credit One account, right?

14  A.  What you say now?

15  Q.  Paragraph 19, it says, "LVNV

16  subsequently purchased the alleged debt."  Do you

17  see that?

18  A.  Yes.

19  Q.  Okay.  So you don't dispute that LVNV

20  owns your account, right?

21  A.  Yes, I do.

22  Q.  You do dispute that?

23  A.  Yes.  I dispute that, right?

24  Q.  Well, you told the judge in your lawsuit

Page 43

1  that LVNV purchased the debt.  Why did you say that

2  if you dispute it?

3  A.  I don't understand the question.

4  Q.  Okay.  Let me try --

5  MS. MC CURDY:  Don't worry.  He'll rephrase.

6  BY MR. NEWBURGER:

7  Q.  So you understand your account was with

8  Credit One.

9  A.  Right.

10  Q.  And then when it got defaulted and you

11  got what they call charged off, they sold your

12  account.  Do you understand that?

13  A.  Kind of, yes.

14  Q.  Okay.  So you understand LVNV now owns

15  your account.

16  A.  They do?  Yes.

17  Q.  Okay.  That's not something that we're

18  fighting over in this case, right?

19  A.  Yes.

20  Q.  Even your lawsuit says they own it,

21  right?

22  A.  Yes.

23  Q.  Okay.  So we agree on that piece.

24  A.  Yes.

Page 44

1  Q.  Okay, good.  Let's go down to

2  Paragraph 20.  It says, "In response to collection

3  attempts by defendants" -- let me just stop there.

4  There was only one collection attempt because there

5  was only one letter and no phone calls, right?

6  A.  Right.

7  Q.  Okay.  It says, "In response to

8  collection attempts by defendants, plaintiff

9  consulted with the attorneys at Community Lawyers

10  Group, Limited, who on June 7, 2017 sent a letter

11  to LVNV indicating that the plaintiff disputed the

12  alleged debt."  And it refers to Exhibit E.

13  Now, first of all, how did you find

14  Community Law Group?  How did you know to go to

15  them?

16  A.  I had letters in the mail, different

17  people be sending different letters and stuff.

18  Q.  So they sent you solicitation to have

19  you hire them?

20  A.  Yes, I think so.

21  Q.  And do you know how they got your name?

22  A.  No.

23  Q.  Were you being sued in state court by

24  any of your creditors?



JEANETTE AKINS

CENTENO vs LVNV FUNDING

January 24, 2018

45–48

1    A.   No.

2    Q.   So you don't know why it was that

3  Community Law Group contacted you and suggested you

4  hire them?

5    A.   I contacted them.

6    Q.   Well, but you did it after you got

7  advertisements from them, right?

8    A.   Yes.

9    Q.   And you don't know what made them send

10  you their advertisements.

11    A.   No.

12    Q.   Okay.  If you look at Paragraph 22 on

13  the next page, Page 4, it says, "Plaintiff's letter

14  stated in part that the amount reported is not

15  accurate."  Do you see that?

16    A.   Yes.

17    Q.   Do me a favor and go over to Exhibit E,

18  if you would.

19    MS. MC CURDY:  Back here again.

20  BY MR. NEWBURGER:

21    Q.   That's the letter.  And if you look --

22  again, it would be the fourth line down, about a

23  third of the way over, it says, "And the debt

24  reported on the credit report is not accurate."  Do

1  you see that?

2    A.   Yes.

3    Q.   All right.  So your lawyers claim that

4  they said the amount reported is not accurate, but

5  they didn't actually say that, did they?

6    A.   What you say?

7    Q.   The letter doesn't say the amount

8  reported, it says the debt reported isn't accurate,

9  doesn't it?

10    A.   Right.

11    Q.   So what's alleged in your complaint by

12  your lawyers isn't true, is it?

13    A.   Yes.

14    Q.   It doesn't say the amount reported,

15  which is what they say the letter says.  The letter

16  says something different, doesn't it?

17    A.   I don't understand.

18    Q.   Do you see the word amount in that

19  sentence there on Exhibit E?

20    MS. MC CURDY:  He's just asking if you look in

21  here, this sentence right there, debt reported is

22  not accurate.

23  BY MR. NEWBURGER:

24    Q.   It doesn't say the amount reported.

1    MS. MC CURDY:  Does it say the word amount

2  anywhere in that sentence, like the amount of debt?

3    THE WITNESS:  Right.

4    MS. MC CURDY:  The word amount is physically

5  not in this sentence, right?

6    THE WITNESS:  Right.

7  BY MR. NEWBURGER:

8    Q.   Okay.  So what your lawsuit says is

9  wrong then, correct?

10    A.   It is?

11    MS. MC CURDY:  Objection, calls for a legal

12  opinion.

13  BY MR. NEWBURGER:

14    Q.   I'll try it differently.  When you tell

15  someone the debt reported isn't accurate, you could

16  be telling them the credit reporting agency messed

17  up, couldn't you?

18    A.   If -- say it again.

19    Q.   So when someone reads this letter and

20  they see it says the debt reported isn't accurate,

21  that could be saying that the credit reporting

22  agency has got something wrong, couldn't it?

23    A.   The credit report?

24    Q.   Yes.

1    A.   Could, I guess so.

2    Q.   A reasonable person could read it that

3  way, right?

4    A.   Right.

5    Q.   Could read it either way, right?

6    A.   Correct.

7    Q.   Okay.  But this is the letter your

8  lawyer wrote, and reasonable people could read it

9  two different ways.  That's what we agree on,

10  correct?

11    A.   Yes.

12    Q.   Okay.

13    (WHEREUPON, there was a conference

14    between the witness and counsel.)

15  BY MR. NEWBURGER:

16    Q.   Yeah, I don't know if you want to go on

17  or off the record, but I know you didn't write the

18  letter.

19    To put it differently, it's not the

20  intention of my questions to suggest that you did

21  something wrong in the way that letter is written.

22  I'm asking about the way your lawyer did it, not

23  saying you did it that way.

24    A.   Oh.



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
49–52

Page 49

1    Q.    In fact, you had nothing to do with that
2  letter, right?
3    A.    Right.
4    Q.    You didn't pick the wording, right?
5    A.    Right.
6    Q.    You didn't draft it.
7    A.    Right.
8    Q.    You didn't approve it before it went
9  out.
10    A.    Right.
11    Q.    Okay.  In fact, until today you've never
12  seen that letter in your life, right?
13    A.    Right.
14    Q.    Okay.  I just want to be clear.  I'm not
15  suggesting anything different than that, okay?
16        Now, when did you first obtain your
17  credit report pertinent to this case?
18    A.    I think it was -- I'm not sure exactly
19  what month, but I think it was May or June.
20    Q.    It was after you went and visited with
21  the lawyers, right?
22    A.    Yes, I think so.
23    Q.    And did you get the report or did they
24  get it for you?

Page 50

1    A.    Did I get my report?
2    Q.    Yes.  Did you --
3    A.    They had it.
4    Q.    They got it for you?
5    A.    Yes.
6    Q.    So you signed a form to let them --
7    A.    Yes.
8    Q.    -- get a copy of your credit report.
9    A.    Yes.
10    Q.    Okay.  And just to be clear, the account
11  balance on your credit report, do you know that
12  that balance is wrong?
13    A.    Yes.
14    Q.    How do you know that?
15    A.    Because I thought I owed them $600.
16    Q.    Well, have you made any payments on the
17  account since the bank charged it off?
18    A.    I think so.
19    Q.    Do you know when?
20    A.    No.
21    Q.    Do you have proof of any of those
22  payments?
23    A.    I probably do, but I have to go through
24  a lot of stuff to find them.  I'm so unorganized.

Page 51

1  My husband been complaining about me and my junk.
2    Q.    So --
3    A.    I be a hoarder.
4    Q.    Have you looked to see if you've got
5  proof of any payments?
6    A.    No.
7    Q.    If you did make payments, how would you
8  have made them, by check or by --
9    A.    At that time, probably been a money
10  order.  Probably would have been a money order,
11  though.
12    Q.    Let me ask you to look at Exhibit F on
13  your complaint, if you would.  That's the last
14  exhibit.  That's the credit report we're talking
15  about?
16    A.    I guess.  I don't know.
17    Q.    All right.  And it shows a balance of
18  $976, right?
19    A.    Yes.
20    Q.    Now, I'm going to ask you to do me a
21  favor.  Would you take a look at Exhibit 14.  I
22  believe that's the one with the bank statements.
23    MS. MC CURDY:  This other one.
24  BY MR. NEWBURGER:

Page 52

1    Q.    Now, if you would, on Exhibit 14, go to
2  the next to last page.  And you see there at least
3  it's telling you that the amount you could end up
4  owing is $978.  Do you see that?
5        Look in the box for the example they
6  give you, but it's showing if you made no
7  additional charges --
8    A.    Oh, right here.
9    Q.    -- and pay off the account, do you see
10  they showed you what the balance would become?
11    A.    Um-hum.
12    Q.    All right.  Do you know if you made any
13  other payments after the date of this bill?
14    A.    I'm trying to remember.
15    MS. MC CURDY:  So there's the date.
16  BY MR. NEWBURGER:
17    Q.    This is the December 2015 statement.
18    A.    I can't remember that far back.
19    Q.    You can't remember?
20    A.    No.
21    Q.    Okay.  Have you ever paid any money to
22  Resurgent?
23    A.    To who?
24    Q.    Resurgent.



Page 53

1    A.   Not that I know of, no.
2    Q.   Ever pay any money to LVNV?
3    A.   No.
4    Q.   Ever pay any money to someone else on
5    behalf of LVNV?
6    A.   No.
7    MS. MC CURDY:  Do you want a break?
8    BY MR. NEWBURGER:
9    Q.   Do you need to take a break?
10   A.   No.
11   Q.   We can do that.
12   A.   I was asking her can she hear me.
13   Q.   Oh, okay.
14   A.   I'm okay.
15   Q.   All right, if you're sure.  Now, you
16   understood that your card account accrued interest,
17   right?
18   A.   Yes.
19   Q.   So you know that the balance from one
20   month was going to change to the next month even if
21   you made no new charges, right?
22   A.   Yes.
23   Q.   Because you knew it accrued interest.
24   A.   Yes.

Page 54

1    Q.   Did you ever go in before you disputed
2    the debt and do a calculation of interest to figure
3    out if the balance reported was accurate?
4    A.   Not that I remember.
5    Q.   So I know the balance isn't one you
6    recognize, but is it possible that the balance that
7    you see on the credit report is just the balance
8    that was last due plus the interest that accrued in
9    between?
10   MS. MC CURDY:  Objection, speculation.
11   BY MR. NEWBURGER:
12   Q.   You can go ahead and answer.
13   A.   I'm not really sure.
14   Q.   You don't know if that's what happened,
15   do you?
16   A.   No.
17   Q.   But if that's all it is, you don't
18   dispute that, do you?
19   A.   I'm not sure if that's what it was.
20   Q.   I understand.  I'm not asking you to
21   admit that.  All I'm saying is if the balance that
22   LVNV is reporting is the balance that was owed to
23   Credit One plus any interest that accrued after
24   that and nothing else, you don't have any dispute

Page 55

1    with that, do you?
2    A.   As far as Credit One?
3    Q.   Well, no, as far as the nine -- there
4    was the 976 we see on the credit report.  If you
5    take the Credit One balance and add the interest
6    after the date Credit One charged off the account,
7    and if those numbers add up to 976, you don't
8    dispute it in that event, do you?
9    A.   I don't understand.
10   Q.   Let me ask it differently.
11   MS. MC CURDY:  He'll rephrase it.
12   BY MR. NEWBURGER:
13   Q.   I can see you're confused.  You agreed
14   to pay the card balance, right?
15   A.   Yes.
16   Q.   And with that you agreed to pay the
17   interest charges on the account, right?
18       Let's ask it a different way.  You
19   didn't think they were lending money -- that Credit
20   One was lending money to you for free, did you?
21   A.   No.
22   Q.   You got credit card statements and you
23   saw there was interest on those statements, right?
24   A.   Right.

Page 56

1    Q.   Okay.  And you knew that every month
2    that you didn't pay, more interest accrued, right?
3    A.   Right.
4    Q.   Because that's part of the deal of
5    having a credit card.  It's the burden we all
6    suffer with having credit cards, right?
7    A.   Right.
8    Q.   And so you agreed you were going to pay
9    not only the charges but the interest on the
10   charges, right?
11   A.   Yes.
12   Q.   All right.  So if -- I'm not asking you
13   to agree they did the math right.  All I'm saying
14   is if it turns out when we get to trial that the
15   Credit One balance plus the accrued interest totals
16   the 976 and the math is right, if that turns out to
17   be true, then you don't really have a dispute
18   anymore, do you?
19   A.   Correct.
20   Q.   Okay.
21   A.   I guess.
22   Q.   So it's not so much that you're
23   disputing is that you don't know and you're trying
24   to find out, right?



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
57—60

Page 57
1    MS. MC CURDY: Objection, speculation. Sorry.
2  Go ahead.
3  BY MR. NEWBURGER:
4    Q.   Let me ask it differently.  The real
5  problem here is you don't understand the balance,
6  correct?  And you want someone to explain it to
7  you?
8    MS. MC CURDY: Objection, misstates prior
9  testimony.
10  BY MR. NEWBURGER:
11    Q.   Please answer.
12    A.   I understand pay interest, but I don't
13  understand how it got to that balance.
14    Q.   Well, let's look at some of your
15  statements, then.  So let's go back to Exhibit 14.
16  Let's just look at the top statement.  I know these
17  aren't quite in order, but this is the order we got
18  them in.
19      The top statement is October 5th, 2015
20  to November 4, 2015.  Do you see that?
21    A.   Yes.
22    Q.   All right.  It tells you that your
23  previous balance -- look on the box on the left
24  side -- was $630.57.  You see that, right?

Page 58
1    MS. MC CURDY: You have the wrong page.  It's
2  the 630 right there.
3  BY MR. NEWBURGER:
4    Q.   Do you see that?
5    A.   This?
6    MS. MC CURDY: Um-hum, yeah.  He's just asking
7  if you see this number right here where it says
8  previous balance is 630.
9    THE WITNESS: Right.
10  BY MR. NEWBURGER:
11    Q.   So you see that it says your previous
12  balance was $630.57?
13    A.   Yes.
14    Q.   And then it says you didn't make any
15  payments that month, right?
16    A.   Right.
17    Q.   And you didn't have any other credits
18  that month, right?
19    A.   Right.
20    Q.   And there weren't any purchases that
21  month, right?
22    A.   Right.
23    Q.   There weren't any cash advances that
24  month, right?

Page 59
1    A.   Right.
2    Q.   Then they charged you what looks like a
3  late fee of $43.25, didn't they?
4    A.   Yes.
5    Q.   You were late, so you know that when you
6  were late you got charged late fees, right?
7    A.   Yes.
8    Q.   And that's part of your deal as well
9  with the bank.  That's what you agreed.  If I don't
10  pay on time, you can charge me a late fee, right?
11    A.   Right.
12    Q.   And then you see there's interest of
13  $12.10.  See that?
14    A.   Yes.
15    Q.   And, again, that's because you agreed to
16  pay interest on your balances, right?
17    A.   Yes.
18    Q.   All right.  So you add all those up and
19  that's how you got to the new balance which is
20  $685.92, right?
21    A.   Right.
22    Q.   So if I add the 43.25 and the 12.16 --
23  12.10, excuse me.  Forgive me, because lawyers
24  shouldn't do math in public.  But if I add those up

Page 60
1  right, it looks like that one month your balance
2  increased by $55.35 in just one month without you
3  charging anything.
4    MS. MC CURDY: Yeah, he's just adding up your
5  interest and the fees plus what the balance was,
6  and it added $55 to the balance pretty much.  These
7  two added 55 to make it this number.
8  BY MR. NEWBURGER:
9    Q.   That's right, isn't it?
10    A.   Right.
11    Q.   All right.  So if you didn't make any
12  more payments after that, and if you had to pay the
13  late fee and the interest every single month, $55 a
14  month would be $600 a year.  That would be a lot
15  more than the difference between 700 and 900,
16  wouldn't it?
17    A.   Yes.
18    Q.   All right.  But even if you had just the
19  interest, okay?
20    A.   Yes.
21    Q.   Twelve months times $12.10, that would
22  be over $144.  That would be about $145 in a year,
23  right?
24    A.   Right.



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
61–64

Page 61

1    Q.    Okay.  And we're a couple of years since
2  this statement, right?
3    A.    Right.
4    Q.    Do you think it's possible that with
5  interest you owe the balance on the credit report?
6    MS. MC CURDY:  Objection, speculation.
7  BY MR. NEWBURGER:
8    Q.    Please answer.
9    A.    Because of my hardship I would dispute
10  it.
11    MS. MC CURDY:  What was that?
12    THE WITNESS:  (Inaudible) I could dispute it,
13  right?
14    MS. MC CURDY:  Well, yeah, you disputed it.
15  BY MR. NEWBURGER:
16    Q.    I'm just asking you agree it's possible
17  that the number on the credit report could be
18  right.
19    A.    Could be.
20    Q.    Okay.  And that's really what's going on
21  is you don't know that, right?
22    A.    Right.
23    MS. MC CURDY:  Misstates prior testimony.
24  Objection.

