```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   MARCELINO CENTENO, et al.,        )   No. 17 C 5233
                                       )
 5                  Plaintiffs,        )
                                       )
 6           vs.                       )   Chicago, Illinois
                                       )
 7   LVNV FUNDING, LLC, et al.,        )
                                       )   January 31, 2018
 8                  Defendants.        )   9:45 a.m.

 9
                     TRANSCRIPT OF PROCEEDINGS
10               BEFORE THE HON. SARA L. ELLIS

11
     APPEARANCES:
12
     For the Plaintiffs:    MS. CELETHA CHATMAN
13                          Community Lawyers Group, Ltd.,
                            73 West Monroe Street, Suite 514,
14                          Chicago, Illinois  60603

15
     For the Defendants:    MR. MANUEL H. NEWBURGER
16                          Barron & Newburger PC,
                            7320 North Mopac Expressway, Suite 400,
17                          Austin, Texas  78731

18                          MS. CORINNE HEGGIE
             `              Scharf Banks Marmor LLC,
19                          333 West Wacker Drive, Suite 450,
                            Chicago, Illinois  60606
20

21

22

23                       PATRICK J. MULLEN
                       Official Court Reporter
24                    United States District Court
                219 South Dearborn Street, Room 1412
25                       Chicago, Illinois 60604
                          (312) 435-5565
```

1     THE CLERK:  2017 C 5233, Centeno versus LVNV Funding.

2     MS. CHATMAN:  Good morning, Your Honor.  Celetha

3  Chatman on behalf of the plaintiffs.

4     MS. HEGGIE:  Good morning, Your Honor.  Corinne Heggie

5  on behalf of LVNV Funding and Resurgent Capital Services.

6     THE CLERK:  And I have Mr. Newburger appearing by

7  phone, correct?

8     MS. HEGGIE:  Yes, you do, Ms. Johnson.

9     THE CLERK:  One moment.

10    (Brief pause.)

11     MR. NEWBURGER:  (Via telephone) Hello.  This is Manny

12  Newburger.

13     THE CLERK:  Good morning.  This is Judge Ellis'

14  courtroom calling you on 2017 C 5233, Centeno versus LVNV

15  Funding.  Please state the party that you represent.

16     MR. NEWBURGER:  I represent the defendants, both of

17  the defendants in this case, LVNV and Resurgent.

18     THE CLERK:  Thank you.

19     THE COURT:  All right.  So we've got a lot of motions

20  here back and forth.  All right.  So what's going on with these

21  depositions?

22     MS. CHATMAN:  Well, Your Honor, there's only one

23  plaintiff we haven't been able to depose.  Your Honor, it's

24  plaintiff Plewa.  Now, prior to her deposition date, Your

25  Honor, we had a meeting with our client, and we explained to

1    her the need for her deposition.  We confirmed we were ready to

2    go, Your Honor.

3         The day of the deposition, Your Honor -- our client

4    doesn't have a cell phone, so all she has is a house phone.

5    The day of the deposition, Your Honor, we hadn't heard from

6    her.  We were concerned.  We went to her house, Your Honor, to

7    see what the problem was when we saw that she wasn't going to

8    make the 9:00 o'clock deposition on the date for her

9    deposition, Your Honor, and we were informed that she was in

10   the hospital.

11        Your Honor, we haven't been able to get in contact

12   with her since then.  Your Honor, we planned on going back to

13   her house to see what the situation is.

14        THE COURT:  Do you have medical records to prove that

15   she's in the hospital?

16        MS. CHATMAN:  I don't, Your Honor.  But when we're

17   able to get back in contact with her, Your Honor, that's

18   something that we can get.  If that's needed, that's something

19   that we can provide, Your Honor.  But I would ask that

20   defendants' motion to compel the deposition of plaintiff be

21   entered and continued for a couple of weeks, Your Honor, just

22   to allow me time to get in contact with her to see what's going

23   on, to go back to her house.

24        THE COURT:  Well, so her deposition -- all right.  So

25   her deposition was scheduled for January 25th.

10:19:51
10:20:08
10:20:28
10:20:39
10:21:06

4

1     MS. CHATMAN:  It was scheduled for January 25th.

2     THE COURT:  Did you tell defense counsel that your

3  client was in the hospital?