Page 62

1  BY MR. NEWBURGER:
2    Q.    Now, when LVNV sent you the collection
3  letter you said you got, did you read the letter?
4    A.    Somewhat.
5    Q.    So do you remember the letter told you
6  that if you write to us within 30 days and dispute
7  the debt, we'll provide you with information about
8  it?
9    A.    I just took the letter downtown.  I
10  looked at it.
11    MR. NEWBURGER:  Objection, responsiveness.
12  BY MR. NEWBURGER:
13    Q.    My question is do you remember that they
14  told you if you dispute this debt within 30 days
15  after receiving this letter, we will provide you
16  with verification of the debt.  Do you remember
17  that?
18    A.    Yes.
19    Q.    Okay.  And you didn't write them within
20  30 days of that letter and ask for verification of
21  the debt, did you?
22    A.    I took it to them, right?
23    MS. MC CURDY:  Um-hum.
24  BY MR. NEWBURGER:

Page 63

1    Q.    Community Law Group.
2    A.    Yes.
3    Q.    Now, when did you first get that letter,
4  do you remember?
5    A.    No.  Sometime in June or May.  I'm not
6  sure.
7    Q.    I thought you said May before.
8    A.    May or June, one of those months, wasn't
9  it?
10    MS. MC CURDY:  Um-hum.
11  BY MR. NEWBURGER:
12    Q.    And the letter that's at issue here,
13  Exhibit E, is dated June 28th.  Do you know if that
14  was sent before the month had passed from when you
15  got the letter from LVNV?
16    A.    Say it again.
17    Q.    Do you know whether Exhibit E to your
18  complaint, that is the one sent on June 28th, do
19  you know if that was sent within 30 days of you
20  receiving LVNV's letter?
21    A.    I think it was.
22    Q.    Do you know?
23    A.    I think it was.
24    MS. MC CURDY:  Want to take a break?  Is that

Page 64

1  okay?
2    MR. NEWBURGER:  No problem.
3        (WHEREUPON, a recess was had.)
4    MR. NEWBURGER:  Would you read back the last
5  question?
6        (WHEREUPON, the record was read
7          as requested.)
8  BY MR. NEWBURGER:
9    Q.    What would it take for you to find a
10  copy of the LVNV letter?
11    A.    I don't know.
12    Q.    If you make a diligent search of your
13  home, do you think you can find it?
14    A.    Maybe.
15    Q.    Did you give a copy to your lawyers?
16    A.    I think so.
17    Q.    So your lawyer should have it, even if
18  you don't.
19    A.    They should.
20    Q.    Let's go back to Exhibit 13, which is
21  your court complaint in this case.  If you look at
22  Paragraph Number 20, it says, "In response to
23  collection attempts by defendants, plaintiff
24  consulted with the attorneys at Community Law



JEANETTE AKINS                                    January 24, 2018
CENTENO vs LVNV FUNDING                                    65–68

Page 65

1  Group, Limited.
2       So I just want to be sure I know now.
3  I'm sorry, I'll let you get there.  I just want to
4  be sure.  The only collection attempt by defendants
5  was the one letter, correct?
6  A.  Yes.
7  Q.  No other collection activity by the
8  defendants, right?
9  A.  Right.
10  Q.  Okay.  And has Community Law Group ever
11  represented you in any other matter?
12  A.  No.
13  Q.  Now, just to be clear, the letter that
14  your lawyer sent, that Exhibit E that we've been
15  looking at --
16  MS. MC CURDY:  This one.
17  BY MR. NEWBURGER:
18  Q.  Do you see the word dispute anywhere in
19  that letter?
20  A.  Do I see the word dispute?
21  Q.  Yes, ma'am.
22  A.  No.
23  Q.  It's not in there, is it?
24  A.  No.

Page 66

1  Q.  All right.  Now, let me ask you a
2  question.  You hired lawyers in this case, right?
3  A.  Right.
4  Q.  Who went to law school, right?
5  A.  Yes.
6  Q.  Got a legal education, right?
7  A.  Yes.
8  Q.  Got a license to practice law, right?
9  A.  Yes.  My lawyer.
10  Q.  Do you think that your lawyers should be
11  able to say that you dispute the debt when in fact
12  you do?
13  MS. MC CURDY:  Objection, speculation.
14  BY MR. NEWBURGER:
15  Q.  Please answer.
16  A.  I can't answer that question.
17  Q.  Excuse me?
18  A.  I can't answer that question.
19  Q.  Well, you wanted your lawyers to dispute
20  the debt, right?
21  A.  Yes.
22  Q.  And they didn't use the word dispute
23  once, did they?
24  A.  No.

Page 67

1  Q.  They didn't do a very good job of doing
2  what you wanted, did they?
3  MS. MC CURDY:  Objection, speculation.
4  BY MR. NEWBURGER:
5  Q.  Please answer.
6  A.  No.
7  Q.  Because if you wanted to tell someone
8  you disputed the debt, you'd say I dispute that,
9  wouldn't you?
10  A.  I guess I would.
11  Q.  Because that's what a reasonable person
12  does, isn't it?
13  A.  Yes.
14  Q.  Sitting here today, you're a pretty
15  reasonable person, aren't you?
16  A.  Yes.
17  Q.  Even a nonlawyer can figure out that to
18  say a debt is disputed, you can say my client
19  disputes the debt, right?
20  MS. MC CURDY:  Objection, speculation.
21  BY THE WITNESS:
22  A.  Yes.
23  BY MR. NEWBURGER:
24  Q.  Now, let me just show you what I'm

Page 68

1  talking about.  Let me show you Exhibit 5.  If you
2  look at that, please.  I know you haven't seen this
3  before, so I'll walk you through it.  This is a
4  lawsuit, a complaint in a case called Elisa
5  Guerrero versus Credit Management, L.P. and
6  Travelers Casualty and Surety Company of America.
7  Do you see that?
8  A.  Yes.
9  Q.  If you would, please, turn to
10  Paragraph 14.  That's on Page 3.  Do you see that?
11  A.  Yes.
12  Q.  It says, "In response to collection
13  attempts by defendant, plaintiff consulted with the
14  attorney Tyler Hickle, who on June 13 sent a
15  written communication to CMI indicating that he
16  represented plaintiff and plaintiff disputed the
17  alleged debt."
18       That's pretty much what your lawsuit
19  says, except your lawsuit says you went to
20  Community Lawyers Group, right?
21  A.  Right.
22  Q.  If you look at the next line, it says,
23  "Plaintiff's letter stated in part, quote, 'the
24  consumer disputes the debt,' end quote."  Did I



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
69–72

Page 69

1   read that right?
2      A.   Yes.
3      Q.   That's a little different than your
4   lawsuit, isn't it?
5      A.   Yes.
6      Q.   All right.  Now, if you would, turn to
7   Page 7.  Do you see who the lawyer is who signed?
8   The page numbers are at the top right.  Do you see
9   who the lawyer is who signed that complaint?
10     MS. MC CURDY:  Here, a couple more pages.
11  Yeah, we're looking up here at the page numbers, so
12  seven -- right there.  Okay.
13  BY MR. NEWBURGER:
14     Q.   Do you see who the lawyer is who signed
15  that complaint?
16     THE WITNESS:  Right here?
17     MS. MC CURDY:  Um-hum.
18     THE WITNESS:  Yes.
19  BY MR. NEWBURGER:
20     Q.   Who is it?
21     A.   Celetha Chatman?
22     Q.   Celetha Chatman.
23     A.   Celetha Chatman.
24     Q.   Do you know who Celetha Chatman is?

Page 70

1      A.   Do I know who she is?
2      Q.   Yes.
3      A.   Personally, no.
4      Q.   Have you ever met her?
5      A.   No.
6      Q.   Ever heard of her?
7      A.   Maybe.  I'm not sure.  Am I supposed to
8   know who she is?
9      Q.   We'll come back to that.  Do you see who
10  she works for?  Below that on the left.
11     A.   Yeah.
12     Q.   Who does she work for?
13     A.   Community Lawyers Group.
14     Q.   That's your lawyers, isn't it?
15     A.   Yeah.
16     Q.   Keep going a few more pages.  Let's get
17  to Exhibit C.  At the top right corner you'll see
18  it says -- this one says Page 7 of 11.  Do you see
19  that?
20        Look at the letter in the middle
21  paragraph.  It says the consumer disputes the debt.
22     A.   Yeah.
23     Q.   No misunderstanding that, is there?
24     A.   No.

Page 71

1      Q.   If you want to tell someone that your
2   client disputes the debt, the lawyer doesn't leave
3   any doubt when he says it that way, correct?
4      A.   Correct.
5      Q.   That's not what your lawyer did in this
6   case, correct?
7      A.   Correct.
8      Q.   All right.  And can you look at the date
9   at the top of that document?  Do you see it says it
10  was filed August 18th of 2016?
11     MS. MC CURDY:  Up here.
12  BY THE WITNESS:
13     A.   Yes.
14  BY MR. NEWBURGER:
15     Q.   That was almost ten months -- or right
16  around ten months before the letter that's at issue
17  in this case, wasn't it?  Your letter was June 28th
18  of 2017.
19     A.   Yes.
20     Q.   All right.  So at least ten months
21  before the lawsuit -- excuse me -- before the
22  letter that was sent on your account to defendants,
23  your lawyers were in a lawsuit where they knew
24  exactly how to write a letter that says the

Page 72

1   consumer disputes the debt, correct?
2      A.   Yes, I guess.
3      Q.   But they didn't do it in your case, did
4   they?
5      A.   No.
6      Q.   Let's look at Exhibit 3.  I'm going to
7   hand you Exhibit 3.  This is another lawsuit.  This
8   is one in which the plaintiff's name is Bradley
9   Cousins.  It's Bradley Cousins versus Portfolio
10  Recovery Associates, LLC and Western Surety
11  Company.  Do you see that?
12     A.   Um-hum.  Yes.
13     Q.   And what I'd like you to do is turn to
14  Paragraph 14.  Do you see Paragraph 14?
15     A.   Yes.
16     Q.   It says, "In response to collection
17  efforts by defendant, plaintiff sent a written
18  communication to PRA indicating that plaintiff
19  disputed the alleged debt."
20        Again, that's pretty much the same
21  allegation as in your case, right?
22     A.   Yes.
23     Q.   Read the next line.  It says,
24  "Plaintiff's letter stated in part that the amount



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018

73–76

Page 73

1 reported is not accurate." Right?
2     A.   Yes.
3     Q.   All right.  Now, can you keep going
4 forward pages until you get to the signature page.
5 The signature page says at the top Page 7 of 8.  It
6 looks like this.
7     MS. MC CURDY:  I think you're a little too
8 far.  One more.  There you go.
9 BY MR. NEWBURGER:
10     Q.   Do you see this one too was signed by
11 Celetha Chatman, wasn't it?
12     A.   Yes.
13     Q.   And Community Lawyers Group, wasn't it?
14     A.   Yes.
15     Q.   Now, if you will keep going forward to
16 -- I believe it will be Exhibit E.  No.  Excuse me.
17 On this one it will be Exhibit B.  This page has
18 Page 4 of 6 -- 4 of 8 at the top.  Do you see that
19 letter in this case?
20     A.   Yes.
21     Q.   And if you look in the second paragraph,
22 in the middle line it says, "and the amount you are
23 reporting is not accurate," doesn't it?
24     A.   Yes.

Page 74

1     Q.   And the date at the top of that is
2 July 1 of 2016, right?
3     MS. MC CURDY:  We have a 4/21.
4     MR. NEWBURGER:  I'm sorry.  The date it was
5 filed, not the date of the letter.
6     MS. MC CURDY:  Oh, sorry.
7 BY MR. NEWBURGER:
8     Q.   The date it was filed.  It was filed
9 July 21, right?
10     A.   July 11th.
11     Q.   July --
12     A.   July 11th.
13     Q.   July -- I'm sorry.  July --
14     MS. MC CURDY:  Yeah, 7/11.  Yeah.
15 BY MR. NEWBURGER:
16     Q.   July 11.  I'm sorry.  My eyes are acting
17 up.  It's that time of the day.
18     So just a few weeks short of a full year
19 before your letter was sent on June 28th of '17,
20 Ms. Chatman filed a lawsuit that actually says what
21 your letter doesn't say, which is the amount you
22 are reporting is not accurate, right?
23     A.   Right.
24     Q.   So your lawyer knew how to say that,

Page 75

1 didn't she?
2     A.   Yes.
3     Q.   She just didn't do it in your letter,
4 right?
5     A.   Right.
6     Q.   Okay.
7     (WHEREUPON, a certain document was
8     marked Consolidated Deposition
9     Exhibit No. 15, for identification,
10     as of 01/24/2018.)
11 BY MR. NEWBURGER:
12     Q.   The court reporter has handed you
13 Exhibit 15.  These are the terms and conditions
14 that apply to your Credit One account.  And you
15 remember when you opened your account you got the
16 terms and conditions that applied to it, right?
17     A.   Yes.
18     Q.   And what I'd like you to do is turn to
19 Page 5 of this document.  And about three-quarters
20 of the way down the page there's a section that's
21 entitled "your billing rights."  Do you see that?
22     A.   Okay.
23     Q.   It even says after that "keep this
24 document for future use."  They warned you to keep

Page 76

1 it, didn't they?
2     A.   Yes.
3     Q.   And what it says here, "what to do if
4 you find a mistake on your statement."  See that in
5 bold letters two lines down?
6     A.   Yes.
7     Q.   It says, "If you think there is an error
8 on your statement, write to us at Bank Card
9 Center."  It gives a post office box.  You never
10 did that, did you?
11     A.   No, not that I can remember.
12     Q.   And it says, "In your letter, give us
13 the following information:  Account information.
14 Your name and account number.  Dollar amount.  The
15 dollar amount of the suspected error.  Description
16 of the problem.  If you think there is an error on
17 your bill, describe what you believe is wrong and
18 why you believe it is a mistake."  Did I read that
19 right?
20     A.   I guess.  I can't see that.  You have to
21 read it to me.  I can't read this small.
22     Q.   Let's start with the dollar amount.
23 Your lawyers didn't tell LVNV the dollar amount of
24 the dispute, did they?



JEANETTE AKINS                                    January 24, 2018
CENTENO vs LVNV FUNDING                                   77–80

Page 77

1    A.   They didn't tell them what?
2    Q.   They didn't tell LVNV what the dollar
3  amount was of your dispute, did they?
4    A.   I don't know that.
5    Q.   Well, let's go back and look at Exhibit
6  E to your complaint.  Exhibit 13.  Let's go back
7  and look at Exhibit E.  Have you got it in front of
8  you?
9    A.   Right here?
10   Q.   Okay.  Great.  It doesn't say how much
11 the error is, does it?
12   A.   No.
13   Q.   Okay.  It doesn't say why you believe
14 there's an error, does it?
15   A.   No.
16   Q.   Now, your contract on this account said
17 that's what you would do if you had a dispute,
18 right?
19   A.   Right.
20   Q.   But that's not what you did, correct?
21   A.   Correct.
22   Q.   It's not what your lawyers did.
23   A.   Correct.
24   Q.   And to be fair here, you relied on your

Page 78

1  lawyers to do it because you didn't know how to do
2  it, right?
3    A.   Right.
4    Q.   Okay.  If there's a mistake, it's their
5  fault, not yours, right?
6    A.   Right.
7    Q.   But they are your lawyers.  You hired
8  them to do the job, right?
9    A.   Right.
10   Q.   Now, do you have any experience working
11 in the credit reporting industry?
12   A.   No.
13   Q.   Do you have any specialized knowledge
14 about credit reporting?
15   A.   No.
16   Q.   Any specialized expertise on credit
17 reporting?
18   A.   No.
19   Q.   So at trial you're not going to say
20 you're an expert on credit reporting.
21   A.   No.
22   Q.   Okay.  Good.  And how about what are
23 called credit scores, do you have any specialized
24 knowledge about those?

Page 79

1    A.   No.
2    Q.   Any expertise on that?
3    A.   No.
4    Q.   And you're not going to testify as an
5  expert on credit scores at trial, right?
6    A.   No.
7    Q.   Okay.  Do you have any idea whether --
8  let me back up.
9         You understand, don't you, that this
10 lawsuit is not about whether defendants were
11 collecting from you, but solely about whether they
12 put the word disputed on your credit report with
13 regard to this debt, right?
14   A.   Right.
15   Q.   And that's the only complaint you have
16 about the defendants you said.  So let me ask you,
17 do you know how that affected your credit score?
18   A.   Yes.
19   Q.   How did it affect it?
20   A.   Made it a bad, come down, lower it
21 probably.
22   Q.   How do you know that if you don't have
23 any expertise in credit reporting?
24   A.   I know something like that.