4     MS. CHATMAN:  I did, Your Honor, once I found out that

10:21:36  5  that's where she was at, yes.  I went --

6     THE COURT:  When did you do that?

7     MS. CHATMAN:  The day of, Your Honor, because that's

8  the day I found out she was in the hospital.  I didn't know.

9     THE COURT:  How did you do it?

10:21:45  10     MS. CHATMAN:  I did it via e-mail, Your Honor.

11     MS. HEGGIE:  I might add, Your Honor, that it was 49

12  minutes after the deposition was supposed to start with a court

13  reporter and an interpreter.

14     MS. CHATMAN:  And that's just because, Your Honor, we

10:21:58  15  went out to her house.

16     THE COURT:  What time did you go out to her house?

17     MS. CHATMAN:  At 9:00, Your Honor, when we saw that

18  she wasn't appearing.

19     THE COURT:  All right.  So in the motion, in

10:22:33  20  defendants' motion, you're stating that -- at the top of page 4

21  in the defendants' motion, you state:

22     "No explanation was provided for Ms. Chatman's failure

23  to appear."

24     MS. CHATMAN:  I think --

10:23:22  25     THE COURT:  But --

1    MS. CHATMAN:  Oh, sorry.

2    THE COURT:  But if you're looking at Exhibit 4, then

3    it states that Ms. Plewa is in the hospital.  So that would

4    give you an explanation.

10:23:40    5    MS. HEGGIE:  It would, Your Honor, but it was

6    unsubstantiated.  I would like to also point out the fact that

7    the deposition was court ordered, and this is now the second

8    time we will be back in court to seek an order, which is what

9    we need as evidenced by the fact that Ms. Plewa didn't respond,

10:24:00    10    didn't show up for a notice that we had previously issued which

11    was before the end of the year.  We had to come in to compel to

12    get an order for January 25th, and then 45 minutes after the

13    dep we're notified she's in the hospital, but we don't have any

14    substantiation of that fact.

10:24:18    15    MS. CHATMAN:  Your Honor, I would just state that the

16    January deposition was the only deposition date that my client

17    agreed to appear for, Your Honor, and we've been working

18    diligently in trying to get her in.  Your Honor, this isn't --

19    you know, we obviously understand defendants' frustration, Your

10:24:45    20    Honor.  This isn't something that we --

21    THE COURT:  Well, here's the thing, Ms. Chatman.

22    Ms. Plewa filed this lawsuit.  She did not have to file this

23    lawsuit.  This is a voluntary action that she took.  By doing

24    that, she has certain obligations, one of which is to show up

10:25:06    25    for her deposition.  While I am sympathetic that she is in the

6

1   hospital or was in the hospital on January 25th, according

2   to -- who did you speak to?

3           MS. CHATMAN:  I spoke to one of the relatives at her

4   house.

10:25:21   5           THE COURT:  Do you know what hospital she was at?

6           MS. CHATMAN:  I do not know what hospital she's at,

7   Your Honor.

8           THE COURT:  Did you ask?

9           MS. CHATMAN:  I did not, Your Honor.  I didn't really

10:25:29   10   know the person I was speaking to was in-depth to go into it,

11   Your Honor, so I didn't.  They stated that she'd be back later

12   that week, so I tried to get in contact with her again, Your

13   Honor.

14           THE COURT:  And?

10:25:43   15           MS. CHATMAN:  And I have not, so I'm going to go back

16   to her house.

17           THE COURT:  Ms. Chatman, I don't understand.  So this

18   motion was filed on January 26th, right?

19           MS. CHATMAN:  Uh-huh.

10:26:00   20           THE COURT:  And it was noticed up for today, so you

21   knew you were coming in today, right?

22           MS. CHATMAN:  I did, Your Honor.

23           THE COURT:  And you knew that I wouldn't be

24   particularly happy with your client not showing up for her

10:26:12   25   deposition yet again, so I would think that you would come with

1  more information like:  This is the name of the individual I

2  spoke to.  This is the hospital where Ms. Plewa was.  This is

3  why she went to the hospital.  This is when she went to the

4  hospital.  This is everything I did to get in contact with her

10:26:48  5  to document the fact that she was in the hospital.

6          MS. CHATMAN:  I understand, Your Honor.  I have not

7  been able to make contact with her, though, to get that

8  information.

9          THE COURT:  Well, you went to the house, and you spoke

10:27:06  10  to someone.

11          MS. CHATMAN:  I did.

12          THE COURT:  And you didn't find out who that person

13  was.  You didn't get a name, right?