Page 80

1    Q.   How do you know?
2    A.   If something bad on your credit, it will
3  go down.  I know that much.
4    Q.   You know the default was going to be
5  there no matter what, right?
6    A.   Right.
7    Q.   So do you know how much of a difference
8  in your credit score the word disputed would have
9  made?
10   A.   Not really.
11   Q.   Not really?
12   A.   Right.
13   Q.   Okay.  And no one's ever told you what
14 the point difference would be on your credit score
15 with the word disputed versus without the word
16 disputed, right?
17   A.   Right.
18   Q.   All right.  Sitting here today, you
19 really can't testify from your own knowledge that
20 it had any material effect, can you?
21   A.   No.
22   Q.   And if it was only a point or two, you
23 don't know if that would have affected you at all,
24 do you?



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
81—84

Page 81

1    MS. MC CURDY:  Objection, speculation.
2  BY THE WITNESS:
3    A.   Kind of.
4  BY MR. NEWBURGER:
5    Q.   Well, then let me ask this differently.
6  Since January 1 of 2017, have you applied for any
7  credit?
8    A.   No.
9    Q.   Since January 1 of 2017, have you been
10  denied any credit?
11    A.   No.
12    Q.   Since January 1 of 2017, have you
13  applied for any employment?
14    A.   No.
15    Q.   Since January 1 of 2017, have you been
16  denied any employment?
17    A.   No.
18    Q.   Is there any way you can tell me that
19  the absence of the word disputed on LVNV's trade
20  line on your credit report -- let me back up.  I'm
21  going too fast.
22        So the account that's reported on your
23  credit report, we call that the trade line, okay?
24    A.   Um-hum.

Page 82

1    Q.   Now, is there any way that you can tell
2  me that the absence of that word on your credit
3  report has caused you any harm?
4    MS. MC CURDY:  Objection, speculation.
5  BY MR. NEWBURGER:
6    Q.   Please answer.
7    A.   In a way.
8    Q.   Okay.  Tell me.  I want to understand.
9    A.   I didn't want anything bad on my report.
10    Q.   You understand it was going to say no
11  matter what that the account was in collections,
12  right?
13    A.   Right.
14    Q.   You understand that from the time that
15  you defaulted with Credit One, that default was on
16  your credit report, right?
17    A.   Right.
18    Q.   And that was there for seven years, you
19  know that, right?
20    A.   Right.
21    Q.   So how is the word disputed going to
22  change any of that?
23    A.   Because they never got back in contact
24  with me.  I wanted to settle with Credit One at one

Page 83

1  time and they never got back in contact with me.
2    Q.   Is it possible that's because they sold
3  your account?
4    A.   I don't know nothing about anybody
5  selling no account.
6    Q.   But you understand they don't own your
7  account anymore.  That's why your lawsuit says LVNV
8  obtained the account, ended up purchasing the
9  account, because Credit One doesn't have this
10  account anymore.
11        Now, did you ever dispute your credit
12  report as far as Credit One goes?
13    A.   I wanted to, but I never got a chance to
14  tell them.
15    Q.   So the answer is no.
16    A.   Because they never got back with me.
17    Q.   So the answer is you never did a dispute
18  of Credit One's trade line on the account, correct?
19    A.   Correct.
20    Q.   Okay.  So Credit One is not a party to
21  this case.  You never tried to settle with LVNV,
22  did you?
23    A.   I let my attorney do it for me.
24    Q.   Was your attorney supposed to settle

Page 84

1  this debt?
2    A.   I was hoping so.
3    Q.   Are you aware of the fact that your
4  attorneys never tried to settle this debt?
5    A.   No.
6    Q.   Does that make you happy?
7    A.   No.
8    Q.   If your attorney didn't try to settle
9  this debt, then she didn't do her job, did she?
10    A.   Right.
11    Q.   Now, the absence of the word disputed,
12  which is what this case is about, it didn't keep
13  you from getting a loan, it didn't cause you to pay
14  more money on a loan, it didn't cost you a job.
15  Can you tell me any money that that has cost you?
16    A.   No.
17    Q.   It really hasn't, has it?
18    A.   No.
19    Q.   No, it hasn't?
20    A.   No.
21    Q.   Okay.  And sitting here today, is there
22  any money you believe you are out of pocket as a
23  result of the defendants' conduct?
24    A.   No.  Yes.



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
85–88

Page 85

1    Q.   What?
2    A.   As far as who?
3    Q.   As far as LVNV and Resurgent.
4         (WHEREUPON, there was a conference
5         between the witness and counsel.)
6    MS. MC CURDY:  Oh, you mean what you've paid
7    us, that would be out of pocket?
8    THE WITNESS:  Yes.
9    BY MR. NEWBURGER:
10   Q.   Okay.  Other than money you've paid to
11   your attorneys to represent you, is there any money
12   you are out of pocket as a result of the conduct of
13   the defendants?
14   A.   No.
15   Q.   How much have you paid your attorneys
16   today?
17   A.   Today?
18   Q.   As of now, how much have you paid them
19   total?
20   A.   I really don't know.
21   Q.   Are you paying them monthly, or did you
22   pay them --
23   A.   I was paying them monthly.
24   Q.   Do you know how many months you paid

Page 86

1    them?
2    A.   I don't know.
3    Q.   How much are you paying them a month?
4    A.   A hundred dollars.
5    Q.   And you pay them every month since you
6    hired them?
7    A.   Supposed to do, yes.
8    Q.   How much are you supposed to pay them
9    total?
10   A.   500 I think.
11   Q.   500?
12   A.   I think.
13   Q.   And what's that for, do you know?
14   A.   Their fee, I guess.
15   Q.   You don't really know?
16   A.   Their fee for taking my case for me
17   first.
18   Q.   Okay.  So other than the 500 you've paid
19   them, do you expect to have to pay them anything
20   else in this case?
21   A.   I don't know.  They didn't say anything.
22   Q.   Do you have a written fee agreement with
23   your attorneys?
24   A.   Do I have it?

Page 87

1    Q.   Yes.  Is there a written contract that
2    you signed with Community Law Group?
3    A.   Yes.
4    Q.   Okay.  So that's the document that will
5    tell us what you owe your lawyers?
6    A.   Yes.
7    Q.   All right.  Do you have a copy of that,
8    or is it just they have a copy?
9    A.   I don't have it with me.
10   Q.   But you do have a copy?
11   A.   I should have, yes.
12   Q.   Is that something you signed at the time
13   that you hired them?
14   A.   Yes.
15   Q.   Okay.  So if you don't have any
16   out-of-pocket damages, what damages are you seeking
17   in this case, do you know?
18   MS. MC CURDY:  Objection, calls for a legal
19   conclusion.
20   BY MR. NEWBURGER:
21   Q.   Please answer.
22   A.   Ask the question again.
23   Q.   Do you know what the damages are that
24   you are seeking in this case?

Page 88

1    A.   I can't explain it.  Can I --
2    Q.   I need to ask you, not your lawyer on
3    this.  If you don't know -- all I'm asking right
4    now is do you know.
5    MS. MC CURDY:  If you don't, it's -- you know,
6    if you don't know, you don't know.
7    BY MR. NEWBURGER:
8    Q.   No, there's no crime if you -- if the
9    answer is you don't know, all I want to know is do
10   you know.
11   A.   Well, they really made me upset.
12   Q.   Who did?
13   A.   LVNV.
14   Q.   And how did they do that?
15   A.   They sent the sheriff to my house.
16   Q.   Okay.  And why did they do that?  Were
17   they suing you on the debt?
18   A.   Yes.
19   Q.   Okay.  And other than suing you on the
20   debt and having the sheriff come to your house --
21   did the sheriff serve you with papers when he came
22   to your house?
23   A.   Yes.
24   Q.   Other than that, did they do anything

JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
89–92

Page 89

1  else that caused you any mental distress?
2      A.   No.
3      Q.   Okay.  So the only cause of mental
4  distress to you by the defendants was serving you
5  with a lawsuit on the debt, correct?
6      A.   Yes.
7      Q.   Nothing else.
8      A.   Right.
9      Q.   Okay.  And in terms of out-of-pocket
10  loses, you don't have any out-of-pocket loses other
11  than what you've paid your lawyer, right?
12     A.   Right.
13     Q.   Have we covered every type of damages
14  you have and what has caused them?
15     A.   What you say?
16     Q.   Have we covered all of the damages you
17  suffered and what has caused them?
18     A.   Yes, I guess.
19     Q.   Okay.  And what do you think would be a
20  reasonable amount of money to compensate you for
21  upsetting you by having the sheriff serve you?
22     MS. MC CURDY:  Objection, speculation, calls
23  for a legal conclusion.
24  BY MR. NEWBURGER:

Page 90

1      Q.   Please tell me.
2      A.   I don't know.
3      Q.   Well, this is my only chance to depose
4  you, so I need to know what you're going to tell
5  the jury you think is fair to compensate you.  What
6  do you think is fair?
7      A.   I'm not going to no trial.  I got to go
8  to trial, I'm not going to trial.
9      Q.   Why not?
10     A.   Too embarrassed.  I will be embarrassed.
11  Only way I'm not embarrassed is you actually made
12  me feel comfortable.
13     Q.   And I'm not trying to make you feel
14  embarrassed.  I hope you know that.
15     A.   You told me.  I know.
16     Q.   All right.  So you're not going to try
17  this case.
18     A.   No.  I'm not going to nobody's trial.
19     Q.   Let me ask you kind of a difficult
20  question.  Have you ever dealt with bill
21  collectors?
22     A.   Have I ever dealt with any?
23     Q.   Yes.  Other than this case.
24     A.   Yes.

Page 91

1      Q.   That's right.  You said your daughter.
2  You said you dealt with bill collectors for your
3  daughter.
4      A.   They called.
5      Q.   And you said they could be rude and
6  disrespectful.
7      A.   Yes.
8      Q.   So the law that you've sued under is
9  called the Fair Debt Collection Practices Act.  Are
10  you aware of that?
11     A.   Yes.
12     Q.   That's a law that protects consumers
13  from being abused by bill collectors.
14     A.   Yes.
15     Q.   And it talks about a lot of different
16  kinds of behaviors that aren't allowed.  So, for
17  example, bill collectors can't call and yell at
18  you.  That would be bad behavior, wouldn't it?
19     A.   Yes.
20     Q.   They're not allowed to call and curse at
21  you.  That would be even worse behavior.
22     A.   Yes.
23     Q.   And they're not allowed to call and use
24  racially derogatory comments.  That would be even

Page 92

1  worse behavior, right?
2      A.   Yes.
3      Q.   And they can't call and threaten to use
4  some sort of criminal means like breaking into your
5  house to collect.  That would be still worse
6  behavior, wouldn't it?
7      A.   Yes.
8      Q.   And they can't threaten to use violence
9  against you to collect the debt because that would
10  be still worse behavior, right?
11     A.   Right.
12     Q.   Okay.  Now, this case has nothing to do
13  with any of those types of behaviors; it has to do
14  with not putting the word disputed on a credit
15  report.  But all those are behaviors that are
16  discussed in the FDCPA.
17       Now, wouldn't you agree that not saying
18  the word disputed is a far cry from yelling,
19  cursing, racial comments, threats of criminal means
20  or threats of violence?
21     A.   Yes.
22     Q.   All those things are far, far worse,
23  right?
24     A.   Yes.



JEANETTE AKINS                                    January 24, 2018
CENTENO vs LVNV FUNDING                                    93–96

Page 93

1    Q.   Now, under the FDCPA, the most in
2  statutory damages that you could recover is a
3  thousand dollars.  So here's what I want to
4  understand.  If you could only get a thousand
5  dollars in statutory damages from a bill collector
6  who cursed at you or made racial comments or
7  threatened you with violence, the statutory damages
8  for not saying the word disputed ought to be a
9  whole lot less than that, shouldn't they?
10    MS. MC CURDY:  Objection, speculation, calls
11  for a legal opinion.
12  BY MR. NEWBURGER:
13    Q.   Please answer.
14    A.   I don't know.
15    Q.   Well, don't you think that if the
16  conduct is a lot less bad, then the statutory
17  damages should be a lot less too?
18    A.   I suppose.
19    MR. NEWBURGER:  Okay.  Sorry.  I'm trying to
20  figure out if I'm finished.
21    MS. MC CURDY:  Yes.
22    MR. NEWBURGER:  Give me just a minute.
23  BY MR. NEWBURGER:
24    Q.   As a result of the defendants, not --

Page 94

1  I know you've got a lot of things going on with
2  your health, so I want to keep it separate.  As a
3  result of the defendants, have you had to see a
4  psychiatrist?
5    A.   Not really.
6    Q.   How about a psychologist?
7    A.   Not really.
8    Q.   Any kind of psychotherapist?
9    A.   I was in therapy one time, but it's been
10  a while.
11    Q.   It wasn't because of LVNV or Resurgent
12  though, was it?
13    A.   No.
14    Q.   Okay.  That's all I'm worried about.
15  I don't want to pry into your personal life about
16  anything else.  That would be very rude of me and
17  I don't want to do that.  So all I'm asking about
18  is with regard to LVNV and Resurgent.  They haven't
19  caused you to go to any kind of mental health
20  counseling, have they?
21    A.   No.
22    Q.   And they haven't caused you to consult
23  with any type of mental health counselor, even if
24  it's not a physician, right?

Page 95

1    A.   Right.
2    Q.   They haven't caused you to take any
3  prescription medications, have they?
4    A.   No.
5    Q.   Not even any nonprescription
6  medications, right?
7    A.   No.
8    Q.   Okay.
9    A.   (Inaudible.)
10    THE REPORTER:  I'm sorry?
11  BY THE WITNESS:
12    A.   I don't take no prescription drugs.
13  BY MR. NEWBURGER:
14    Q.   So really the only mental anguish that
15  we're talking about in this case of any kind is
16  just from when you were served with the lawsuit.
17    A.   Yup.
18    Q.   Okay.
19    A.   (Inaudible.)
20    Q.   Excuse me?
21    THE REPORTER:  I didn't catch that.
22  BY THE WITNESS:
23    A.   (Inaudible) the way they did it.
24  BY MR. NEWBURGER:

Page 96

1    Q.   How did they do it?
2    A.   (Inaudible).
3    THE REPORTER:  What?
4  BY THE WITNESS:
5    A.   Very mean.
6  BY MR. NEWBURGER:
7    Q.   He was mean?  The sheriff's deputy was
8  mean?
9    A.   Yes.
10    Q.   I'm sorry to hear that.  Was that Cook
11  County sheriff?
12    A.   Yes.
13    Q.   Have the defendants ever said anything
14  to you to make you think they were trying to be
15  malicious to you?
16    A.   They never said nothing to me.
17    Q.   Have they ever done anything to make you
18  think that -- not the sheriff now, but LVNV or
19  Resurgent, that they were trying to act maliciously
20  or spitefully toward you?
21    A.   They didn't contact me.
22    Q.   That was Credit One, wasn't it?
23    A.   I'm not talking about Credit One.
24    Q.   When is it that the defendants didn't



JEANETTE AKINS
CENTENO vs LVNV FUNDING

January 24, 2018
97–100

---

**Page 97**

1 contact you?

2     A.   Besides the letter and then sending the

3 sheriff.

4     Q.   Now, you know that they weren't allowed

5 to talk to you after you had a lawyer, don't you?

6     A.   Before I had a lawyer.

7     Q.   Well, what --

8     A.   They served the paper.

9     Q.   Well, they sent you --

10     A.   They sent the letter and the sheriff

11 back-to-back.

12     Q.   I see. Anything else?

13     A.   No.

14     Q.   Do you know what the hourly rate is of

15 your lawyers?

16     A.   No.

17     Q.   And you don't know what you're supposed

18 to pay them in this case.

19     A.   No.

20     Q.   Okay. If you lose this case and the

21 court awards court costs against you, are you able

22 to pay those?

23     A.   I don't know.

24     Q.   Well, this deposition is going to

---

**Page 98**

1 probably run hundreds of dollars. If the court

2 awards hundreds of dollars in costs against you,

3 would you be able to pay that?

4     A.   I don't know. Not at this time. I

5 don't know.

6     Q.   And --

7     A.   I would try, though.

8     Q.   Do you know of anyone who's a witness to

9 the facts of this case other than you?

10     A.   No.

11     MR. NEWBURGER: Pass the witness.

12            CROSS-EXAMINATION

13 BY MS. MC CURDY:

14     Q.   Okay. I just have a few questions for

15 you, Ms. Akins, just to clarify a couple things.

16     So one of the things you said was

17 earlier that one of the things you wanted to get

18 out of from hiring us is that you wanted your

19 lawyers to settle the LVNV case, right?

20     A.   Yes.

21     Q.   And then we also discussed how you were

22 being sued by LVNV in state court when the sheriff

23 came and gave you the papers, correct?

24     A.   Yes.

---

**Page 99**

1     Q.   Now, when you say you wanted to settle

2 the case, were you talking about settling that

3 state court case, like you wanted us to take care

4 of and settle the state court case, or were you

5 talking about this one?

6     A.   The one that I was served.

7     Q.   With the state court case?

8     A.   Yes.

9     MS. MC CURDY: Okay. I think that's all I

10 have.