14          MS. CHATMAN:  No, we don't have a name, Your Honor.

10:27:13  15          THE COURT:  And you're not sure how that person is

16  related to Ms. Plewa.

17          MS. CHATMAN:  We are not.

18          THE COURT:  And you don't know what hospital she went

19  to.

10:27:22  20          MS. CHATMAN:  We do not, Your Honor.

21          THE COURT:  And you don't know when she went to the

22  hospital.

23          MS. CHATMAN:  We don't have an exact date as to when

24  she went to the hospital, Your Honor.

10:27:33  25          THE COURT:  And you don't know why she went to the

1    hospital, is that correct?

2         MS. CHATMAN:  The relative stated it was a surgery,

3    that she was going to a surgery.  So other than that, Your

4    Honor, I don't have any additional information.  If you give

5    additional time to get that information, Your Honor --

6         THE COURT:  But you should have had that information

7    today.  That's what I'm telling you, because frankly the fact

8    that Ms. Plewa did not show up previously for her depositions

9    makes me a little suspicious about her going to the hospital

10   and not showing up for this deposition.  It could certainly

11   be and it's not out of the realm of possibility that Ms. Plewa

12   was at her house when you came there in the back, right?  It

13   could be.  It could be and could not be, and the fact that she

14   hadn't shown up twice before raises that suspicion.  I think

15   it's a fair suspicion.  So it would be incumbent upon you to

16   have as much information as possible when you come to court to

17   talk about it.

18        You can be frustrated with me and think that I'm being

19   unreasonable.  I don't think I'm being unreasonable.  I think

20   that even when you are representing people who don't have a

21   cell phone, who might be hard to get in contact with, they

22   still have an obligation to litigate their case, part of which

23   is showing up for a deposition, particularly when it's court

24   ordered, and if it's an emergency to tell you that she can't be

25   there and leave you a message.  She has your phone number,

10:27:50

10:28:22

10:29:02

10:29:30

10:30:08

1    right?

2         MS. CHATMAN:  That's correct, Your Honor.

3         THE COURT:  To call you and say:  I know I'm supposed

4    to be there tomorrow, and I'm on my way to the hospital.

10:30:27

5         MS. CHATMAN:  Your Honor, I had Ms. Plewa just in my

6    office a week before the deposition, and we talked.  Well, not

7    to disclose any information, but we did have a frank

8    conversation.  So we were obviously just as surprised when she

9    didn't show up, Your Honor.  It's not like we haven't been in

10:30:53

10   communication with her or anything like that, Your Honor.  We

11   just went over her case a week before the deposition.

12        THE COURT:  And did you call her the day before to

13   remind her of the deposition?

14        MS. CHATMAN:  The day before, Your Honor, we called

10:31:08

15   her house and couldn't get in contact.

16        THE COURT:  Meaning that nobody answered the phone or

17   you didn't talk to her?

18        MS. CHATMAN:  Meaning no one answered the phone.

19        THE COURT:  All right.  Turning to the deposition of

10:31:54

20   you, the defendants state that you are the person that drafted

21   each of the letters.  Is that correct?

22        MS. CHATMAN:  That's correct, Your Honor.

23        THE COURT:  Okay.  When the defendants made their

24   disclosures in October, they designated you as one of their

10:32:27

25   witnesses.  Did you realize that when you saw those

1  disclosures?

2      MS. CHATMAN:  I saw it, Your Honor, but it's not

3  unusual for that to be in their disclosures, in the defendants'

4  disclosures.

10:32:46    5      THE COURT:  And what is the basis for defendants

6  wanting to depose Ms. Chatman?

7      MS. HEGGIE:  Well, Your Honor, as Ms. Chatman just

8  explained, she authored the letters that are the sole basis of

9  these five complaints.  Ms. Chatman's position is that the

10:34:03   10  letters are not ambiguous, but at least two of the plaintiffs

11  who have been deposed have said the letters could be read two

12  different ways.  I believe the two plaintiffs who were deposed

13  last week testified consistently.

14      Ms. Chatman is the only person who can answer

10:34:26   15  questions as to why the letters were written the way they were,

16  why these letters -- the letters state that the debt reported

17  on the credit report is not accurate, but the complaint, Your

18  Honor, alleges, and we submit falsely, that the letters state

19  that the amount reported is not accurate.  There's ambiguity,

10:34:48   20  and the only person who can testify about that ambiguity is

21  Ms. Chatman.

22      THE COURT:  All right.  So hold on.

23      (Brief pause.)