11     MR. NEWBURGER: That's all?

12     MS. MC CURDY: Um-hum.

13     MR. NEWBURGER: Ms. Akins, thank you for

14 coming. You've been a really nice lady and I

15 appreciate it.

16     THE WITNESS: Thank you.

17     THE REPORTER: What about signature?

18     MS. MC CURDY: Oh, yeah, we're going to waive.

19         FURTHER DEPONENT SAITH NOT.

20

21

22

23

24

---

**Page 100**

1            REPORTER'S CERTIFICATION

2

3     I, JOANNE KLOEPFER, a Certified Shorthand

4 Reporter in and for the State of Illinois, do

5 hereby certify:

6     That the foregoing witness was by me duly

7 sworn; that the deposition was then taken before me

8 at the time and place herein set forth; that the

9 testimony and proceedings were reported

10 stenographically by me and later transcribed into

11 typewriting under my direction; that the foregoing

12 is a true record of the testimony and proceedings

13 taken at that time.

14     That before the conclusion of the deposition,

15 the witness has not requested a review of this

16 transcript pursuant to Rule 30(e)(1).

17     IN WITNESS WHEREOF, I have subscribed my name

18 this 4th day of February, 2018.

19

20           *Joanne Kloepfer*

21           JOANNE KLOEPFER, CSR

22           Notary Public, Lake County, Illinois.

23           My commission expires 10/17/18.

24

OFFICIAL SEAL
JOANNE KLOEPFER
Notary Public - State of Illinois
My Commission Expires Oct 17, 2018

---

```
                                              Page 101
 1              I N D E X
 2   WITNESS                        EXAMINATION
 3    JEANETTE AKINS
 4       Direct by Mr. Newburger          4
 5       Cross by Ms. Mc Curdy           98
 6
 7
 8
 9
10            E X H I B I T S
11   NUMBER                    MARKED FOR ID
12    Exhibit No. 13                24
13    Exhibit No. 14                26
14    Exhibit No. 15                75
15
16
17
18
19
20
21
22
23
24
```



## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEANETTE AKINS,           )
                       )
      PLAINTIFF,     )
                       )     Civil Action No. 17-cv-05693
      v.                )
                       )
LVNV FUNDING, LLC, and RESURGENT  )
CAPITAL SERVICES, L.P.,     )
                       )     <u>Jury Demanded</u>
      DEFENDANTS.    )

## COMPLAINT

Plaintiff, Jeanette Akins, brings this action under the Fair Debt Collection Practices Act,

15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425, *et*

*seq.* ("ICAA"), and alleges:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C.

§1331, and pursuant to 28 U.S.C. § 1367 as to Plaintiff's state law claims.

2.    Venue is proper in this District because parts of the acts and transactions occurred

here and Defendants transact substantial business here.

### STANDING

3.    Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and

that is likely to be redressed by a favorable decision in this matter.

4.    Specifically, Plaintiff suffered a concrete injury and harm to her reputation as a

result of Defendants' sharing of false information regarding an alleged debt with a third party.

*Sayles v. Advanced Recovery Sys., Inc.,* No. 16-60640, 2017 WL 2872343, at *3 (5th Cir. July 6,

2017) ([Defendant's §1692e(8)] violation exposed [plaintiff] to a real risk of financial harm



EXHIBIT
Consolidated
# 13 JO
1-24-18

caused by an inaccurate credit rating) (citing *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) ("Unlike an incorrect zip code, the 'bare procedural violation' in Spokeo, an inaccurate credit rating creates a substantial risk of harm.")).

## **PARTIES**

5.      Plaintiff, Jeanette Akins("Plaintiff'), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Credit One Bank consumer credit account.  Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA and a "debtor" as that term is defined in 225 ILCS 425/2 of the Illinois Collection Agency Act.

6.      Defendant, LVNV Funding, LLC ("LVNV") is a Delaware limited liability company that does or transacts business in the State of Illinois. Its registered agent is Illinois Corporation Service, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. (Exhibit A, Record from the Illinois Secretary of State).

7.      LVNV is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      LVNV is licensed as a collection agency in the State of Illinois. (Exhibit B, Record from the Illinois Department of Financial and Professional Regulation).

9.      LVNV's principal purpose is the collection of debts, as it derives all of its revenue from purchasing and recovering portfolios of defaulted receivables from consumers.

10.     In the last month, LVNV has filed close to 500 lawsuits in the Circuit Court of Cook County, First Municipal Division, to collect debts.

11.     Thus, LVNV is a "debt collector" as that term is defined in § 1692a(6) of the FDCPA.

12.     Defendant, Resurgent Capital Services L.P. ("Resurgent") is a Delaware limited liability partnership that regularly does or transacts business in the State of Illinois, but does not maintain a registered agent in Illinois.

13.     Its registered agent in its home state of Delaware is Corporation Service Company, located at 2711 Centerville Rd, Wilmington, Delaware, 19808. (Exhibit C, Record from the Delaware Secretary of State).

14.     Resurgent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

15.     Resurgent is licensed as a collection agency in the State of Illinois. (Exhibit D, Record from the Illinois Department of Financial and Professional Regulation).

16.     Resurgent regularly attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA

## FACTUAL ALLEGATIONS

17.     According to Defendants, Plaintiff incurred an alleged debt for goods and services used for personal purposes, originally for a Credit One Bank consumer credit account ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

18.     Due to his financial circumstances, Plaintiff could not pay any debts, and the alleged debt went into default.

19.     LVNV subsequently purchased the alleged debt, and through its servicer Resurgent began collecting the alleged debt from Plaintiff.

20.     In response to collection attempts by Defendants, Plaintiff consulted with the attorneys at Community Lawyers Group, Ltd., who, on June 7, 2017, sent a letter to LVNV, indicating that Plaintiff disputed the alleged debt. (Exhibit E, Dispute Letter).

21.     LVNV received Plaintiff's dispute on June 28, 2017.

22.     Plaintiff's letter stated, in part, that the amount reported is not accurate.

23.     A statement that "the amount reported is not accurate" evinces the intention to

dispute the validity of at least a portion of the purported debt. *Emerson v. Fid. Capital Holdings,*

*Inc.*, No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015).

24.     After making her dispute, Plaintiff purchased her Experian credit report to check

that it was accurately updated.

25.     On July 5, 2017, LVNV communicated credit information regarding the alleged

debt to the Experian consumer reporting agency, including a balance, an account number and the

date reported. (Exhibit F, Experian).

26.     LVNV failed to communicate that Plaintiff's alleged debt was disputed when it

communicated other information to Experian regarding the alleged debt.

27.     LVNV had been notified one week prior of Plaintiff's dispute.

28.     One week is sufficient time for a debt collector to update their records. *See*

*Herbert v. Monterey Financial Services, Inc.*, 863 F. Supp. 76 (D. Conn. 1994) (holding that five

days was enough time for a debt collector to update their records with information from a

consumer's letter").

29.     15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading
representation or means in connection with the collection of any debt.
Without limiting the general application of the foregoing, the
following conduct is a violation of this section:**

**. . . (8) Communicating or threatening to communicate to any person
credit information which is known or which should be known to be
false, including the failure to communicate that a disputed debt is
disputed. . . .**

30.     Defendants failed to communicate a dispute to the Experian credit reporting

agency, in violation of 15 U.S.C. 1692e(8), when they knew or should have known about the

dispute and communicated other information regarding the alleged debt to Experian.

31.     Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g.,*

*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a

consumer reporting agency is a "powerful tool, designed in part to wrench compliance with

payment terms from its cardholder").

32.     Defendants materially lowered Plaintiff's credit score by failing to note Plaintiff's

dispute.

33.     A debt reported with no dispute results in a much lower credit score than a report

of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d

142, 146-47 (4th Cir. 2008).

34.     225 ILCS 425/9 of the Illinois Collection Agency Act provides as follows:

> **. . . (22) Disclosing or threatening to disclose information concerning
> the existence of a debt which the collection agency knows to be
> disputed by the debtor without disclosing the fact that the debtor
> disputes the debt. . . .**

35.     Defendants disclosed information concerning the existence of a debt which they

knew to be disputed without disclosing the fact that Plaintiff disputes the debt, in violation of

225 ILCS 425/9 of the ICAA.

36.     A private right of action exists for violation of the ICAA. *Sherman v. Field Clinic*,

74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

37.     In fact, statutes providing for administrative remedies (e.g. the revocation of a

license, etc.) imply civil rights of action in Illinois. *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp.

1199, 1206 (N.D. Ill. 1997).

38.     Plaintiff experienced negative emotions about Defendants' false communication to Experian, including hopelessness, annoyance, aggravation, and other garden variety emotional distress.

39.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See, Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

40.     Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

41.     Defendants failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. 1692e(8), when they knew or should have known about the dispute and communicated other information regarding the alleged debt to Experian.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.     Actual damages pursuant to 15 U.S.C. § 1692d(a)(1);

B.     Statutory damages from Defendant LVNV pursuant to 15 U.S.C. § 1692k(a)(2);

C.     Statutory damages from Defendant Resurgent Capital Services L.P., pursuant to 15 U.S.C. § 1692k(a)(2);

D.     Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

E.     Such other or further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

42.     Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

43.     Defendants disclosed information concerning the existence of a debt which they knew to be disputed without disclosing the fact that Plaintiff disputes the debt, in violation of 225 ILCS 425/9 of the ICAA.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.     Compensatory and punitive damages;

B.     Costs; and

C.     Such other or further relief as the Court deems proper

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/Celetha Chatman
One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
Holly McCurdy
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 512
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com
hmccurdy@communitylawyersgroup.com

# EXHIBIT A



OFFICE OF THE ILLINOIS SECRETARY OF STATE

JESSE WHITE
SECRETARY OF STATE

## LLC FILE DETAIL REPORT

| File Number | 01975706 | | |
|---|---|---|---|
| Entity Name | LVNV FUNDING LLC | | |
| Status | ACTIVE | On | 08/03/2016 |
| Entity Type | LLC | Type of LLC | Foreign |
| File Date | 09/25/2006 | Jurisdiction | DE |
| Agent Name | ILLINOIS CORPORATION SERVICE C | Agent Change Date | 08/16/2013 |
| Agent Street Address | 801 ADLAI STEVENSON DRIVE | Principal Office | 625 PILOT ROAD STE 3 LAS VEGAS, NV 89119 |
| Agent City | SPRINGFIELD | Management Type | MGR View |
| Agent Zip | 62703 | Duration | PERPETUAL |
| Annual Report Filing Date | 08/03/2016 | For Year | 2016 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

Purchase Certificate of Good Standing
**(One Certificate per Transaction)**

## OTHER SERVICES

File Annual Report

Adopting Assumed Name

Articles of Amendment Effecting A Name Change

Change of Registered Agent and/or Registered Office Address

# EXHIBIT B

Credential Details

Illinois Department of Financial and Professional Regulation

**Contact**

| Name | City/State/Zip | DBA/AKA |
|---|---|---|
| LVNV FUNDING LLC | Las Vegas, NV 89119-4485 | |

Contact Information

**License**

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|---|---|---|---|---|---|---|
| 017021172 | LICENSED COLLECTION AGENCY | ACTIVE | 08/28/2008 | 05/19/2015 | 05/31/2018 | N |

# EXHIBIT C

Delaware.gov | Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

---

Frequently Asked Questions   View Search Results

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | |
|---|---|---|
| File Number: | **3061023** | Incorporation Date / Formation Date: **6/24/1999** (mm/dd/yyyy) |
| Entity Name: | **RESURGENT CAPITAL SERVICES L.P.** | |
| Entity Kind: | **Limited Partnership** | Entity Type: **General** |
| Residency: | **Domestic** | State: **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **2711 CENTERVILLE RD SUITE 400** |
| City: | **WILMINGTON** County: **New Castle** |
| State: | **DE** Postal Code: **19808** |
| Phone: | **302-636-5401** |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⬡ Status ⬡ Status,Tax & History Information  Submit

Back to Entity Search

---

For help on a particular field click on the Field Tag to take you to the help area.

# EXHIBIT D

Illinois Department of Financial and Professional Regulation

**Contact**

| Name | City/State/Zip | DBA/AKA |
|------|----------------|---------|
| RESURGENT CAPITAL SERVICES LP | Greenville, SC 29601-5115 | |

Contact Information

**License**

| License Number | Description | Status | First Effective Date | Effective Date | Expiration Date | Ever Disciplined |
|----------------|-------------|--------|----------------------|----------------|-----------------|------------------|
| 017022068 | LICENSED COLLECTION AGENCY | ACTIVE | 12/12/2016 | 12/12/2016 | 05/31/2018 | N |

# EXHIBIT E

## Community Lawyers Group

73 W. Monroe Street, Suite 514
Chicago, Illinois 60603
PH: (312)765-7561
Fx: (312)265-3227

June 28, 2017

LVNV Funding, LLC
c/o Resurgent Capital Services
PO Box 10497
Greenville, SC 29603

Re:     *JEANETTE AKINS*

        ███████████████

        *ACCOUNT:* ███████████ (*Credit One Bank Account*)
        *Last 4 of Social:* ████

Dear Sir or Madam:

The above referenced client is represented by our firm regarding all matters in connection with the above referenced debt. Please direct any future communication regarding this account to our office. This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the debt reported on the credit report is not accurate. If their circumstances should change, we will be in touch.

If you wish to discuss this matter, please contact our office directly at (312) 765-7561 to speak with the attorney assigned to the matter, Celetha Chatman.

Sincerely,
/s/ Celetha Chatman

Client Name:

*JEANETTE AKINS*

████████████████

# EXHIBIT F



# Equifax Credit Report™ for Jeanette Akins

As of: 08/01/2017
Available until: 08/31/2017
Confirmation #

Report Does Not Update





| LVNV FUNDING LLC | ■■■■■■ | 05/12/2016 | $976 | 07/05/2017 | $976 |

LVNV FUNDING LLC

PO Box 10497
Ste 110, Ms 576
Greenville , SC-296030497
(866) 464-1183

| Account Number: | ■■■■■■■ | Current Status: | |
|---|---|---|---|
| Account Owner: | Individual Account. | High Credit: | $ 976 |
| Type of Account : | Open | Credit Limit: | |
| Term Duration: | | Terms Frequency: | |
| Date Opened: | 05/12/2016 | Balance: | $ 976 |
| Date Reported: | 07/05/2017 | Amount Past Due: | $ 976 |
| Date of Last Payment: | | Actual Payment Amount: | |
| Scheduled Payment Amount: | | Date of Last Activity: | N/A |
| Date Major Delinquency First Reported: | 06/2016 | Months Reviewed: | 13 |
| Creditor Classification: | | Activity Description: | N/A |
| Charge Off Amount: | | Deferred Payment Start Date: | |
| Balloon Payment Amount: | | Balloon Payment Date: | |

JS 44 (Rev. 3/13)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

JEANETTE AKINS

**DEFENDANTS**

LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES, L.P.