24      THE COURT:  All right.  I'm going back to the

10:36:55   25  complaint.  So the basis of the complaint is that Ms. Chatman

1    sent a letter to the defendants indicating that the plaintiff

2    disputed the debt.  Then in running a credit report, the credit

3    report did not indicate that this debt was in dispute --

4              MS. HEGGIE:  Your Honor, I might --

5              THE COURT:  -- is that correct?

6              MS. HEGGIE:  I might add with respect to the letter,

7    Your Honor, the letter does not use the word "dispute."  I'm

8    quoting from the letter, and this is the complaint that was

9    filed on behalf of plaintiff Akins, quote:

10             "This client regrets not being able to pay.  However,

11   at this time they are insolvent as their monthly expenses

12   exceed the amount of income they receive, and the debt reported

13   on the credit report is not accurate."

14             Defendants' position is that that wording does not

15   convey the dispute.

16             THE COURT:  The language "the debt reported on the

17   credit report is not accurate?"

18             MS. HEGGIE:  Yes, Your Honor.

19             THE COURT:  And it's defendants' position that that

20   language is ambiguous?

21             MS. HEGGIE:  Yes, Your Honor.

22             THE COURT:  Saying that the debt reported is accurate

23   is ambiguous?

24             MS. HEGGIE:  Yes, Your Honor.

25             THE COURT:  How is that ambiguous?

10:37:40

10:37:50

10:38:20

10:38:35

10:38:47

1    MS. HEGGIE:  It's ambiguous, and it's also not

2  consistent with what's in the complaint, Your Honor.

3    THE COURT:  Answer my question.  How is that

4  ambiguous?

10:38:56   5    MS. HEGGIE:  In the words.  It would be very easy for

6  the word "dispute" to have been used.

7    THE COURT:  Of course, it would be.

8    MS. HEGGIE:  The plaintiffs testified that they had --

9    THE COURT:  However, I'm asking you again.  How is the

10:39:10  10  that language ambiguous:  "The debt reported on the credit

11  report was not accurate"?

12    MR. NEWBURGER:  Your Honor, will the Court permit me

13  to answer?

14    THE COURT:  Sure.

10:39:21  15    MR. NEWBURGER:  Thank you, Your Honor.  The ambiguity

16  exists because that language suggests that the credit reporting

17  agency may have it wrong, unlike other letters in Ms. Chatman's

18  other cases, some of which were sent as much as a year before

19  this letter.  The letter does not say the amount is disputed.

10:39:37  20  It does not say the amount is inaccurate.  It doesn't say the

21  debt is disputed.  It says the debt reported is.  It is

22  possible that our client is reporting it accurately and that

23  the credit reporting agency has it wrong.

24    In this case, I should point out that four of the five

10:39:57  25  plaintiffs have testified that they owe the debt and would pay

1   it even today if they could.  So the potential reading that

2   that refers to what the credit reporting agency is doing wrong

3   and not LVNV doing something wrong becomes rather important

4   here.

10:40:14

5           We're accustomed to seeing lawyers who want to invoke

6   the statute that says the data is disputed saying the data is

7   disputed, and the reason we're trying to depose Ms. Chatman is

8   because she appears to have deliberately chosen words that no

9   only do not match what's in her complaint but do not match

10:40:29

10  other letters in her other cases that do not create a question

11  of whether the letter is referring to the consumer reporting

12  agency versus the creditor but that make it clear that it's

13  talking about the creditor.  I hope that answers the Court's

14  question.

10:40:48

15          THE COURT:  Well, you've provided an answer, but in

16  reading that language, "the debt reported is not accurate,"

17  that doesn't appear just on the face of it -- the read of it is

18  that they're saying, that the plaintiff is saying:  It's not

19  accurate.  I am disputing the debt reported because it is not

10:41:38

20  accurate.

21          Now, could Ms. Chatman have been more clear in the

22  letter and used the word "dispute"?  She could have, but the

23  statement, "the debt reported is not accurate," seems fairly

24  clear that the plaintiff is disputing the debt reported.

10:42:15

25          Now, the complaint says "the amount reported is not

1    accurate" as opposed to "the debt reported is not accurate."

2    When you deposed each of plaintiffs, what did the plaintiffs

3    say in their depositions with regard to the amount that was

4    reported?  Did they say that the amount reported was an

5    accurate amount or not?