**(b)** County of Residence of First Listed Plaintiff   Cook
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Community Lawyers Group, Ltd.
73 W. Monroe Street, Suite 502
Chicago, IL 60603 Tel. 312-757.1880

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ✓ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Cable/Sat TV |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION
(Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

15 U.S.C. 1692 et seq. (Fair Debt Collection Practices Act)

### VII. Previous Bankruptcy Matters (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

### IX. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

### X. This case (check one box) ☑ Is not a refiling of a previously dismissed action   ☐ is a refiling of case number _____ previously dismissed by Judge _____

DATE   August 4, 2017

SIGNATURE OF ATTORNEY OF RECORD   s/ Celetha Chatman

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number ▮▮▮▮ 2177
October 05, 2015 to November 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $630.57 |
| Payments | - $0.00 |
| Other Credits | - $0.00 |
| Purchases | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $43.25 |
| Interest Charged | + $12.10 |
| New Balance | $685.92 |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 11/04/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042
Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $685.92 |
| Past Due Amount | $62.00 |
| Amount Due This Period | $70.00 |
| Minimum Payment Due | $132.00 |
| Payment Due Date | 11/28/15 |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $909.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F5727009L000CYLAC | 11/04 | 11/04 | ANNUAL FEE    12/15 THROUGH 12/15 | 8.25 |
| | 11/04 | 11/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 11/04 | 11/04 | Interest Charge on Purchases | 12.10 |
| | 11/04 | 11/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **12.10** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $300.70 |
| Total interest charged in 2015 | $125.94 |

YOUR ACCOUNT IS PAST DUE AND WILL ADVERSELY
AFFECT YOUR CREDIT RATING. PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $607.24 | $12.10 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

Please return this portion with your payment, and write your account number on your check, made payable to  *CREDIT ONE BANK.*

**PAY YOUR BILL ONLINE at CreditOneBank.com**
| | |
|---|---|
| Account Number: | ▮▮▮▮ 2177 |
| New Balance: | $685.92 |
| Minimum Payment Due: | $132.00 |
| Payment Due Date: | 11/28/15 |

AMOUNT ENCLOSED: $ _____ . ____

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0068592 0009700 ▮▮▮ 2177 7


EXHIBIT
Consolidated
#14 ID
1-24-18

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
October 05, 2014 to November 04, 2014

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $279.87 |
| Payments − | $109.95 |
| Other Credits − | $0.00 |
| Purchases + | $237.43 |
| Cash Advances + | $0.00 |
| Fees Charged + | $9.95 |
| Interest Charged + | $8.07 |
| New Balance | $425.37 |
| Credit Limit | $600.00 |
| Available Credit | $174.00 |
| Statement Closing Date | 11/04/14 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $425.37 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $25.00 |
| Minimum Payment Due | $25.00 |
| Payment Due Date | 11/28/14 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 21 months | $524.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

## TRANSACTIONS

| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| 2422443M72Y3JNGVL | 10/05 | 10/05 | TONY'S FINER FOODS CHICAGO IL | 39.07 |
| 2441290M9WGNEB2FK | 10/07 | 10/07 | SIM SIM FOOD MART CHICAGO IL | 22.50 |
| 2444500ML8PPPK7HV | 10/19 | 10/19 | FOOD4LESS #0567 CHICAGO IL | 175.86 |
| 7407193MX00XTMJJY | 10/28 | 10/28 | PAYMENT-DEBIT CARD    LAS VEGAS   NV | -109.95 |
| **Fees** | | | | |
| F572700MX000Y1 | 10/28 | 10/28 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **9.95** |
| **Interest Charged** | | | | |
| | 11/04 | 11/04 | Interest Charge on Purchases | 8.07 |
| | 11/04 | 11/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **8.07** |

| 2014 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2014 | $89.90 |
| Total interest charged in 2014 | $12.18 |

## INTEREST CHARGE CALCULATION

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 23.90%(v) | $404.99 | $8.07 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |

(v) = Variable Rate

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | [ ] 2177 |
|---|---|
| New Balance: | $425.37 |
| Minimum Payment Due: | $25.00 |
| Payment Due Date: | 11/28/14 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED: $ [ . ]

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0010995  0042537  0002500  [ ] 2177 0

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
September 05, 2015 to October 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $580.99 |
| Payments | - $0.00 |
| Other Credits | - $0.00 |
| Purchases | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $38.25 |
| Interest Charged | + $11.33 |
| New Balance | $630.57 |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 10/04/15 |
| Days in Billing Cycle | 30 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $630.57 |
| Past Due Amount | $30.00 |
| Amount Due This Period | $62.00 |
| **Minimum Payment Due** | **$92.00** |
| Payment Due Date | 10/28/15 |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $838.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F5727008M000CYLAC | 10/04 | 10/04 | ANNUAL FEE    11/15 THROUGH 11/15 | 8.25 |
| | 10/04 | 10/04 | LATE FEE | 30.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **38.25** |
| | | | **Interest Charged** | |
| | 10/04 | 10/04 | Interest Charge on Purchases | 11.33 |
| | 10/04 | 10/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.33** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $257.45 |
| Total interest charged in 2015 | $113.84 |

YOUR ACCOUNT IS PAST DUE. IT IS NOT TOO LATE TO
PROTECT YOUR CREDIT RATING! PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $568.99 | $11.33 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385    JBH    001   7  4   151004   0        X PAGE I of I              2 0  5727  9620  M115  O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to  *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

Account Number: [ ] 2177
New Balance:          $630.57
Minimum Payment Due: $92.00
Payment Due Date:     10/28/15

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** | $          . |

CREDIT ONE BANK                          JEANETTE AKINS
PO BOX 60500                             1640 N LOREL AVE
CITY OF INDUSTRY CA 91716-0500           CHICAGO IL 60639-4314

2177 0

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [    ] 2177
August 14, 2014 to October 04, 2014

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $75.00 |
| Payments − | $29.95 |
| Other Credits − | $0.00 |
| Purchases + | $225.76 |
| Cash Advances + | $0.00 |
| **Fees Charged** + | **$4.95** |
| **Interest Charged** + | **$4.11** |
| New Balance | $279.87 |
| Credit Limit | $600.00 |
| Available Credit | $320.00 |
| Statement Closing Date | 10/04/14 |
| Days in Billing Cycle | 52 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card 1-877-825-3242
Outside the U.S. Call 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $279.87 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $25.00 |
| **Minimum Payment Due** | **$25.00** |
| **Payment Due Date** | **10/28/14** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 13 months | $319.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 2471705L0JN94BY49 | 08/28 | 08/28 | FINGERHUT PAYMENTS        800-2082500 MN | 150.00 |
| 2443106LB2DAGMHFP | 09/08 | 09/08 | GLOBE LIFE AND ACCIDENT 972-540-6542 OK | 75.76 |
| 7407193LQ00XTMJJX | 09/09 | 09/09 | PAYMENT-DEBIT CARD        LAS VEGAS   NV | -29.95 |
| **Fees** | | | | |
| F572700LC000Y1 | 09/09 | 09/09 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| F572700LC000YD | 09/09 | 09/09 | EXPRESS PYMT FEE CREDIT LAS VEGAS CREDIT | -5.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **4.95** |
| **Interest Charged** | | | | |
| | 10/04 | 10/04 | Interest Charge on Purchases | 4.11 |
| | 10/04 | 10/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **4.11** |

| 2014 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2014 | $79.95 |
| Total interest charged in 2014 | $4.11 |

CONGRATULATIONS! YOUR CREDIT LINE HAS BEEN
INCREASED TO $600. THIS INCREASE IS EFFECTIVE
IMMEDIATELY AND YOUR NEW CREDIT LINE IS SHOWN
ON THIS STATEMENT.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $206.47 | $4.11 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385      JBH      001   7  4   141003   0          PAGE 1 of 1          2 0  5727   9620   A064   O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to CREDIT ONE BANK.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | [    ] 2177 |
|---|---|
| New Balance: | $279.87 |
| Minimum Payment Due: | $25.00 |
| Payment Due Date: | 10/28/14 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED: | $        .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0002995  0027987  0002500          2177  6

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number �some 2177
August 05, 2015 to September 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $692.74 |
| Payments - | $141.95 |
| Other Credits - | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| Fees Charged + | $18.20 |
| Interest Charged + | $12.00 |
| New Balance | $580.99 |
| Credit Limit | $600.00 |
| Available Credit | $19.00 |
| Statement Closing Date | 09/04/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card 1-877-825-3242
Outside the U.S. Call 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $580.99 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $30.00 |
| **Minimum Payment Due** | **$30.00** |
| **Payment Due Date** | **09/28/15** |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $776.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 7407193780OXTMJJZ | 08/20 | 08/20 | PAYMENT-DEBIT CARD    LAS VEGAS   NV | -141.95 |
| | | | **Fees** | |
| F57270078000Y1 | 08/20 | 08/20 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| F5727007P000CYLAC | 09/04 | 09/04 | ANNUAL FEE    10/15 THROUGH 10/15 | 8.25 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **18.20** |
| | | | **Interest Charged** | |
| | 09/04 | 09/04 | Interest Charge on Purchases | 12.00 |
| | 09/04 | 09/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **12.00** |
| | | | **2015 Totals Year-to-Date** | |
| | | | Total fees charged in 2015 | $219.20 |
| | | | Total interest charged in 2015 | $102.51 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Purchases | 23.90%(v) | $602.49 | $12.00 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385    JBH    001   7   4   150904   0        PAGE 1 of 1        2 0  5727   9620   M115  O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to  *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | ▒ 2177 |
|---|---|
| New Balance: | $580.99 |
| Minimum Payment Due: | $30.00 |
| Payment Due Date: | 09/28/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED: | $           .

ɪlɪɪlʌɪʌɪɪlllʌlʌlɪllllʌɪʌlɪɪlʌɪɪɪɪlʌlɪlɪʌll

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500
lɪllɪɪlɪlllɪɪɪɪllʌɪɪlɪllɪlɪlɪɪlɪlʌlɪɪlɪlɪɪllʌ

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0014195 0058099 0003000 ▒ 2177 9

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number                    2177
August 08, 2014 to August 13, 2014

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $0.00 |
| Payments − | $0.00 |
| Other Credits − | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| **Fees Charged** + | **$75.00** |
| **Interest Charged** + | **$0.00** |
| New Balance | $75.00 |
| Credit Limit | $400.00 |
| Available Credit | $325.00 |
| Statement Closing Date | 08/13/14 |
| Days in Billing Cycle | 30 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card        1-877-825-3242
Outside the U.S. Call                  1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $75.00 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $25.00 |
| **Minimum Payment Due** | **$25.00** |
| Payment Due Date | 09/09/14 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 4 months | $78.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F572700KH000CYLAC | 08/13 | 08/13 | ANNUAL FEE   09/14 THROUGH 08/15 | 75.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **75.00** |
| | | | **Interest Charged** | |
| | 08/13 | 08/13 | Interest Charge on Purchases | 0.00 |
| | 08/13 | 08/13 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **0.00** |

| 2014 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2014 | $75.00 |
| Total interest charged in 2014 | $0.00 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $0.00 | $0.00 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385        JBH        001    7   13   140813    0              PAGE 1 of 1                    2 0  5727  9620   A064  O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK.*

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | 2177 |
|---|---|
| New Balance: | $75.00 |
| Minimum Payment Due: | $25.00 |
| Payment Due Date: | 09/09/14 |

☐ For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:**  $            .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000  0007500  0002500            2177  7

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number ▇▇▇▇▇ 2177
July 05, 2015 to August 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $637.25 |
| Payments | - | $0.00 |
| Other Credits | - | $0.00 |
| Purchases | + | $0.00 |
| Cash Advances | + | $0.00 |
| Fees Charged | + | $43.25 |
| Interest Charged | + | $12.24 |
| New Balance | | $692.74 |
| Credit Limit | | $600.00 |
| Available Credit | | $0.00 |
| Statement Closing Date | | 08/04/15 |
| Days in Billing Cycle | | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $692.74 |
| Past Due Amount | $62.00 |
| Amount Due This Period | $70.00 |
| Minimum Payment Due | $132.00 |
| Payment Due Date | 08/28/15 |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $921.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F5727006R000CYLAC | 08/04 | 08/04 | ANNUAL FEE    09/15 THROUGH 09/15 | 8.25 |
| | 08/04 | 08/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 08/04 | 08/04 | Interest Charge on Purchases | 12.24 |
| | 08/04 | 08/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **12.24** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $201.00 |
| Total interest charged in 2015 | $90.51 |

YOUR ACCOUNT IS PAST DUE AND WILL ADVERSELY
AFFECT YOUR CREDIT RATING. PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $614.41 | $12.24 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385      JBH      001   7   4   150804   0      X PAGE 1 of 1      2 0  5727  9520  M115  CIDL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | ▇▇▇▇ 2177 |
| New Balance: | $692.74 |
| Minimum Payment Due: | $132.00 |
| Payment Due Date: | 08/28/15 |

For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $ _____ . _____

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0069274 0009700 ▇▇▇▇ 177 0

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [        ] 2177
June 05, 2015 to July 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $595.61 |
| Payments - | $0.00 |
| Other Credits - | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| Fees Charged + | $30.00 |
| Interest Charged + | $11.64 |
| **New Balance** | **$637.25** |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 07/04/15 |
| Days in Billing Cycle | 30 |

**QUESTIONS?**

Call Customer Service or Report
a Lost or Stolen Credit Card    1-877-825-3242
Outside the U.S. Call    1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $637.25 |
| Past Due Amount | $30.00 |
| Amount Due This Period | $62.00 |
| **Minimum Payment Due** | **$92.00** |
| **Payment Due Date** | **07/28/15** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $850.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| | 07/04 | 07/04 | LATE FEE | 30.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **30.00** |
| | | | **Interest Charged** | |
| | 07/04 | 07/04 | Interest Charge on Purchases | 11.64 |
| | 07/04 | 07/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.64** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $157.75 |
| Total interest charged in 2015 | $78.27 |

YOUR ACCOUNT IS PAST DUE. IT IS NOT TOO LATE TO
PROTECT YOUR CREDIT RATING! PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $584.41 | $11.64 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385    JBH    001    7   4   150703   0    X PAGE I of I    2 0   5727   9620   MI I5   O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | [    ]2177 |
|---|---|
| New Balance: | $637.25 |
| Minimum Payment Due: | $92.00 |
| Payment Due Date: | 07/28/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED: $  .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0063725 0006200 [    ] 2177 2

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
May 05, 2015 to June 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $639.41 |
| Payments | - | $109.95 |
| Other Credits | - | $0.00 |
| Purchases | + | $45.00 |
| Cash Advances | + | $0.00 |
| Fees Charged | + | $9.95 |
| Interest Charged | + | $11.20 |
| New Balance | | $595.61 |
| Credit Limit | | $600.00 |
| Available Credit | | $4.00 |
| Statement Closing Date | | 06/04/15 |
| Days in Billing Cycle | | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card        1-877-825-3242
Outside the U.S. Call                1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $595.61 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $30.00 |
| Minimum Payment Due | $30.00 |
| Payment Due Date | 06/28/15 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $801.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 74071934500XTMJJZ | 05/13 | 05/13 | PAYMENT-DEBIT CARD   LAS VEGAS   NV | -109.95 |
| 24412904PWGNEB2EY | 05/29 | 05/29 | SIM SIM FOOD MART CHICAGO IL | 45.00 |
| **Fees** | | | | |
| F57270045000Y1 | 05/13 | 05/13 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **9.95** |
| **Interest Charged** | | | | |
| | 06/04 | 06/04 | Interest Charge on Purchases | 11.20 |
| | 06/04 | 06/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.20** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $127.75 |
| Total interest charged in 2015 | $66.63 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $562.35 | $11.20 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385        JBH       001   7   4   150604   0          PAGE 1 of 1          2 0   5727   9620   A064   O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to CREDIT ONE BANK.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | [ ] 2177 |
|---|---|
| New Balance: | $595.61 |
| Minimum Payment Due: | $30.00 |
| Payment Due Date: | 06/28/15 |

**AMOUNT ENCLOSED:** | $        .

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0010995  0059561  0003000  [ ]  2177  3

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
April 05, 2015 to May 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $508.00 |
| Payments − | $0.00 |
| Other Credits − | $0.00 |
| Purchases + | $93.63 |
| Cash Advances + | $0.00 |
| **Fees Charged** + | **$26.00** |
| **Interest Charged** + | **$11.78** |
| New Balance | **$639.41** |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 05/04/15 |
| Days in Billing Cycle | 30 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card 1-877-825-3242
Outside the U.S. Call 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $639.41 |
| Past Due Amount | $26.00 |
| Amount Due This Period | $58.00 |
| **Minimum Payment Due** | **$84.00** |
| **Payment Due Date** | **05/28/15** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $856.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 24445002ZBLNDTMBG | 04/04 | 04/05 | WAL-MART #1933 NORTHLAKE IL | 37.86 |
| 24445002ZBLNDTME3 | 04/04 | 04/05 | WM SUPERCENTER #5402 CHICAGO IL | 55.77 |
| | | | **Fees** | |
| | 05/04 | 05/04 | LATE FEE | 26.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **26.00** |
| | | | **Interest Charged** | |
| | 05/04 | 05/04 | Interest Charge on Purchases | 11.78 |
| | 05/04 | 05/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.78** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $117.80 |
| Total interest charged in 2015 | $55.43 |

YOUR ACCOUNT IS PAST DUE. IT IS NOT TOO LATE TO
PROTECT YOUR CREDIT RATING! PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $591.58 | $11.78 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |

(v) = Variable Rate

5385   JBH   001  7 4  I50504   0   X PAGE 1 of I   2 0  5727  9620  A064  01DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | [ ] 2177 |
| New Balance: | $639.41 |
| Minimum Payment Due: | $84.00 |
| Payment Due Date: | 05/28/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED: $ [ ]

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000  0063941  0005800  [ ]  2177  8

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number XXXXXXXXXXXX2177
March 05, 2016 to April 04, 2016

| SUMMARY OF ACCOUNT ACTIVITY | |
| --- | --- |
| Previous Balance | $916.39 |
| Payments - | $0.00 |
| Other Credits - | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| Fees Charged + | $43.25 |
| Interest Charged + | $16.58 |
| New Balance | $976.22 |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 04/04/16 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card    1-877-825-3242
Outside the U.S. Call    1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
| --- | --- |
| New Balance | $976.22 |
| Past Due Amount | $264.00 |
| Amount Due This Period | $747.22 |
| **Minimum Payment Due** | **$976.22** |
| Payment Due Date | 04/28/16 |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
| --- | --- | --- |
| Only the minimum payment | 1 months | $976.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
| --- | --- | --- | --- | --- |
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F572700FF000CYLAC | 04/04 | 04/04 | ANNUAL FEE   05/16 THROUGH 05/16 | 8.25 |
| | 04/04 | 04/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 04/04 | 04/04 | Interest Charge on Purchases | 16.58 |
| | 04/04 | 04/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **16.58** |

| 2016 Totals Year-to-Date | |
| --- | --- |
| Total fees charged in 2016 | $173.00 |
| Total interest charged in 2016 | $61.09 |

YOUR ACCOUNT IS SCHEDULED TO BE CHARGED OFF.
THE BALANCE WILL BE DUE IN FULL. CALL (888) 729-6274.