6            MR. NEWBURGER:  The deposition testimony, Your Honor,

7    well, first of all, I need to disclose we don't have the

8    transcripts back from last week, but the plaintiffs --

9            THE COURT:  But even earlier?

10            MR. NEWBURGER:  So I'm getting to that.  With the

11    first two we do, and I think the answer is that they've stuck

12    by their position.  Yet each has admitted that they owe the

13    debt that was reported by the bank, and that's the debt that

14    LVNV is claiming.  Each has admitted that not only do they owe

15    it but that they would pay it today if they could because they

16    know they owe it.

17            THE COURT:  But did they --

18            MR. NEWBURGER:  The two from last week -- I'm sorry,

19    Your Honor.  I didn't mean to interrupt.

20            THE COURT:  That's okay.  Did they specifically state,

21    though, that the amount that was reported on their credit

22    report was an accurate amount of money?

23            MR. NEWBURGER:  They expressed a belief to that

24    effect, Your Honor.  At least three of them have expressed that

25    belief, although one of them expressed the position that the

10:43:01

10:43:14

10:43:37

10:43:48

10:44:11

1   amount reported between LVNV and the bank did not match when,

2   in fact, the credit report she's provided shows that it does.

3   The two I deposed last week, I believe both testified that they

4   agree that the language we asserted as ambiguous is reasonably

5   susceptible to more than one meaning.

6        I regret that we don't have those transcripts, but I

7   believe that both of the plaintiffs deposed last week,

8   Mr. Centeno and Ms. Akins, both agreed that you could read that

9   language to mean two different things.  As the Court knows, the

10  reason that's an issue for us is that ambiguity is construed

11  against the drafter.

12        THE COURT:  Right.

13        MR. NEWBURGER:  So our concern is this.  I intend no

14  disrespect, but it appears to my client that these letters were

15  carefully crafted by a lawyer in a way designed not to flag a

16  dispute so as to lead to these lawsuits.  Since two of the

17  plaintiffs appear to have conceded that the letters could be

18  read more than one way, we want to understand why it is that

19  Ms. Chatman chose not to use the language that's been used in

20  other cases, the clear language used by a Mr. Finko, who's of

21  counsel at her firm, saying the debt is disputed, which we've

22  pointed out is in one of the cases she cited to the Court.

23        The language that her non-lawyer clients have used and

24  the language that her local counsel in Texas used that said the

25  debt is disputed, these were all cases where she was attorney

1     of record long before these letters were written.  So given

2     that fact, I understand the Court is skeptical as to ambiguity,

3     and it's my intention to argue that with you.  You are the

4     Judge, but given that two of the plaintiffs have conceded that

10:46:06    5     point, we at least think we ought to get to find out why it is

6     that Ms. Chatman chose to use the language she chose because

7     each of the plaintiffs say they didn't write these letters and

8     don't know why they were written this way.

9               THE COURT:  All right.  I want to see the deposition

10:46:28    10    transcripts before I rule on whether Ms. Chatman -- well,

11    whether I'll allow her deposition.

12              MS. CHATMAN:  Your Honor, if I may, can I speak to the

13    motion to quash?

14              THE COURT:  Sure.

10:46:34    15              MS. CHATMAN:  I want to point out, Your Honor, that

16    this isn't new language to defendants, one, and two, that the

17    letter speaks for itself, Your Honor.  Numerous courts in this

18    district have held that the language can only be read one way,

19    Your Honor.  In our motion to quash, we cited to numerous cases

10:46:56    20    in this district where the courts have held that the language

21    in the letter is not ambiguous, Your Honor.

22              THE COURT:  Well, I want to see what your clients said

23    during their depositions.

24              MR. NEWBURGER:  Your Honor, may we submit that by

10:47:14    25    letter to the Court with the transcript and, if so, do you want

1    it electronically filed or a hard copy submitted?

2        THE COURT:  You can do it electronically.  If you

3    would, just send it to my courtroom deputy and then copy

4    Ms. Chatman.

10:47:30    5        MR. NEWBURGER:  Thanks, Your Honor.  We will do that.

6        THE COURT:  When do you think you could get that done?

7        MR. NEWBURGER:  I can check with the court reporter

8    and find out when the transcripts should be ready, but

9    typically I'd expect to have them by late next week.