Your account is currently closed.

| INTEREST CHARGE CALCULATION | | | |
| --- | --- | --- | --- |
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 24.15%(v) | $823.49 | $16.58 |
| Cash Advances | 24.15%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385    JBH    001   7   4   160404   0    C X PAGE 1 of 1     2 0   5727   9620   M115   C1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
| --- | --- |
| Account Number: | XXXXXXXXXXXX2177 |
| New Balance: | $976.22 |
| Minimum Payment Due: | $976.22 |
| Payment Due Date: | 04/28/16 |

[ ] For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:**   $ _____ . ____

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0097622 0097622 XXXXXXXX 177 9

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number - 2177
March 05, 2015 to April 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $542.35 |
| Payments - | $219.90 |
| Other Credits - | $0.00 |
| Purchases + | $155.60 |
| Cash Advances + | $0.00 |
| Fees Charged + | $19.90 |
| Interest Charged + | $10.05 |
| New Balance | $508.00 |
| Credit Limit | $600.00 |
| Available Credit | $92.00 |
| Statement Closing Date | 04/04/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call          1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $508.00 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $26.00 |
| **Minimum Payment Due** | **$26.00** |
| **Payment Due Date** | **04/28/15** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 2 years | $657.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 74071932100XTMJK1 | 03/06 | 03/06 | PAYMENT-DEBIT CARD     LAS VEGAS     NV | -109.95 |
| 24412902/WGNEB2EB | 03/11 | 03/11 | SIM SIM FOOD MART CHICAGO IL | 24.60 |
| 244129028WGNEB2F4 | 03/12 | 03/12 | SIM SIM FOOD MART CHICAGO IL | 25.10 |
| 24412902EWGNEB2EY | 03/18 | 03/18 | SIM SIM FOOD MART CHICAGO IL | 24.85 |
| 24412902LWGNEB2ER | 03/24 | 03/24 | SIM SIM FOOD MART CHICAGO IL | 25.00 |
| 24412902NWGNEB2EE | 03/26 | 03/26 | SIM SIM FOOD MART CHICAGO IL | 41.05 |
| 24412902SWGNEB2EJ | 03/30 | 03/30 | SIM SIM FOOD MART CHICAGO IL | 15.00 |
| 74071932W00XTMJJY | 04/02 | 04/02 | PAYMENT-DEBIT CARD     LAS VEGAS     NV | -109.95 |
| **Fees** | | | | |
| F57270021000Y1 | 03/06 | 03/06 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| F5727002W000Y1 | 04/02 | 04/02 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **19.90** |
| **Interest Charged** | | | | |
| | 04/04 | 04/04 | Interest Charge on Purchases | 10.05 |
| | 04/04 | 04/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **10.05** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $91.80 |
| Total interest charged in 2015 | $43.65 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $504.48 | $10.05 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | 2177 |
| New Balance: | $508.00 |
| Minimum Payment Due: | $26.00 |
| Payment Due Date: | 04/28/15 |

For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** | $         .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0010995  0050800  0002600          2177  1

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
February 05, 2016 to March 04, 2016

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $857.43 |
| Payments | - | $0.00 |
| Other Credits | - | $0.00 |
| Purchases | + | $0.00 |
| Cash Advances | + | $0.00 |
| Fees Charged | + | $43.25 |
| Interest Charged | + | $15.71 |
| New Balance | | $916.39 |
| Credit Limit | | $600.00 |
| Available Credit | | $0.00 |
| Statement Closing Date | | 03/04/16 |
| Days in Billing Cycle | | 29 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card 1-877-825-3242
Outside the U.S. Call 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $916.39 |
| Past Due Amount | $218.00 |
| Amount Due This Period | $81.00 |
| **Minimum Payment Due** | **$299.00** |
| **Payment Due Date** | **03/28/16** |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $1,193.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F572700EG000CYLAC | 03/04 | 03/04 | ANNUAL FEE 04/16 THROUGH 04/16 | 8.25 |
| | 03/04 | 03/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 03/04 | 03/04 | Interest Charge on Purchases | 15.71 |
| | 03/04 | 03/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **15.71** |

| 2016 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2016 | $129.75 |
| Total interest charged in 2016 | $44.51 |

YOUR ACCOUNT IS PAST DUE AND WILL ADVERSELY
AFFECT YOUR CREDIT RATING. PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

Your account is currently closed.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 24.15%(v) | $780.24 | $15.71 |
| Cash Advances | 24.15%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5985    JBH    001    7   4    160304   0    C X PAGE 1 of 1    2 0   5727   9620   M115   O1Dl.5985

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: [ ] 2177 | |
| New Balance: | $916.39 |
| Minimum Payment Due: | $299.00 |
| Payment Due Date: | 03/28/16 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $ .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0091639 0026400 [ ] 2177 0

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number          2177
February 05, 2015 to March 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $631.65 |
| Payments | - | $109.95 |
| Other Credits | - | $0.00 |
| Purchases | + | $0.00 |
| Cash Advances | + | $0.00 |
| **Fees Charged** | **+** | **$9.95** |
| **Interest Charged** | **+** | **$10.70** |
| New Balance | | $542.35 |
| Credit Limit | | $600.00 |
| Available Credit | | $57.00 |
| Statement Closing Date | | 03/04/15 |
| Days in Billing Cycle | | 28 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call          1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $542.35 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $28.00 |
| **Minimum Payment Due** | **$28.00** |
| **Payment Due Date** | **03/28/15** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 2 years | $713.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 74071931900XTMJK0 | 02/10 | 02/10 | PAYMENT-DEBIT CARD      LAS VEGAS   NV | -109.95 |
| | | | **Fees** | |
| F57270019000Y1 | 02/10 | 02/10 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **9.95** |
| | | | **Interest Charged** | |
| | 03/04 | 03/04 | Interest Charge on Purchases | 10.70 |
| | 03/04 | 03/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **10.70** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $71.90 |
| Total interest charged in 2015 | $33.60 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $537.24 | $10.70 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385          JBH          001   7   4   150304   0          PAGE 1 of 1          2 0  5727  9620  A064  O1DL5385

Please return this portion with your payment, and write our account number on your check, made payable to CREDIT ONE BANK.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | | 2177 |
|---|---|---|
| New Balance: | $542.35 | |
| Minimum Payment Due: | $28.00 | |
| Payment Due Date: | 03/28/15 | |

☐ For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0010995  0054235  0002800          2177  4

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number ▮▮▮▮ 2177
January 05, 2016 to February 04, 2016

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $799.34 |
| Payments | - | $0.00 |
| Other Credits | - | $0.00 |
| Purchases | + | $0.00 |
| Cash Advances | + | $0.00 |
| **Fees Charged** | + | **$43.25** |
| **Interest Charged** | + | **$14.84** |
| **New Balance** | | **$857.43** |
| Credit Limit | | $600.00 |
| Available Credit | | $0.00 |
| Statement Closing Date | | 02/04/16 |
| Days in Billing Cycle | | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card      1-877-825-3242
Outside the U.S. Call      1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $857.43 |
| Past Due Amount | $175.00 |
| Amount Due This Period | $78.00 |
| **Minimum Payment Due** | **$253.00** |
| **Payment Due Date** | **02/28/16** |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $1,123.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F572700DK000CYLAC | 02/04 | 02/04 | ANNUAL FEE    03/16 THROUGH 03/16 | 8.25 |
| | 02/04 | 02/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 02/04 | 02/04 | Interest Charge on Purchases | 14.84 |
| | 02/04 | 02/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **14.84** |

| 2016 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2016 | $86.50 |
| Total interest charged in 2016 | $28.80 |

YOUR ACCOUNT IS PAST DUE AND WILL ADVERSELY
AFFECT YOUR CREDIT RATING. PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

Your account is currently closed.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 24.15%(v) | $736.99 | $14.84 |
| Cash Advances | 24.15%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385      JBH      001   7  4   160204   0      C X PAGE 1 of 1          2 0  5727   9620   M115   C1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | ▮▮▮▮ 2177 |
|---|---|
| New Balance: | $857.43 |
| Minimum Payment Due: | $253.00 |
| Payment Due Date: | 02/28/16 |

☐ For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $ _____ . ____

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0085743 0021800          177 1

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [_____] 2177
January 05, 2015 to February 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $533.47 |
| Payments - | $0.00 |
| Other Credits - | $0.00 |
| Purchases + | $59.84 |
| Cash Advances + | $0.00 |
| **Fees Charged** + | **$27.00** |
| **Interest Charged** + | **$11.34** |
| **New Balance** | **$631.65** |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 02/04/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card    1-877-825-3242
Outside the U.S. Call    1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $631.65 |
| Past Due Amount | $27.00 |
| Amount Due This Period | $59.00 |
| **Minimum Payment Due** | **$86.00** |
| **Payment Due Date** | **02/28/15** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $843.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 2444500092XDQGS5LD | 01/08 | 01/08 | WINGSTOP #57 ELMWOOD PARK IL | 36.24 |
| 24412900JWGNEB2E9 | 01/17 | 01/17 | SIM SIM FOOD MART CHICAGO IL | 23.60 |
| | | | **Fees** | |
| | 02/04 | 02/04 | LATE FEE | 27.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **27.00** |
| | | | **Interest Charged** | |
| | 02/04 | 02/04 | Interest Charge on Purchases | 11.34 |
| | 02/04 | 02/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.34** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $61.95 |
| Total interest charged in 2015 | $22.90 |

YOUR ACCOUNT IS PAST DUE. IT IS NOT TOO LATE TO
PROTECT YOUR CREDIT RATING! PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $569.10 | $11.34 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385    JBH    001    7  4    150204    0    X PAGE 1 of 1    2 0  5727  9620  A064  O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | [_____] 2177 |
| New Balance: | $631.65 |
| Minimum Payment Due: | $86.00 |
| Payment Due Date: | 02/28/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** $ _____ . ___

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0063165 0005900 [_____] 2177 5

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number ████████ 2177
December 05, 2015 to January 04, 2016

## SUMMARY OF ACCOUNT ACTIVITY

| | | |
|---|---|---|
| Previous Balance | | $742.13 |
| Payments | - | $0.00 |
| Other Credits | - | $0.00 |
| Purchases | + | $0.00 |
| Cash Advances | + | $0.00 |
| Fees Charged | + | $43.25 |
| Interest Charged | + | $13.96 |
| New Balance | | $799.34 |
| | | |
| Credit Limit | | $600.00 |
| Available Credit | | $0.00 |
| Statement Closing Date | | 01/04/16 |
| Days in Billing Cycle | | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $799.34 |
| Past Due Amount | $135.00 |
| Amount Due This Period | $75.00 |
| **Minimum Payment Due** | **$210.00** |
| Payment Due Date | 01/28/16 |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $1,052.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

## TRANSACTIONS

| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | | | **Fees** | |
| F572700CL000CYLAC | 01/04 | 01/04 | ANNUAL FEE    02/16 THROUGH 02/16 | 8.25 |
| | 01/04 | 01/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 01/04 | 01/04 | Interest Charge on Purchases | 13.96 |
| | 01/04 | 01/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **13.96** |

| 2016 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2016 | $43.25 |
| Total interest charged in 2016 | $13.96 |

YOUR CREDIT CARD ACCOUNT HAS BEEN CLOSED
BECAUSE IT IS PAST DUE. IF YOU HAVE ANY
QUESTIONS REGARDING YOUR ACCOUNT, PLEASE
CONTACT US AT 1-888-729-6274.

Your account is currently closed.

## INTEREST CHARGE CALCULATION

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 24.15%(v) | $693.74 | $13.96 |
| Cash Advances | 24.15%(v) | $0.00 | $0.00 |

(v) = Variable Rate

5385      JBH      001   7  4   160104   0      C X PAGE 1 of 1        2 0  5727  9620  M115  O1DL5385

Please return this portion with your payment, and write your account number on your check, made payable to  *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | ████ 2177 |
|---|---|
| New Balance: | $799.34 |
| Minimum Payment Due: | $210.00 |
| Payment Due Date: | 01/28/16 |

☐ For address, telephone and email changes, please check the box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:**  $ _____ . ___

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0079934 0017500 ████ 2177 5

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [____] 2177
December 05, 2014 to January 04, 2015

## SUMMARY OF ACCOUNT ACTIVITY

| | |
|---|---|
| Previous Balance | $596.91 |
| Payments | - $109.95 |
| Other Credits | - $0.00 |
| Purchases | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $34.95 |
| Interest Charged | + $11.56 |
| **New Balance** | **$533.47** |
| Credit Limit | $600.00 |
| Available Credit | $66.00 |
| Statement Closing Date | 01/04/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                 1-702-405-2042
Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $533.47 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $52.00 |
| **Minimum Payment Due** | **$52.00** |
| Payment Due Date | 01/28/15 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 2 years | $698.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

## TRANSACTIONS

| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| 7407193040OXTMJJV | 01/03 | 01/03 | PAYMENT-DEBIT CARD       LAS VEGAS   NV | -109.95 |
| | | | **Fees** | |
| F57270004000Y1 | 01/04 | 01/04 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | 01/04 | 01/04 | LATE FEE | 25.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **34.95** |
| | | | **Interest Charged** | |
| | 01/04 | 01/04 | Interest Charge on Purchases | 11.56 |
| | 01/04 | 01/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **11.56** |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $34.95 |
| Total interest charged in 2015 | $11.56 |

## INTEREST CHARGE CALCULATION

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 23.90%(v) | $580.22 | $11.56 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |

(v) = Variable Rate

Please return this portion with your payment, and write your account number on your check, made payable to CREDIT ONE BANK.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| | |
|---|---|
| Account Number: | [____] 2177 |
| New Balance: | $533.47 |
| Minimum Payment Due: | $52.00 |
| Payment Due Date: | 01/28/15 |

☐ For address, telephone and email changes, please check this box and complete the reverse side. Or, update your contact information online at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** | $          .

IIıIIııIıIıIIıIIıIııIIIIıIıIIıIıIIIııIIIııIıIIıIı

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500
IıIıIıIıIıIıIIIIIııIıIIıIıIIIIIIIbIıIıIıIIIıIıIıIı

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

**0010995  0053347  0002700** [____] **2177  3**

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number [ ] 2177
November 05, 2015 to December 04, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
| --- | --- |
| Previous Balance | $685.92 |
| Payments - | $0.00 |
| Other Credits - | $0.00 |
| Purchases + | $0.00 |
| Cash Advances + | $0.00 |
| **Fees Charged** + | **$43.25** |
| **Interest Charged** + | **$12.96** |
| New Balance | $742.13 |
| Credit Limit | $600.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 12/04/15 |
| Days in Billing Cycle | 30 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                     1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
| --- | --- |
| New Balance | $742.13 |
| Past Due Amount | $97.00 |
| Amount Due This Period | $73.00 |
| **Minimum Payment Due** | **$170.00** |
| **Payment Due Date** | **12/28/15** |

Late Payment Warning:
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

Minimum Payment Warning:
If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
| --- | --- | --- |
| Only the minimum payment | 3 years | $978.00 |

If you would like a location for credit counseling services, call 1-866-515-5720.

| TRANSACTIONS | | | | |
| --- | --- | --- | --- | --- |
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| F572700AJ000CYLAC | 12/04 | 12/04 | ANNUAL FEE   01/16 THROUGH 01/16 | 8.25 |
| | 12/04 | 12/04 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **43.25** |
| | | | **Interest Charged** | |
| | 12/04 | 12/04 | Interest Charge on Purchases | 12.96 |
| | 12/04 | 12/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **12.96** |

| 2015 Totals Year-to-Date | |
| --- | --- |
| Total fees charged in 2015 | $343.95 |
| Total interest charged in 2015 | $138.90 |

YOUR ACCOUNT IS PAST DUE AND WILL ADVERSELY
AFFECT YOUR CREDIT RATING. PLEASE PAY THE
MINIMUM AMOUNT DUE NOW OR CALL (888) 729-6274.

| INTEREST CHARGE CALCULATION | | | |
| --- | --- | --- | --- |
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $650.49 | $12.96 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385        J8H        001    7   4    151204   0        X PAGE I of I        2 0  5727  9920  M115  OIDL5385

Please return this portion with your payment, and write your account number on your check, made payable to  *CREDIT ONE BANK.*

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | [ ] 2177 |
| --- | --- |
| New Balance: | $742.13 |
| Minimum Payment Due: | $170.00 |
| Payment Due Date: | 12/28/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:** | $            .