10:47:42    10        THE COURT:  Okay.  Then I will have you back here on

11   February 14th.

12        Ms. Johnson, how do we look then?

13       (Discussion off the record.)

14        THE COURT:  All right.  I will have you back here on

10:48:32    15   the 14th.

16        MR. NEWBURGER:  Your Honor, just one disclosure to the

17   Court, if I may.  You have discovery presently scheduled to

18   close on the 12th.  I have killed myself to get these

19   depositions done without asking you to modify your scheduling

10:48:55    20   order.  I don't like asking judges to do that.  I know defense

21   counsel always seem to have reasons for not completing

22   discovery on time, and I try not to be one of those.

23        I spent two months trying to get depositions scheduled

24   by agreement.  I finally noticed them.  The day before the

10:49:09    25   depositions were commenced in December as I was on my way to

1    Chicago, Ms. Chatman e-mailed me to tell me that Ms. Plewa
2    wasn't showing and provided no date.

3                The only day I can get back to Chicago within your
4    current scheduling order to do Ms. Plewa's deposition would be
10:49:26  5    on the 9th, and that requires me to reschedule my return flight
6    home from another trip.  But I looked, and at least the last
7    time I checked I could fly to Chicago next week at the same
8    time that this --

9                THE COURT:  This --
10:49:39  10                MR. NEWBURGER:  I'm sorry.  I didn't mean to
11    interrupt, Your Honor.  Go ahead, please.

12                THE COURT:  So what I'm going to do is this.  What's
13    left?  Is it just Ms. Plewa's deposition and then potentially
14    Ms. Chatman's?

10:49:53  15                MR. NEWBURGER:  Yes, Your Honor.

16                MS. CHATMAN:  And we're taking defendant's dep
17    tomorrow, Your Honor, so currently that still needs to be done.

18                THE COURT:  Okay.

19                MS. HEGGIE:  And, Your Honor, I might add that in our
10:50:03  20    motion one of the prayers for relief is that in light of the
21    conduct that plaintiffs not be able to go forward with the
22    depositions of the defendants.  I raise it for the record.

23                THE COURT:  Okay.  Well, at this point I'm going to
24    have defendants' depositions go forward.  So with regard to
10:50:28  25    Ms. Plewa, we will schedule that on the 14th.  When you come

1    back on the 14th, I expect that I will have documentation of

2    Ms. Plewa being in the hospital and that I have a new date for

3    her deposition that works with defendants' schedule.  Then I

4    will decide on Ms. Chatman's deposition, whether I will allow

10:51:09    5    that deposition to go forward.

6              Additionally, I am going to have plaintiffs bear the

7    costs of -- who was it that came out?

8              MS. HEGGIE:  Mr. Newburger, Your Honor.

9              MR. NEWBURGER:  That was me, Your Honor, Emanuel

10:51:41    10    Newburger.

11             THE COURT:  All right.  I'm going to have plaintiffs

12    bear the costs of Mr. Newburger, Mr. Newburger's costs for

13    coming out on the 25th.

14             MR. NEWBURGER:  Do you want an affidavit as to fees

10:51:57    15    and costs on that, Your Honor?

16             THE COURT:  It's fine if you want to do that, or if

17    you just want to send Ms. Chatman the receipts and then a

18    statement of what your costs -- what your fees would have been

19    for that as well.  If there's a dispute, we can take that up on

10:52:28    20    the 14th.

21             MR. NEWBURGER:  I will do so, Your Honor.

22             THE COURT:  But I would presume that it's going to be

23    fairly straightforward, your flight, your hotel, and then the

24    hours that you were here.

10:52:36    25             MR. NEWBURGER:  Correct, Your Honor.  Then since

1    Ms. Chatman wasn't appearing once Ms. Plewa failed to appear, I

2    was able to schedule an earlier flight. So really, the only

3    reason I ended up being there on the 25th was for Ms. Plewa,

4    and I went home early. So it's pretty easy to identify the

10:52:57    5    fees and costs.

6        THE COURT: Okay. So go ahead and just do that. If

7    there are any issues, let me know.

8        MR. NEWBURGER: Thank you, Your Honor.

9        MS. CHATMAN: Your Honor, just for clarification on

10:53:03    10    that, we're talking about the costs for the 25th, just the

11    25th, right?