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

0000000 0074213 0013500 [ ] 177 2

CREDIT ONE BANK CREDIT CARD STATEMENT
Account Number ████ 2177
November 05, 2014 to December 04, 2014

| SUMMARY OF ACCOUNT ACTIVITY | | |
|---|---|---|
| Previous Balance | | $425.37 |
| Payments | - | $109.95 |
| Other Credits | - | $0.00 |
| Purchases | + | $261.30 |
| Cash Advances | + | $0.00 |
| Fees Charged | + | $9.95 |
| Interest Charged | + | $10.24 |
| **New Balance** | | **$596.91** |
| Credit Limit | | $600.00 |
| Available Credit | | $3.00 |
| Statement Closing Date | | 12/04/14 |
| Days in Billing Cycle | | 30 |

**QUESTIONS?**
Call Customer Service or Report
a Lost or Stolen Credit Card      1-877-825-3242
Outside the U.S. Call             1-702-405-2042
Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $596.91 |
| Past Due Amount | $0.00 |
| Amount Due This Period | $30.00 |
| **Minimum Payment Due** | **$30.00** |
| Payment Due Date | 12/28/14 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on the statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | $803.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| 2441290N9WGNEB2GZ | 11/07 | 11/07 | SIM SIM FOOD MART CHICAGO IL | 52.60 |
| 2444500NG00E9DREK | 11/15 | 11/15 | PORTILLOS HOT DOG'S 12 FOREST PARK IL | 42.91 |
| 2470780NLWGV4LER5 | 11/19 | 11/19 | GRAND AVENUE SHRIMP HOUSE CHICAGO IL | 19.61 |
| 24231 68NL5ZV8X30Q | 11/19 | 11/19 | KFC/LJS #521046 CHICAGO IL | 15.32 |
| 2441290NPWGNEB2ER | 11/20 | 11/20 | SIM SIM FOOD MART CHICAGO IL | 37.09 |
| 7407193NL00XTMJK1 | 11/20 | 11/20 | PAYMENT-DEBIT CARD    LAS VEGAS   NV | -109.95 |
| 2445501NP43AA6Y2Z | 11/23 | 11/23 | WAL-MART #5402 CHICAGO IL | 70.27 |
| 2441290NYWGNEB2G2 | 11/29 | 11/29 | SIM SIM FOOD MART CHICAGO IL | 23.50 |
| **Fees** | | | | |
| F572700NL000Y1 | 11/20 | 11/20 | EXPRESS PAYMENT FEE LAS VEGAS NV | 9.95 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **9.95** |
| **Interest Charged** | | | | |
| | 12/04 | 12/04 | Interest Charge on Purchases | 10.24 |
| | 12/04 | 12/04 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **10.24** |

| 2014 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2014 | $99.85 |
| Total interest charged in 2014 | $22.42 |

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $514.03 | $10.24 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

Please return this portion with your payment, and write your account number on your check, made payable to *CREDIT ONE BANK*.

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | ████ 2177 |
|---|---|
| New Balance: | $596.91 |
| Minimum Payment Due: | $30.00 |
| Payment Due Date: | 12/28/14 |

For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

**AMOUNT ENCLOSED:**  $ _____ . _____

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

JEANETTE AKINS
1640 N LOREL AVE
CHICAGO IL 60639-4314

**0010995  0059691  0003000  ████     2177  6**



D809

| Interest Rates and Interest Charges | |
|---|---|
| **ANNUAL PERCENTAGE RATE (APR) for Purchases and Cash Advances** | **24.15%**<br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | We will begin charging interest on Purchases and Cash Advances on the posting date. |
| **Minimum Interest Charge** | If you are charged interest, the Minimum Interest Charge will be no less than $1.00 for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a Minimum Interest Charge in the First year (Introductory period). |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| **Set-up and Maintenance Fees** | Notice: The Annual Membership Fee will be billed to your Account when it is opened and will reduce the amount of your initial available credit. If your Account is established with a $300 credit line, your initial available credit will be $225. If established with a $400 credit line, then $325 initial available credit. If established with a $500 credit line, then $425 initial available credit.<br><br>You may still reject this plan, provided that you have not yet used the account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges. |
| · Annual Membership Fee | **$75** First year (Introductory period). **$99** thereafter, billed monthly at $8.25. |
| · Authorized User Participation Fee | **$19** annually (if applicable). |
| **Transaction Fees**<br>· Cash Advance | Either **$5** or **8%** of the amount of each Cash Advance, whichever is greater. Credit lines less than $400 will not receive a Cash Advance Transaction Fee in the First year (Introductory period). |
| **Penalty Fees**<br>· Late Payment | Up to **$35** |
| · Returned Payment | Up to **$35** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)." See your Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement") for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.



1

## VISA/MASTERCARD CARDHOLDER AGREEMENT,
## DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT

This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA® or MasterCard® Account issued by Credit One Bank, N.A. (the "Account," "Card" or "Card Account"). The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," "our," and "Credit One Bank" refer to Credit One Bank, N.A., its successors or assigns. By requesting and receiving, signing or using your Card, you agree as follows:

**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.

**1. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law. As permitted by law, any change will apply to your new activity and, in certain circumstances, to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify Credit One Bank by calling our toll-free number at 866-515-5721 or you may write to us at Bank Card Center, P.O. Box 95516, Las Vegas, NV 89193-5516 prior to the effective date of the change, and close your Account.

**2. JOINT ACCOUNTS:** If the application was for more than one person, or if an application was made and accepted by Credit One Bank to add a new Cardholder to an existing Account, this is a "Joint Account." Each of you individually may use the Account to the extent of the credit limit established for the Account, and each of you is jointly and severally liable for the full outstanding balance, including, but not limited to, charges made by any Cardholder. Each of you shall also be jointly and severally liable for any charges made by any person given permission to use the Account by any Cardholder. You agree that Credit One Bank is authorized to act on the instructions of any Cardholder. Instructions from any one of you will constitute instructions from all of you. Requests from a Cardholder to terminate the privileges of another Cardholder on the Account will be deemed a request for termination of the Account.

**3. AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized User who is at least fifteen years of age, you understand that: (1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; (2) the Authorized User will have access to certain account information including balance, available credit and payment information. If you provide an Authorized User with any information that enables him/her to access or use your Account, you agree to be liable for the Authorized User's use of that information, and we will have no responsibility or liability for any of the Authorized User's actions; (3) we reserve the right to terminate the Card Account privileges of an Authorized User by closing your Account and issuing you a new account number; (4) the Account may appear on the credit report of the Authorized User. If you advise us that the Authorized User is your spouse, information regarding the Account will be provided to consumer reporting agencies in your name as well as in the name of the Authorized User; (5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; (6) you can request the removal of the Authorized User from your Account via mail or telephone.
**Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. This Fee will be assessed annually in the month the Authorized User was added to the Account.

**4. CONFLICTS BETWEEN CARDHOLDERS:** In the event Credit One Bank receives conflicting instructions from one or more of you, or if Credit One Bank has reason to believe there is a dispute between the Cardholders, Credit One Bank may, at its sole discretion, take one or more of the following actions: (1) refuse to act on any conflicting instructions; (2) restrict the Account and deny access to all Cardholders until the dispute is resolved; or (3) terminate the Account. In no event will Credit One Bank be liable for any delay or refusal to honor a request for an advance or any other request with respect to your Account, or for restricting or terminating the Account as provided in this section.

**5. YOUR CREDIT LIMIT:** Your Credit Limit will be established by Credit One Bank and will be disclosed to you when your Card is issued. It also will be shown on each of your billing statements. We reserve the right to modify your Credit Limit from time to time, and if we do so, we will notify you. You agree not to engage in any Card transaction that would cause your outstanding balance to exceed your Credit Limit. Credit One Bank may, but is not obligated to, extend credit to you from your Account if you are already up to your Credit Limit or if the borrowing would take you over your Credit Limit at any time. You must pay us on demand any amount by which your Account's balance exceeds your Credit Limit. If we extend credit over your Credit Limit, we will not be obligated to do so again, and such extension will not result in any waiver of our rights under this paragraph.

**6. USING YOUR CARD:** You and any Joint Cardholder or Authorized User may use your Cards: (1) to make purchases of goods or services at merchant establishments where the Card is accepted, and (2) to obtain cash advances (i.e., loans of money) at participating financial institutions. Each purchase and cash advance obtained will reduce the available credit under your credit limit until it is repaid. Cash advances are limited to 25% of your assigned credit limit. Cash advances cannot exceed two transactions or more than $200.00 per day, as applicable. You promise to pay us, when due, the total amount of all purchases and cash advances, as well as all finance charges, and other fees and charges billed to your Card Account. You may not use your Card for any illegal purpose. You further acknowledge that the Card Account will be for personal use and may not be used for business purposes.

**7. AUTHORIZATION:** Merchants or banks may contact us on your behalf to obtain authorization for Card purchases or cash advances. You agree that we shall have no liability if: (a) any merchant or bank refuses to honor any Card issued to access the Account, (b) operational difficulties prevent authorization of a transaction, (c) authorization is declined because your Account is overlimit or delinquent, or (d) credit has been restricted pursuant to any term of this Agreement.

**8. YOUR MONTHLY STATEMENT:** Your Account will be on a monthly billing cycle. We will send you a statement each month that there is activity or an outstanding balance on your Account. The statement itemizes your Account activity, including purchases, cash advances, fees, finance charges, other charges, and payments and credits posted during the billing period. The payment coupon portion of the statement will serve as your bill. When making payment, write your Account number on your check or money order and return the coupon with your payment. You should retain the remaining portion of your statement for your records. If the Bank offers, and you elect to receive, your monthly statement electronically, paper statements will not be mailed to you. You will be responsible for making your payments by the due date, either through the Bank's website or telephone, for which a fee may apply, or by mailing your payment to the appropriate address designated for receipt of payments by mail. Credit One Bank will not be responsible for processing delays or failure to process the payment to your Account if a payment sent by mail does not contain your Account number or is not accompanied by your payment coupon. Your payment will be credited to your Account, as of the date of receipt, if the payment is received by 5:00 p.m. Pacific Time ("PT").

**9. ANNUAL MEMBERSHIP FEE:** The Annual Membership Fee for your Account in year one is $75.00 (Introductory period) and will be billed to your Account when it is opened. The Annual Membership Fee for your Account beginning in year two is $99.00 and will be billed to your Account in monthly installments of $8.25 per month. The Annual Membership Fee will be billed to your Account as long as it remains open or, if your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. The Annual Membership Fee is refundable as long as you cancel your Account and have not used your card for

2

any Purchases or Cash Advances and you have not made a payment. An Annual Membership Fee Notice, as required by regulation, will be provided to you at least once every 12 months. The Annual Membership Fee is imposed for providing services related to your Account, including but not limited to: the opportunity to use your card with participating merchants, providing renewal cards, providing availability of customer service representatives for assistance, providing credit information to credit reporting agencies, and providing the opportunity for additional credit.

**10. FINANCE CHARGES:** Your Card Account is subject to finance charges and the total Finance Charges in your monthly billing cycle are the sum of the Periodic Finance Charges, Transaction Finance Charges, and Credit Limit Increase Fees which are calculated as follows:

**(a) Periodic Finance Charges:** For Purchases and Cash Advances, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Fees and other fees and charges to your Account, the Periodic Finance Charge is calculated as follows: **The Annual Percentage Rate ("APR")** for Purchases and Cash Advances may vary and will be determined by adding **20.65%** to the U.S. Prime Rate appearing in the "Money Rates" section of any edition of *The Wall Street Journal* published on the 25th day of each month. If the *Journal* is not published on that day, then the Prime Rate on the next business day will be used. If the Prime Rate changes, the new rate will take effect on the first day of the following month. The new rate will be applied to all balances on the Account. The estimated **APR** for all balances is 3.50% plus 20.65%, currently **24.15%** (corresponding monthly periodic rate of 2.0125%). The **APR** will never be greater than **29.90%** (corresponding monthly periodic rate of 2.4916%). The most recent Annual Percentage Rate was disclosed to you when you received your credit card. There is a **Minimum Interest Charge** if you are charged interest; the Minimum Interest Charge will be no less than **$1.00** for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a Minimum Interest Charge in the First year (Introductory period). Periodic Finance Charges will be assessed from the date the Purchase, Cash Advance, fee or charge is posted to your Account until the date it is paid in full, and will be calculated by applying the monthly periodic rate to the "average daily balance" of your Account. To get the "average daily balance," we take the beginning balance of your Account each day, add any new Purchases, Cash Advances, fees and charges, and subtract any payments or credits and unpaid Periodic Finance Charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle, and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." Periodic Finance Charges will be assessed on all "average daily balances" until paid in full. All Purchases, Cash Advances, fees or charges accrue finance charges starting on the date of posting, even if the new balance from your previous statement was paid in full or even if that new balance was zero.

**(b) Cash Advance Transaction Finance Charges:** Each time you obtain a new Cash Advance, we will impose a Transaction Fee **Finance Charge** of **$5.00** or **8%** of the amount advanced, whichever is greater. Credit lines less than $400 will not receive a Cash Advance Transaction Fee in the First year (Introductory period).

**(c) Credit Limit Increase Finance Charges:** A fee may be imposed for Credit Limit increases, as described under the "Credit Limit Increase Requests" section of this Agreement.

**(d) Foreign Transaction Finance Charges:** Each time you make a foreign transaction, we may impose a Transaction Fee **Finance Charge** of **3%** of the amount charged or **$1.00**, whichever is greater. For additional information, see the "Foreign Transaction" section of this Agreement.

**(e) Fees Treated as Principal:** For purposes of Finance Charge calculation, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Charges, and other charges, except cash advance fees, will be treated like purchase transactions, posted as principal, and accrue Finance Charges like purchases.

**(f) Periodic Statement Annual Percentage Rate:** If a finance charge imposed is required to be included in calculating the Annual Percentage Rate under the Federal Truth-in-Lending Act, the Annual Percentage Rate disclosed on your statement may exceed the corresponding Annual Percentage Rate disclosed in this Agreement for any billing period in which such finance charge is posted to your Account.

**11. LATE PAYMENT CHARGES:** If at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and Amount Past Due are not received by 5:00 p.m. PT on the Payment Due Date shown on your statement, a Late Payment Fee of up to $35.00 will be charged to your Account.

**12. OTHER CHARGES:** In addition to the fees and charges described above, other charges that may be imposed on your Account include the following: (1) Returned Payment Fee: If a payment is returned for any reason, a Returned Payment Fee of up to $35.00 will be charged to your Account; (2) Duplicate Statement Fee: If you request a duplicate copy of a monthly statement, you will be charged a fee of up to $10.00 for each statement copy requested; (3) Sales Slip Request Fee: If you request a copy of a sales slip, for any purpose other than to resolve a dispute about the charges on your Account, you will be charged a fee of $6.00 for each sales slip copy requested; (4) Co-applicant Fee: To add an additional Cardholder to the Account after it is opened, an application must be submitted to Credit One Bank. The co-applicant fee in effect at the time of such application will be required; and (5) Replacement Card Fee: If you request a replacement card, a Replacement Card Fee of up to $25.00 may be charged to your Account.

**13. MINIMUM PAYMENTS:** (a) You agree to pay either the entire outstanding balance or the Minimum Payment Due, as shown on your monthly statement. The Minimum Payment Due is 5% of your outstanding balance, rounded up to the next whole dollar, or $25.00, whichever is greater, plus any Late Payment Fee for the current billing cycle, and any Past Due Amount. For your Account to be considered current and to avoid a Late Payment Fee, you must pay at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and the Past Due Amount by the Payment Due Date shown on your statement. (b) Certain other service fees may be added to your minimum payment amount. When you sign up for such services, you will be notified if a fee for the service will be imposed and if it is required to be added to your minimum payment.

**14. SMALL BALANCES:** As it is uneconomical for both you and us to process payments or maintain credits that are $1.00 or less in amount, you agree as follows: (1) In any billing cycle in which you have had no transactions and your New Balance on the billing date is $1.00 or less, the balance will be rounded to zero and you will not receive a bill for this amount. (2) In the event that you have a credit balance of $1.00 or less for two consecutive billing cycles, the balance will be rounded to zero and you will not receive a refund of this amount.

**15. MAKING PAYMENTS:** Your payments must be made in US currency only, drawn on a bank domiciled in the US, through paper or electronic format not to include wire transfer or electronic transactions via Credit One Bank's account at the Federal Reserve Bank. Do not send cash through the mail, as Credit One Bank cannot be responsible for cash lost in the mailing process. To the extent that a payment reduces the principal amount outstanding on your Card Account, new credit will be available (subject to your credit limit), but only after 12 calendar days after our receipt of the payment. To insure prompt posting of payments sent through the mail, your payments must be sent to the address indicated on your statement and must be received by 5:00 p.m. PT. There will be a delay in posting payments to your Account for payments not sent to the address shown on your statement. You agree that we may process any item delivered to us for payment on the day it is received, and that we are not required to honor special instructions or restrictive endorsements. As described above, if any payment is received that does not contain your Account number or is not accompanied by your payment coupon, Credit One Bank will not be liable for processing delays or failure to process the payment to your Account. Crediting of such payments may be delayed up to five business days of receipt.

**Treatment of Check Payments:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your bank account or to process the payment as a check transaction. If a check we process in paper form is returned to us by your bank unpaid, we may re-present the returned check electronically.

**16. POSTDATED CHECKS:** You agree that we need not examine any payment check to confirm that it is not postdated, and that we may deposit any postdated check for payment to us on the day we receive it.

**17. IRREGULAR PAYMENTS:** Any payment submitted in offer of settlement of a disputed debt, including any check containing a notation such as "paid in full," must be

sent to the following address: Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If you do not forward any check or other payment marked "paid in full" to the above address, we can accept late payments or partial payments, or checks or other payments marked with similar notations, without losing any of our rights under this Agreement, including our right to seek payment of the full balance of your Account.