12        THE COURT: Yes.

13        MS. CHATMAN: Okay.

14        THE COURT: The costs for the 25th.

10:53:11    15        MS. CHATMAN: Okay. So that just resolved -- that

16    just involved Ms. Plewa's deposition, the costs and fees for

17    Ms. Plewa's deposition, right?

18        THE COURT: Yes.

19        MS. CHATMAN: Okay. Thank you, Your Honor.

10:53:22    20        THE COURT: So what I anticipate is it will be --

21    Mr. Newburger, when did you fly in?

22        MR. NEWBURGER: I flew in -- and I think that's what

23    this is getting to -- I flew in on the 23rd to depose

24    Mr. Centeno and Ms. Akins on the 24th. So the problem is I

10:53:43    25    would have had the air fare no matter what, which I think is

1    the point Ms. Chatman is making, but I'm going to have to fly

2    back a third time to depose Ms. Plewa.  So really what I'll

3    have is an air fare I haven't yet incurred or the one that I

4    already incurred, but it seems that my client shouldn't have to

10:54:00  5    pay for three flights to take one plaintiff's deposition.

6            THE COURT:  I agree.  So what it will be is the cost

7    of your flight, and it will be the one night hotel stay and

8    then your time on the 25th.

9            MR. NEWBURGER:  Thank you, Your Honor.  I'll submit

10:54:28  10   those to Ms. Chatman and see if we can agree.

11           THE COURT:  All right.  Then did I give you a time on

12   the 14th?

13           MS. HEGGIE:  No, Your Honor, not yet.

14           THE COURT:  Okay.

10:55:17  15      (Discussion off the record.)

16           THE COURT:  We'll set this for 10:00 o'clock on the

17   14th, and we'll do this before the sentencing if it goes.

18           THE COURT:  Okay.  All right.  So 10:00 o'clock on the

19   14th.  So I should have then -- I would like those depositions

10:56:11  20   then by the 9th, please.

21           MS. HEGGIE:  Yes, Your Honor.  Your Honor, just in

22   terms of housekeeping, would I file that with a notice of

23   filing, and then we'll obviously get a copy to your clerk, the

24   hard copy to your clerk?

10:56:28  25           THE COURT:  Sure, that's fine.

1    MS. HEGGIE:  Great.  Thank you, Your Honor.

2    THE COURT:  That's fine.

3    MS. CHATMAN:  Just for clarification, will you be

4    submitting the full deposition testimony?

10:56:34   5    MS. HEGGIE:  That's what we said.

6    MS. CHATMAN:  Okay.

7    MS. HEGGIE:  And we'll order the minis.

8    THE COURT:  Yes, the minis are fine.  Okay.

9    MS. HEGGIE:  And, Your Honor, defendants did file a

10:56:45   10   partial motion for judgment on the count alleged in the

11   complaint brought pursuant to the Illinois Collection Agency

12   Act.  We were hopeful we could enter a briefing schedule on

13   that motion.

14   THE COURT:  That's fine.  We can do that done as well.

10:57:04   15   When do plaintiffs want to file a response?

16   MS. CHATMAN:  If we could have 30 days, Your Honor.

17   THE COURT:  Sure.

18   THE CLERK:  March 2nd.

19   THE COURT:  All right.  And the reply?

10:57:19   20   MS. HEGGIE:  If we could file it by the 21st, which is

21   just shy of -- March 21st, Wednesday, March 21st, Your Honor.

22   THE COURT:  Sure.

23   MS. CHATMAN:  Your Honor, I guess there's one question

24   regarding the motion for judgment on the pleadings.  Your

10:57:42   25   Honor, we thought that we'd be able to resolve everything with

1  motions for summary judgment, and we thought that would be the

2  most efficient way to handle all the issues, Your Honor.

3       THE COURT:  Well --

4       MS. CHATMAN:  This is just going to make us have to do

5  additional briefing when we could just do one.  We could just

6  respond to everything.

7       MS. HEGGIE:  Your Honor, this is a straightforward

8  issue.

9       MR. NEWBURGER:  Your Honor --

10      THE COURT:  So in terms of timing, all that you have

11  left are Ms. Plewa's deposition and potentially Ms. Chatman's

12  deposition from the defendants' end of things, right?

13      MS. HEGGIE:  Yes, Your Honor.

14      THE COURT:  Okay.  Is there any reason why you

15  wouldn't move for summary judgment on both counts?