**18. VERIFICATION OF INFORMATION: (a) Credit Information:** You authorize us to obtain and/or use information about you from third parties and credit reporting agencies to: (1) verify your identity and/or conduct investigative inquiries; (2) determine your income and credit eligibility; (3) review your Account and provide renewal of credit; (4) verify your current credit standing in order to present future credit line increases or decreases; (5) qualify you for and present additional lines of credit or other offers; and (6) collect amounts owing on your Account. California residents, you agree to waive your right to keep confidential information under Section 1808.21 of the California Vehicle Code from us. **(b) Reporting Information:** We may furnish information concerning your Account or credit file to consumer reporting agencies and others who may properly receive that information. However, we are not obligated to release such information to anyone unless we are required to do so by law or a proper Power of Attorney is provided. **(c) Telephone Monitoring:** To be sure that your inquiries are handled properly, courteously and accurately, some of the telephone calls between our employees and our customers are monitored by supervisory or management personnel. Recordings may be made of such calls for your protection.

**19. COMMUNICATIONS: (a)** You are providing express written permission and consent authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at any time, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text/SMS message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, or from any such number or email address, without reimbursement from us. **(b) INDEMNIFICATION:** If you provide telephone number(s) for which you are not the subscriber, you understand that you shall indemnify us for any costs and expenses, including reasonable attorneys' fees, incurred as a result of us contacting or attempting to contact you at the number(s). **(c) COMMUNICATION REVOCATION:** If you do not want to receive communications as described in the previous paragraph, **you must: (i)** provide us with written notice revoking your prior consent, **(ii)** in that written notice, you must include your name, mailing address, and the last four digits of your Account number; **(iii)** advise whether you would like communications to cease via mail, telephone number(s), email, text/SMS, or cease in all forms; **(iv)** if you are requesting communications to cease via telephone number(s) and/or email, please provide the specific phone number(s) and email address; **(v)** you must send this written notice to: Attention – Credit One Bank Customer Service, P.O. Box 98850, Las Vegas, NV 89193-8850. **(d) ONLINE ACCOUNT COMMUNICATIONS:** If you do not want to receive communications previously selected as part of your online account, **you must** update your preferences under the "Email and Text Notifications" section to remove these notifications. We cannot remove these online account notifications for you.

**20. DEFAULT:** You will be in default under this Agreement if any of the following events occur: (1) you exceed your assigned credit limit; (2) you fail to make any required payment when due; (3) you die, become insolvent, file a petition in bankruptcy or similar proceeding, or are adjudged bankrupt; (4) you provide any false or misleading financial or biographical information to Credit One Bank; (5) any representation or warranty you make to Credit One Bank is false or breached; (6) a guardian, conservator, receiver, custodian or trustee is appointed for you; (7) you are generally not paying your debts as they become due; (8) the Bank reasonably believes there has been a material adverse change in your financial condition; or (9) you violate any term of this Agreement. Upon your default, Credit One Bank can close or refuse to renew your Account, demand the return of your card(s), declare your entire balance immediately due and payable, and initiate collection activity, all without prior notice or demand. You promise to pay any collection costs and attorneys' fees, including our in-house attorneys' costs, that Credit One Bank incurs as a result of your default.

**21. TERMINATION OF ACCOUNT:** This Account may be terminated by you at any time by giving notice in writing to Credit One Bank. If your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. Credit One Bank may terminate the Account and demand payment in full if you are in default under any of the terms and conditions of this Agreement, or if there is a dispute between the Cardholders as described elsewhere in this Agreement, or if a Cardholder requests termination of the Account privileges of any other Cardholder, or without cause if Credit One Bank deems termination of the Account to be in its best interests. In the event of voluntary or involuntary Account termination, all credit privileges under the Account and Credit One Bank membership will be terminated immediately. However, when your Account is closed, if there is: (1) a debit balance of $1.00 or less, that balance will be rounded to zero and you will not be required to pay this amount; or (2) a credit balance of $1.00 or less, that balance will be rounded to zero and this amount will not be refunded to you. The rounding to zero may occur after your closing statement cycles, and you may not receive a statement reflecting the rounding.

**22. SECURITY:** This is an unsecured Account, and Credit One Bank retains no security interest in your real or personal property to secure payment of your Card Account.

**23. CARD OWNERSHIP AND ACCEPTANCE:** Any credit card or other credit instrument issued to you remains the property of Credit One Bank and must be surrendered to Credit One Bank or its agent on demand. We are not liable for the refusal of Credit One Bank or any other party to honor your Card for any reason. All Cards have an expiration date. We have the right not to renew your Card for any reason.

**24. FOREIGN TRANSACTIONS:** If you make a transaction at a merchant that settles in a currency other than U.S. dollars, MasterCard Worldwide or Visa Inc. will convert that charge into a U.S. Dollar amount. That conversion will be done at a rate selected by MasterCard or Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate MasterCard or Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or on the date the transaction is posted to your Account. You agree to pay the converted amount, including any charges for the conversion that may be imposed as described above. A fee may be imposed for foreign transactions as described under the Finance Charge section of this Agreement.

**25. LOST OR STOLEN CARDS:** You may be liable for unauthorized use of your Card. If your Card is lost or stolen or you suspect that someone is using your Card without your permission, you should immediately notify Credit One Bank's Bank Card Center. You can call **(877) 825-3242.** You can also notify us in writing at **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.** You will not be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any event, your liability for unauthorized use will not exceed $50. If you allow someone to use your Card to make charges to your Card Account, you can terminate this user's authority by retrieving the Card and returning it to us. Until you do, you remain liable for any use by the authorized user. You understand and agree that this Card Account may be replaced with a substitute Account if a credit card for this Account is lost or stolen, or in the event unauthorized use of the Account is reported. All terms and conditions of this Agreement and the application shall apply to any substitute Account.

**26. CREDIT LIMIT INCREASE REQUESTS:** Credit Limit Increase requests must be made in accordance with procedures established from time to time by Credit One Bank. A fee may be imposed for credit limit increases. The fee imposed will be a **Finance Charge** of between **$0.00** and **$49.00**, depending on how long your Account has been established and your credit history with us and others. We will advise you which fee is applicable to your Account at the time you apply for a credit limit increase. Credit limit increase requests are subject to the same credit process as your original application, including review of credit bureau information. You will be notified by mail if your request for an increase is declined. Approval will be indicated in the form of a credit limit increase on your Card Account statement. For information on Credit One Bank's procedure for applying for a credit limit increase, contact us at **(877) 825-3242.**

4

**27. ACCESS TO CREDIT SCORE:** To access your free monthly Credit Score that is included with your new Account you will need to: (1) Register for Online Account Access at: www.CreditOneBank.com. (2) Accept the online Terms of Use / Credit Score Authorization Agreement associated with receiving your Credit Score. Credit Score availability can take up to 60 days from your online enrollment date. Occasionally, systems or other constraints may prevent us from updating your Credit Score in a timely manner. This service is subject to change or cancellation without notice.

**28. WAIVER OF RIGHTS:** If we waive any of our rights under this Agreement, we will not be obligated to do so again.

**29. CUSTOMER PRIVACY:** The privacy policy for Credit One Bank is provided separately in accordance with applicable law.

**30. GOVERNING LAW:** This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

**31. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

## CREDIT ONE CASH BACK REWARDS PROGRAM ("PROGRAM")

This Credit One Cash Back Rewards Program (the "Program") supplements the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (collectively, the "Cardholder Agreement") you received with your credit card account issued by Credit One Bank, N.A. (the "Account"). In this Program, the words "we," "us," "our" and "Credit One" refer to Credit One Bank, N.A. and the words "you" and "your" refer to all persons, jointly and severally, authorized to use the Account and thereby participate in the Program. By using your Account, you agree to participate in the Program and to the terms and conditions regarding the Program contained herein. In the event of any conflict between the Cardholder Agreement and this Program with respect to matters relating to the Program, this Program shall control.

**EARNING CASH BACK REWARDS:** You will receive cash back in the form of an automatic statement credit equal to 1% of "eligible net purchases" (as defined below) made with your Account. We will post a statement credit to your Account within seven days of the end of the month equal to 1% of "eligible net purchases" made with your Account from the 27th of the previous month to the 26th of the current month. If your Account is in default, as defined within your Cardholder Agreement at the time the credit is to be posted, you WILL NOT receive the credit. The eligible credit(s) will show on your billing statement as "Credit One Rewards Credit."

**ELIGIBLE NET PURCHASES:** Eligible net purchases are purchases of gasoline from merchants using Standard Industrial Classification Codes ("SIC Codes") 5172, 5541, and 5542, and purchases of groceries from merchants using SIC Codes 5411, 5422, and 5499, minus any returns or other credits using these same SIC Codes. Although a merchant or the items that it sells may appear to fit the gas or grocery reward categories, the merchant may not have or use an SIC Code that is included in this Program, and purchases with that merchant will not qualify for rewards. You WILL NOT earn rewards if a merchant does not submit the purchase using an SIC Code that we have designated for gas and grocery rewards. A merchant with more than one location may submit purchases using different SIC Codes, including SIC Codes that do not qualify under this Program. This means that purchases from the same merchant at a different location may result in no reward. Purchases from the following types of merchants are not eligible for gas rewards: oil, propane, and home heating companies. Purchases from the following merchants are not eligible for grocery rewards: Target, Walmart, K-Mart, Kaufland, Costco, and Sam's Club.

**PROGRAM RESTRICTIONS:** You will receive an automatic rewards credit on each statement that has at least one eligible net purchase. Automatic statement credits for rewards will reduce the balance on your Account but will not count as payments. You will still be required to pay at least the Minimum Payment Due as shown on your billing statement each month. You WILL NOT earn rewards for gas or grocery purchases made while your Account is in default as defined within your Cardholder Agreement. Disputed or unauthorized purchases/fraudulent transactions and illegal transactions do not earn rewards, unless otherwise specified. This Program excludes Accounts already enrolled in a different Credit One rewards program.

**AMENDMENTS:** The Program may be amended (added to, modified or deleted) by us at any time, including without limitation amendments of eligible SIC Codes without prior notice and will take effect immediately. The current version of this Program may be found at www.CreditOneBank.com in the Cardholder Agreement section of the Customer Service tab. Any revisions may affect your ability to earn rewards.

**TERMINATION:** We may suspend or terminate the Program or your participation in the Program at any time without prior notice. In such event, we will evaluate your Account for any eligible gas or grocery rewards as of the Program termination date. Provided that you meet all of the other Program Restrictions listed above at that time, you will receive a distribution of the rewards earned during the current billing period in the form of a statement credit.

**LIMITED LIABILITY:** Unless otherwise required by law, this Program, or our Cardholder Agreement with you, we will not be liable to you or anyone making a claim on your behalf, in connection with: (1) any change or termination of the Program; (2) any loss, damage, expense or inconvenience caused by any occurrence outside of our control; (3) any taxes that you incur as a result of receiving rewards, payment of which taxes will be your responsibility; (4) any merchandise or services you purchase, or for any direct, indirect or consequential damages with respect to the use of your Account. In any event, any liability that Credit One may have to you in connection with the Program shall be limited to the amount of any rewards you have earned in this Program. The Program and rewards are void or limited where prohibited or restricted, respectively, by federal, state or local law.

## YOUR BILLING RIGHTS - KEEP THIS DOCUMENT FOR FUTURE USE

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

### What To Do If You Find a Mistake on Your Statement
If you think there is an error on your statement, write to us at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.**
In your letter, give us the following information:
· *Account information:* Your name and account number.
· *Dollar amount:* The dollar amount of the suspected error.
· *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us:
· Within 60 days after the error appeared on your statement.
· At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.
You must notify us of any potential errors *in writing.* You may call us at **877-825-3242**, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### What Will Happen After We Receive Your Letter
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.
While we investigate whether or not there has been an error:
· We cannot try to collect the amount in question, or report you as delinquent on that amount.
· The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
· While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
· We can apply any unpaid amount against your credit limit.
After we finish our investigation, one of two things will happen:
· *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
· *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.
If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

### Your Rights If You Are Dissatisfied With Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase. If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872**.
While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

ARBITRATION AGREEMENT

**PLEASE READ THIS ARBITRATION AGREEMENT OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

### *Agreement to Arbitrate:*

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.

### *Claims Covered:*

· Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your Account; any disclosures or other documents or communications relating to your Account; any transactions or attempted transactions involving your Account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your Account; services or benefits programs relating to your Account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your Account, goods or services financed under your Account, or the terms of financing; the application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement); and any other matters relating to your Account, a prior related Account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this Arbitration Agreement in the broadest way the law will allow it to be enforced.
· Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your Account, your agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of those entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made, and Claims brought against any other person or entity named as a defendant or respondent in a Claim brought by you against us.
· Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.
· Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others. Claims subject to arbitration include Claims that are made as counterclaims (including but not limited to counterclaims by us to collect amounts in default from you), cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties.
· As set forth below, Claims made as part of a class action, private attorney general action or other representative action are subject to arbitration but must be arbitrated on an individual basis. If a Claim is arbitrated, neither you nor we will have the right to participate in a class action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member. Thus, if you or we require arbitration of a particular Claim, neither you nor we may pursue the Claim in any court litigation, whether as a class action, private attorney general action, other representative action or otherwise, and the arbitration of such Claim must proceed on an individual basis.

### *Claims Not Covered:*

· Claims are not subject to arbitration if they are filed by you or us in a small claims court or your state's equivalent court, so long as the matter remains in such court and advances only an individual claim for relief. Also, disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof are not subject to arbitration and are for a court to decide. But disputes about the application, enforceability or interpretation of the Card Agreement as a whole are subject to arbitration and are for the arbitrator to decide.

**Initiation of Arbitration:** The party filing arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your Account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrators, and other related materials, including forms and instructions for initiating arbitration, by contacting the arbitration administrators as follows:

| | |
|---|---|
| **American Arbitration Association ("AAA")** | **JAMS** |
| 335 Madison Avenue, Floor 10 | 1920 Main Street, Suite 300 |
| New York, NY 10017-4605 | Irvine, CA 92614-7279 |
| Web Site: www.adr.org | Web Site: www.jamsadr.com |

If neither AAA nor JAMS is willing or able to serve, and you and we are unable to agree on a substitute, a court with jurisdiction will select the administrator or arbitrator.

**Procedures and Law Applicable in Arbitration:** A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years' experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this Arbitration Agreement is inconsistent with those procedures and rules, in which case this Arbitration Agreement will prevail. This Arbitration Agreement will also prevail to the extent that it is inconsistent with the Card Agreement. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law, consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. You and we agree to keep the details of the arbitration, including communications in any medium, testimony, documents and the award, confidential unless otherwise required by applicable law or the administrator's rules. The arbitrator will have the power to award to a party any damages or other relief provided for an individual claim under applicable law (including constitutional limits that would apply in court), and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs:** If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay your share of the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for your share of the initial filing fee if you paid it and you prevail. Except as set forth below, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that (a) the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party, (b) the arbitrator shall require you to pay us collection costs and attorneys' fees, including our in-house attorneys' costs, that we incur as a result of your default, as set forth in the Card Agreement and (c) the arbitrator may assess attorneys' fees and costs against a party upon a showing by the other party that the first party's claim(s) or conduct was frivolous or pursued in bad faith or solely for purpose of multiplying the arbitration proceedings unreasonably or vexatiously.

**No Class Arbitration or Consolidation or Joinder of Parties:** All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this Arbitration Agreement or the Card Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration. No arbitrator shall have the authority to conduct any arbitration in violation of this Arbitration Agreement or to issue any relief that applies to any person or entity other than you or us individually. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single Account and/or related Accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned. Provided, however, that nothing in this Arbitration Agreement regarding consolidation and joinder is intended to impair a respondent's right to assert a counterclaim against the claimant pursuant to the administrator's rules.

**Enforcement, Finality:** You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. We will not amend this Arbitration Agreement in a manner that adversely affects your rights without giving you prior notice.

An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction and shall be subject to judicial review only as provided in the FAA. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

**Severability, Survival:** This Arbitration Agreement shall survive: (i) termination or changes in the Card Agreement, the Account and the relationship between you and us concerning the Account; (ii) the bankruptcy of any party, to the extent permitted by applicable bankruptcy law; and (iii) any transfer or assignment of your Account, or any amounts owed on your Account, to any other person. If any part of this Arbitration Agreement other than the section titled *"No Class Arbitration or Consolidation or Joinder of Parties"* is declared unenforceable, the remainder shall be enforceable. If the section titled *"No Class Arbitration or Consolidation or Joinder of Parties"* is declared unenforceable in a proceeding between you and us, without impairing the right to appeal such decision, this entire Arbitration Agreement (except for this sentence) shall be null and void in such proceeding.

© 2016 Credit One Bank, N.A. All rights reserved.
Credit One®, Credit One Bank® and corresponding logos are federally registered trademarks.

C50-00389          **D809 / M-116868**