16      MR. NEWBURGER:  Your Honor, may I address that?

17      THE COURT:  Sure.

18      MR. NEWBURGER:  We separated it this way thinking it

19  was easier for the Court and frankly efficient.  Ms. Chatman

20  just briefed this exact issue and lost in a case called Skinner

21  in this district, and so the 12(c) motion was a decision made

22  based on a recent decision in the district that's dead on

23  point.  I thought that was a fairly simple way to address

24  something that had nothing to do with the facts or summary

25  judgment evidence and is based solely on the face of the

10:57:57

10:58:09

10:58:33

10:58:46

10:59:10

24

1  complaint.  We separated it that way thinking we were making

2  the Court's life easier, and we thought that was fairly easy.

3  I'm somewhat surprised that it's not for Ms. Chatman.

4          MS. CHATMAN:  We just think it would be easier for

10:59:27  5  everybody for us to do one response to everything, Your Honor.

6  That's why we brought it to the Court's attention today.

7          THE COURT:  So you went through this.  Who was the

8  judge in the Skinner case?

9          MS. CHATMAN:  The judge was Judge Aspen, Your Honor.

10:59:46  10          THE COURT:  Okay.

11          MS. CHATMAN:  I would point out that there is a

12  circuit split in this district on the Debt Collection Agency

13  Act and how it's interpreted.

14          THE COURT:  Well, except that if I -- well, we'll do

11:00:32  15  it this way.  We'll split it up.  So we'll do the judgment, the

16  motion for judgment on the pleadings with regard to that count.

17  Then with regard to the Fair Debt Collection Act count, we'll

18  do that by summary judgment.

19          MS. HEGGIE:  Thank you, Your Honor.

11:00:52  20          MS. CHATMAN:  I'm sorry, Your Honor.  Just one more

21  time for clarification on this.  Just so I know, when we do

22  file our motions for summary judgment, Your Honor, are we going

23  to have to bring those again and move for summary judgment on

24  those and brief the issues again?  Is that the --

11:01:10  25          THE COURT:  No.

1        MS. CHATMAN:  Okay.

2        THE COURT:  Why would you brief something twice under

3  two different standards?

4        MS. CHATMAN:  Okay.

11:01:21  5        THE COURT:  No, I'm asking.  Why would you do that

6  twice under two different standards?

7        MS. CHATMAN:  Well, Your Honor, I guess we probably

8  won't have a decision by the time we move, by the time we move

9  for summary judgment.

11:01:34  10        THE COURT:  Why do you think that I would have you

11  move for summary judgment on a claim that I haven't made a

12  decision on yet?

13        MS. CHATMAN:  I didn't know your take on it, Your

14  Honor.  So if that's it, then I understand.

11:01:50  15        THE COURT:  Don't you think that it would make more

16  sense to get a decision on the motion for judgment on the

17  pleadings before I have you file a summary judgment motion?

18        MS. CHATMAN:  I did, Your Honor, so that was my only

19  concern.  So yes, I do think that makes sense, the most sense.

11:02:09  20        THE COURT:  It may not appear that I pay attention but

21  I do, and I'm not going to make people do extra work that they

22  don't need to do.  So we can take care of this, and I will

23  rule.  Then if it goes out on a motion for judgment on the

24  pleadings, then you'll move on the Fair Debt Collection Act

11:02:37  25  claim.  If it doesn't go out, then I highly doubt that there

1  are going to be facts that are developed that are going to

2  change the landscape of the ruling on the motion for judgment

3  on the pleadings.  It could happen and it could not happen, but

4  I doubt that you're going to be able to develop any facts that

11:03:05    5  are going to change the ruling if I decide not to toss it out.

6          So at that point you're going to trial on that claim,

7  at which point then you go to trial on both claims probably.

8  All right.  See you here on the 14th.

9          MS. HEGGIE:  Thank you, Your Honor.

11:03:32    10          THE COURT:  You're welcome.

11          MR. NEWBURGER:  Thank you.

12          THE COURT:  You're welcome.

13    (Proceedings concluded.)

14             C E R T I F I C A T E

15      I, Patrick J. Mullen, do hereby certify that the

16  foregoing is a complete, true, and accurate transcript of the

17  proceedings had in the above-entitled case before the Honorable

18  SARA L. ELLIS, one of the judges of said Court, at Chicago,

19  Illinois, on January 31, 2018.

20

21                     */s/ Patrick J. Mullen*
                            Official Court Reporter

22                            United States District Court
                            Northern District of Illinois

23                            Eastern Division

24

25