1    IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3

```
 4   MARCELINO CENTENO, et al.,        )   Nos. 17 C 5233
                                       )         17 C 5695
 5                    Plaintiffs,      )         17 C 5897
                                       )         17 C 6098
 6              vs.                    )         17 C 6676
                                       )
 7   LVNV FUNDING, LLC, et al.,        )   Chicago, Illinois
                                       )   February 14, 2018
 8                    Defendants.      )   9:45 a.m.
```

9

TRANSCRIPT OF PROCEEDINGS
10    BEFORE THE HON. SARA L. ELLIS

```
11
     APPEARANCES:
12
     For the Plaintiffs:    MS. CELETHA CHATMAN
13                          Community Lawyers Group, Ltd.,
                            73 West Monroe Street, Suite 514,
14                          Chicago, Illinois  60603

15
     For the Defendants:    MR. MANUEL H. NEWBURGER
16                          Barron & Newburger PC,
                            7320 North Mopac Expressway, Suite 400,
17                          Austin, Texas  78731

18                          MS. CORINNE HEGGIE
              `             Scharf Banks Marmor LLC,
19                          333 West Wacker Drive, Suite 450,
                            Chicago, Illinois  60606

20

21

22
```

23    PATRICK J. MULLEN
Official Court Reporter
24    United States District Court
219 South Dearborn Street, Room 1412
25    Chicago, Illinois 60604
(312) 435-5565

1      THE CLERK:  2017 C 5233, Centeno versus LVNV Funding;

2  2017 C 5693, Akins versus LVNV; 2017 C 5897, Lemke versus LVNV;

3  2017 C 6098, Johnson versus LVNV; 2017 C 6676, Plewa versus

4  LVNV Funding.

5      MS. CHATMAN:  Good morning, Your Honor.  Celetha

6  Chatman on behalf of plaintiffs.

7      MS. HEGGIE:  Good morning, Your Honor.  I'm Corinne

8  Heggie on behalf of LVNV Funding and Resurgent Capital

9  Services.  Also appearing by phone will be Mr. Newburger.

10     THE CLERK:  One moment.

11    (Brief pause.)

12     MR. NEWBURGER:  (Via telephone) Good morning.  This is

13  Manuel Newburger.

14     THE CLERK:  Good morning, counsel.  Your are now

15  before Judge Ellis.  Please state the party that you represent.

16     MR. NEWBURGER:  This is Manual Newburger.  I represent

17  defendants LVNV and Resurgent.

18     THE CLERK:  Thank you.

19     THE COURT:  All right.  So we are here on the motion

20  to compel the deposition of plaintiffs' counsel that I entered

21  and continued.  Before we get to that, with regard to the other

22  plaintiffs, has everybody been deposed now?

23     MR. NEWBURGER:  All plaintiffs except Ms. Plewa, Your

24  Honor.

25     THE COURT:  All right.  And what's the status with

1    Ms. Plewa?

2         MS. CHATMAN:  Well, the status with Ms. Plewa, Your

3    Honor, is that we've gone to her house an additional three

4    times.  We were just at her house yesterday.  We spoke to her

10:49:09    5    son.  We asked her to -- we asked her son to remind her to come

6    to court today, Your Honor.  We've tried to contact her via

7    phone.  We sent her a letter.  We have not been able to get in

8    contact with her, Your Honor.  You know, at this point we're

9    going to be filing a motion to withdraw from her case because

10:49:28    10    we haven't been able to contact her.

11         THE COURT:  All right.  Then I am going to dismiss her

12    case for want of prosecution.  So that case, the Plewa case,

13    which is 17 C 6676, it is dismissed for want of prosecution.

14    All right.  But other than that, all the depositions have been

10:50:08    15    completed for the other plaintiffs, is that correct?

16         MS. CHATMAN:  That is correct, Your Honor.

17         THE COURT:  All right.  Then you need to finish the

18    deposition of the defendants' 30(b)(6) because that wasn't

19    done.  That wasn't finished, right?

10:50:30    20         MS. HEGGIE:  Correct, Your Honor.

21         THE COURT:  Okay.  Do you have a date for that, to

22    finish that?

23         MS. CHATMAN:  We don't have a date to finish that

24    deposition, Your Honor.  We didn't know that defendants were

10:50:44    25    going to be seeking to continue their deposition.

| | |
|---|---|
| 1 | THE COURT:  Well, so hold on. |
| 2 | MR. NEWBURGER:  I can -- |
| 3 | THE COURT:  So the deposition started at 1:00 o'clock. |
| 4 | MS. CHATMAN:  It did. |

10:51:04

5    THE COURT:  Everybody had to be out of there by 5:00
6    o'clock, right?

7    MS. HEGGIE:  Yes, Your Honor.

8    THE COURT:  Yes?

9    MS. CHATMAN:  According to defendants, yes, Your

10:51:14

10   Honor.

11   THE COURT:  Okay.  So that means that there was four
12   hours of deposition time that was used, right?

13   MS. CHATMAN:  Yes, Your Honor.

14   THE COURT:  And under the rules it's seven hours,

10:51:30

15   right?

16   MS. CHATMAN:  That's correct.

17   THE COURT:  So we've got three hours left where
18   defendants can ask questions as well.  So we need to set a date
19   to finish that up, right?

10:51:51

20   MS. HEGGIE:  Yes, Your Honor.

21   MR. NEWBURGER:  May I speak to that, Your Honor?

22   THE COURT:  Ms. Chatman?

23   MS. CHATMAN:  Yes, Your Honor.

24   THE COURT:  Okay.  Yes, Mr. Newburger?

10:52:03

25   MR. NEWBURGER:  Your Honor, I've already spent now two

1    days in Greenville, South Carolina on this.  We made our

2    witness available from 9:00 until 5:00.  The deposition didn't

3    actually start until 1:49 because Ms. Chatman didn't get her

4    exhibits there properly.  If I have to fly back to South

5    Carolina to finish this, it's going to cost my client

6    substantial expense which I don't think they should have to

7    bear given the fact that Ms. Chatman chose to schedule the

8    deposition the way she did.

9         I made it clear on the record.  I tried very hard to

10   be clear to Mr. Finko that I was not faulting him.  He got

11   brought in to take the deposition, and I can't blame him for

12   matters beyond his control.  He didn't cause the mess with the

13   over 1,000 pages that had to be sent to Regis.  He didn't pick

14   the time for the deposition.  Mr. Finko is not at fault, but

15   Ms. Chatman is.

16        THE COURT:  Yes, but here's the thing.  You got a

17   deposition notice, correct?

18        MR. NEWBURGER:  Yes, Your Honor.

19        THE COURT:  Okay.  And on the notice, did it say 1:00

20   p.m.?

21        MR. NEWBURGER:  It did, Your Honor.

22        THE COURT:  Okay.  So then if you got the deposition

23   notice and it said 1:00 p.m. and you knew you had the room from

24   9:00 to 5:00, and you knew that there were questions that you

25   wanted to ask, and you probably had a suspicion that you

10:52:21

10:52:42

10:52:59

10:53:05

10:53:23

1    weren't going to get to it, then call and say this isn't going

2    to work, right, because we need to start at 9:00?

3        MR. NEWBURGER:  Ordinarily that would be true, Your

4    Honor, but I think if I had as little as 30 minutes I could

10:53:47   5    have done my questions.  Therein lies the problem.  Had we

6    started on time, I've been very efficient in this case, Your

7    Honor.  No plaintiff's deposition has taken, I don't think,

8    more than three hours, and most of them have taken under three

9    hours.  I have tried diligently not to waste time in this case.

10:54:07  10    Had we not --

11        THE COURT:  I'm not -- Mr. Newburger, I'm not faulting

12    you in saying that you were wasting any time.  I'm just saying

13    that if you have an idea that you are not going to have time to

14    get done what you want to get done in one day, make sure that

10:54:27  15    you have it set up so that you can get everything done in a

16    day, right?  You don't have control over what time the

17    deposition actually starts, and the only thing you know is that

18    everybody has to be out of there at 5:00 o'clock.

19        MR. NEWBURGER:  Well, Your Honor, I can't argue the

10:54:50  20    points you just made.  The only two things I would suggest to

21    the Court are, one, we did tell Ms. Chatman affirmatively that

22    our witness was available starting at 9:00 and, second, as I

23    say, had Ms. Chatman not messed up the exhibits, had we started

24    at 1:00 when Mr. Finko was ready to go because Mr. Finko was on

10:55:10  25    the line and ready to go at 1:00, I would have gotten to ask my

1    questions.

2         THE COURT:  I understand, but we can't -- you can't

3    control that.  You can only control what you can control,

4    right?

10:55:21    5         MR. NEWBURGER:  Understood, Your Honor.

6         THE COURT:  All right.  So how much longer do you have

7    to ask your questions of this witness?

8         MR. NEWBURGER:  I think I could finish in 30 minutes.

9    I certainly should be able to finish in under an hour.

10:55:41   10         THE COURT:  Okay.  Then in terms of any questions that

11   plaintiffs would want to ask this witness following the

12   defendants' questioning of their witness, how long?

13         MS. CHATMAN:  It shouldn't take me more than 30

14   minutes, Your Honor.

10:55:57   15         THE COURT:  All right.  So --

16         MR. NEWBURGER:  Excuse me, Your Honor.  One point.

17   Ms. Chatman doesn't get to ask questions.  Only one lawyer

18   should be speaking per witness, and that's Mr. Finko.

19         THE COURT:  Well, whoever it is.

10:56:08   20         MR. NEWBURGER:  Okay.

21         THE COURT:  Whoever it is, you know, Mr. Newburger.

22         MR. NEWBURGER:  I apologize.

23         THE COURT:  So here's the thing, right?  I'm not

24   making you fly up here and appear before me, and I'm allowing

10:56:21   25   you to appear by phone as a courtesy, right?

1    MR. NEWBURGER:  And I thank you for that, Your Honor.

2    THE COURT:  I've read more than I need to read about

3    these cases and the ins and outs on how these cases have been

4    litigated.  Frankly, the monkey business and posturing is on

5    both sides.  So whether it's Mr. Finko who finishes up the

6    questioning, whether it's Ms. Chatman who finishes up the

7    questioning, whoever it is, somebody is going to finish up the

8    questioning, and at this point to be quite honest I don't care

9    who it is as long as it gets done because this case needs to be

10   done.  So how long do plaintiffs need to finish up their

11   questioning?

12   MS. CHATMAN:  30 minutes, Your Honor, no more than 30

13   minutes.

14   THE COURT:  All right.  So defendants have an hour,

15   and plaintiffs have 30 minutes.  When can we get this scheduled

16   so it gets done, and is there a way to do it by video

17   conference so that we don't have to pay for people flying out

18   to South Carolina?

19   MR. NEWBURGER:  Your Honor, I will find out if that

20   can be done.  I need to find out the witness's availability.  I

21   did not know that you would require us to finish it, and I

22   apologize for that.  I can send an e-mail right now.

23   THE COURT:  Well, don't you want to?

24   MR. NEWBURGER:  I do, Your Honor.

25   THE COURT:  Mr. Newburger, don't you want to finish

1    it?

2              MR. NEWBURGER:  Well, actually I had hoped you would

3    bar use of it.  But failing that, yes, Your Honor, I do.  I'm

4    not disagreeing in the least.  I'm writing the witness right

5    now and seeing if I could find out when she is available for

6    the deposition, but certainly I think we can do it in the next

7    three weeks.

8              THE COURT:  All right.

9              MR. NEWBURGER:  And I would propose that if -- Your

10   Honor, there should be no reason why we shouldn't be able to

11   agree on a date.  I'll just put it this way.  I've have had

12   more discovery hearings in this case than I think in most of

13   the cases I've handled in my entire time I've been licensed in

14   this district.  I have a hard time believing we shouldn't be

15   able to find a date we can agree on.

16             THE COURT:  Okay.  So then I am going to extend fact

17   discovery through March 9th.  Is this it then?  This is the

18   last thing that needs to be done?

19             MR. NEWBURGER:  Well, other than the question of

20   Ms. Chatman's deposition and the question of my fees that you

21   ordered at the last hearing.

22             THE COURT:  Okay.  But otherwise, in terms of

23   discovery, this is it.

24             MR. NEWBURGER:  The last discovery that we would need

25   other than that, Your Honor, and I think plaintiff hasn't

1    requested any other discovery.

2         MS. CHATMAN:  That's correct.

3         THE COURT:  All right.  So I'm going to extend fact

4    discovery through March 9th.

10:59:30
5         Now turning to the deposition of Ms. Chatman, first of

6    all, Mr. Newburger, have you -- did you send a copy of the

7    letter that you sent me to Ms. Chatman?

8         MR. NEWBURGER:  I did, Your Honor.

9         THE COURT:  Okay.  So, Ms. Chatman, you received a

10:59:51
10   copy of that letter?

11        MS. CHATMAN:  Which?  Just so I'm clear, Your Honor,

12   which?  I received a lot of documentation.  I want to --

13        THE COURT:  So it is a letter dated February 7th that

14   was sent to me with a copy of the depositions.

11:00:09
15        MR. NEWBURGER:  Actually, I think Ms. Heggie's office

16   may actually have sent that, Your Honor.

17        MS. HEGGIE:  Your Honor, yes, my office sent it in the

18   mail to Ms. Chatman and Mr. Finko because Ms. Chatman doesn't

19   want to receive things via e-mail in the case.  We don't have

11:00:25
20   consent for electronic service other than what's filed through

21   ECF.

22        THE COURT:  Okay.

23        MS. CHATMAN:  Well, I haven't had a chance to look at

24   it, Your Honor.

11:00:33
25        THE COURT:  I would have hoped that you would have

1   looked at it, Ms. Chatman, because this letter levies some

2   serious ethical allegations in the letter --

3          MS. CHATMAN:  Okay.

4          THE COURT:  -- that I wanted to address, and I was

11:00:50   5   going to give you the opportunity to respond.

6          MS. CHATMAN:  Okay, Your Honor.  Can you give me

7   additional time because I haven't had a chance to look at this

8   letter?

9          THE COURT:  So one of the reasons that defendants

11:01:07   10   believe they should be entitled to depose you is that you were

11   contacting LVNV Funding and Resurgent knowing that they were

12   represented, at a time that you knew they were represented by

13   counsel.

14         MS. CHATMAN:  Like I said, Your Honor, I haven't had a

11:01:32   15   chance to review this letter.  I do not know what they're

16   referring to.

17         THE CLERK:  (Handing document to counsel.)

18      (Brief pause.)

19         THE COURT:  All right.  I'll take the letter back.

11:05:11   20   MS. CHATMAN:  Your Honor, I would say that when we

21   send out these letters -- I'm sorry -- usually in my experience

22   when we send out these letters, it's usually more efficient to

23   send them to the direct person who marks the accounts as

24   disputed, Your Honor.  So I don't think we --

11:05:38   25         THE COURT:  So my question to you is:  Were you aware

1    that -- at least with regard to Ms. Plewa and Ms. Akins, when

2    you sent those letters, were you aware that LVNV was

3    represented by counsel?

4              MS. CHATMAN:  Represented by counsel?  Your Honor,

11:06:00    5    they were suing Ms. Akins and Ms. Plewa in state court.

6              THE COURT:  Right.

7              MS. CHATMAN:  I don't think that's the same.

8    Honestly, I don't think that's the same thing.

9              THE COURT:  The same thing?  It's over the same debt,

11:06:15    10    right?

11             MS. CHATMAN:  So it's --

12             THE COURT:  It was over the same debt, is that

13    correct?

14             MS. CHATMAN:  It is over the same debt.

11:06:23    15             THE COURT:  Okay.  Were you aware that both of your

16    clients at the time you sent the letter were being sued in

17    state court over this debt by LVNV?

18             MS. CHATMAN:  I knew they were being sued, Your Honor.

19    I guess, Your Honor, this is -- we've never gotten anything

11:06:53    20    from LVNV saying that they want us to send letters directly to

21    their lawyers, to their lawyer's law firms, Your Honor.  That's

22    usually not how it works.

23             THE COURT:  Well, most of the time when somebody is

24    disputing a debt and they're coming to you for assistance,

11:07:21    25    they're not being sued in state court over the same debt,

1  right?

2       MS. CHATMAN:  It's halfway and half, Your Honor.

3  Sometimes they are.

4       THE COURT:  Okay.  So, I mean, this allegation is

5  fairly serious in that what defendants are alleging is that you

6  were basically attempting to create a cause of action by

7  sending this letter to their clients as opposed to the attorney

8  and saying that your clients disputed this debt at the same

9  time that LVNV is suing your clients in state court over the

10 debt.

11      So it is a fairly serious allegation, but I don't

12 believe that this entitles defendants to depose Ms. Chatman

13 over this issue because this issue is not -- doesn't relate to

14 the ambiguity issue but, rather, you know, this is potentially

15 an ethical violation that might relate to sanctions.  But I

16 don't know that it relates to whether the letters in and of

17 themselves are ambiguous.

18      Mr. Newburger, what's your position?

19      MR. NEWBURGER:  Your Honor, the concern we've got is

20 this.  As you've seen from the testimony I've provided, at

21 least two of the plaintiffs have acknowledged the letters can

22 be read more than one way.  My client asserts that it read them

23 as complaining about the credit reporting agency.  When they

24 got the first document that said the amount is disputed, which

25 was the complaints, they updated the credit reports.

1          So the difficulty we have is we believe that these

2    were artfully worded letters designed to create the very cause

3    of action at issue here.  We have evidence of that in that

4    Ms. Chatman has handled a multitude of other cases with much

11:10:24   5    more specifically worded letters that say things like:  The

6    debt is disputed.  My client disputes the debt.  The amount is

7    disputed.

8          But to make it worse, she knew my client had counsel.

9    She sent these letters to a generic fax number at LVNV where

11:10:39   10   clerks, non-lawyers, had to make a decision about what that

11   letter meant, depriving my client of the ability to have a

12   lawyer interpret that letter, the lawyer whom she knew was

13   representing LVNV.  So the question we're --

14          THE COURT:  Well --

11:10:56   15          MR. NEWBURGER:  I'm sorry, Your Honor.  You wanted to

16   speak.  I don't want to interrupt.

17          THE COURT:  Well, except just to follow up on what you

18   just said, you know, we've got this 30(b)(6) deposition of your

19   client and I know that it's not finished yet and that you will

11:11:12   20   have the opportunity to ask questions, and so I'm not, you

21   know, making any rulings at this point because, you know,

22   you're going to be able to ask questions to the witness and

23   there will be a much more full record once the deposition is

24   complete.  But it's my understanding that your client has

11:11:37   25   certain policies and procedures in place to deal with letters

1    that they receive from debtors.

2         MR. NEWBURGER:  That is true, Your Honor.

3         THE COURT:  Okay.  So I don't -- I guess I'm not

4    following the logic of why it is, and frankly it doesn't make a

5    difference whether the debtors believe that the language in the

6    letter is ambiguous or even whether the 30(b)(6) witness

7    believes that the language in the letter is ambiguous.  I think

8    that whatever the phrasing is, that's a question of law as to

9    whether that letter is ambiguous.  Would you disagree with me?

10        MR. NEWBURGER:  I think ultimately you're going to be

11   making that decision, Your Honor, yes.

12        THE COURT:  Okay.

13        MR. NEWBURGER:  But to the extent that a plaintiff

14   concedes the point, I think we do get to argue that it has been

15   admitted under oath.  In other words, if a party judicially

16   admits something by admitting it under oath, it seems to me

17   that becomes a relevant issue.  But I understand the Court's

18   point.  May I elaborate on --

19        THE COURT:  I think, you know, arguably I guess it's

20   relevant, but really, you know, at this point you've got

21   dueling lay representations about whether the language in the

22   letter is ambiguous, right?  You've got your 30(b)(6) witness

23   saying it's not ambiguous and that there are policies in place

24   to deal with letters of this type, and then you've got the

25   plaintiffs saying it is ambiguous and could be read that the

1   credit reporting agency is wrong versus there is something

2   inaccurate about the debt itself that the plaintiff is

3   disputing.

4           MR. NEWBURGER:  Your Honor --

5           THE COURT:  But it's a question of law as to whether

6   that language is disputed or not.

7           MR. NEWBURGER:  And I think, again, I think you're

8   correct, Your Honor.  I think you're going to be making that

9   determination.  I think what I failed to do is articulate to

10  the Court the context.  The context is this.  The specific

11  statutory violation at issue is -- and I'm quoting:

12  "communicating or threatening to communicate to any person

13  credit information which is known or should be known to be

14  false, including the failure to communicate that a disputed

15  debt is disputed."

16          It's not a disputed credit report, a disputed debt.

17  As you see from the testimony, each of the four plaintiffs

18  says:  I owe it.  I'd pay it even today if I could.

19          THE COURT:  Right, and so that is, you know, something

20  that I will consider on the motion for summary judgment which I

21  assume defendants are going to be filing, right?

22          MR. NEWBURGER:  Yes, Your Honor.

23          THE COURT:  Which is, if it is that none of the

24  plaintiffs are disputing the amount of the debt, that they are

25  not disputing the interest rate that was applied, that they are

1    not disputing the terms of the debt, that they are saying, you

2    know, "we ran up this debt and we would have paid it, it is a

3    legitimate debt and unfortunately I was out of work, I was on

4    disability, whatever it is, and I could not pay the debt but

5    there was nothing wrong with it," then, you know, that is going

6    to go to whether plaintiffs can meet the statutory elements of

7    the Fair Debt Collection Practices Act.

8        So what Ms. Chatman's intent was in terms of writing

9    the letter the way she did, I just don't see that it's relevant

10   to whether the language was ambiguous or not, because she could

11   have fully intended it to be unambiguous but I may find the way

12   that it was worded is that it was ambiguous and, therefore,

13   doesn't meet the elements of the statute.

14       She could have fully intended it to be ambiguous and

15   kind of tricked the defendants and I could find, no, this was

16   clear that the debt was being disputed and her intent is not

17   relevant as to whether it meets the statutory elements.  It's a

18   whole other question about whether these cases were brought for

19   legitimate purposes.  That's something else.

20           MR. NEWBURGER:  And I understand.

21           THE COURT:  But that doesn't go to the statutory

22   elements, though.

23           MR. NEWBURGER:  I understand the Court's position,

24   Your Honor.  If I may just make one additional argument, I want

25   to be clear, Your Honor.  I don't argue judges' rulings.  So

1  until you rule, I'll try to persuade you.  Once you rule, I

2  won't argue.

3      I've been doing this for 34-plus years, and I think

4  this is the first time I've tried to depose a plaintiff's

5  lawyer on an issue such as this.  And there is another factor,

6  which is that we've raised the defense of failure to mitigate.

7  Had Ms. Chatman followed her ethical duties in communicating

8  with my client, had she written the letter in a manner

9  consistent with her other cases, we might not be here.  I

10  believe, again, the question of whether she could have taken

11  reasonable steps to be consistent with her other cases and to

12  follow the rules of professional conduct comes into play.

13      Now, the Court may have the same answer for me and I

14  recognize that, but I don't want to fail to call to the Court's

15  attention the fact that we have raised the defense of failure

16  to mitigate, which means that Ms. Chatman should have taken

17  reasonable steps to avoid the actual damages that she says her

18  clients have suffered.

19      I can't get to what they are because plaintiffs'

20  counsel won't calculate them, won't quantify them, and won't

21  say anything other than the phrase "garden variety mental

22  anguish damages" even in their MDIP disclosures.  But they

23  allege actual damages, and we would contend those were caused

24  by Ms. Chatman.

25      THE COURT:  Well, then that is something that we can

1  deal with if and when we get to that point.  But right now I

2  think what you're trying to do is get to where you're in a

3  position to file a motion for summary judgment on the legal

4  issue of whether plaintiffs could meet the elements based on

11:19:40   5  the evidence that you have pursuant to the statute, and this

6  issue of ambiguity is a question of law.  So when it comes to

7  damages, I think that that is something separate and apart from

8  these issues that are going to be raised on summary judgment

9  because you're not -- I don't believe what you're saying is

11:20:17   10  that -- I mean, there's still statutory damages, correct?

11              MR. NEWBURGER:  That is correct, Your Honor.

12              THE COURT:  Okay.  So, you know, even if we were to

13  cut out the mental anguish and all of that other stuff, there

14  still are these statutory damages.  I hear what you're saying,

11:20:50   15  but I think that that is something that if we need to deal with

16  that later, then we will deal with that later.  But right now I

17  don't think that it's appropriate to depose Ms. Chatman on the

18  issue of why she drafted the letters the way she drafted them.

19              You know, there are lots of reasons, some nefarious

11:21:15   20  and some not, as to why she may have changed the language in

21  the letters.  It could be that, you know, after litigating

22  these cases, the language previously resulted in summary

23  judgment for the defendants in prior cases.  So it was a legal

24  strategy to change the language going forward in the best

11:21:48   25  interest of her clients, which is a completely reasonable and

1 legitimate thing to do.  Then it could be something else, but I

2 just don't think at this point we've reached where it's

3 relevant as to what her intent was in changing the language.

4    MR. NEWBURGER:  I understand that to be the Court's

5 ruling, Your Honor, and I think I've given you my arguments.

6 So it is clear, your position on that.

7    THE COURT:  So I'm going to extend discovery through

8 March 9th.  I understand that you'll be filing a motion for

9 summary judgment, right?

10    MR. NEWBURGER:  Once discovery is closed, yes, Your

11 Honor.

12    THE COURT:  Okay.  So why don't we set a briefing

13 schedule now so that we don't have to come back.

14    MR. NEWBURGER:  That's a great idea, Your Honor.

15    MS. CHATMAN:  Your Honor, just so I am clear, these

16 cases were consolidated for discovery purposes only.  So will

17 we be filing four separate motions for summary judgment?

18    THE COURT:  I think it would make sense if you filed

19 one motion for summary judgment that covered, I guess, what's

20 now three cases, because Plewa is gone, right?

21    MS. CHATMAN:  Four.

22    MS. HEGGIE:  Four, Your Honor.

23    THE COURT:  Oh, four?

24    MS. HEGGIE:  Yes.

25    THE COURT:  Okay.  So four, because the issue is going

11:22:20

11:22:48

11:23:01

11:23:32

11:23:40

1    to be the same in every case, right, the legal issue?

2         MS. HEGGIE:  Yes.

3         THE COURT:  Because it's the same letter in every

4    case.

11:23:48  5         MR. NEWBURGER:  It is, Your Honor.  The ambiguity

6    issue will certainly be the same in each of the cases.

7         THE COURT:  Okay.

8         MR. NEWBURGER:  However, only two of them, I believe,

9    involve circumstances where Ms. Chatman had knowledge of my

11:24:00  10    clients' representation by counsel so, you know, I don't think

11    that's enough reason to burden you or any other judge with

12    multiple motions on what are essentially the same set of legal

13    issues.

14         THE COURT:  Yes.  So what I have you do for your

11:24:18  15    statement of material facts, I have you do a joint statement.

16         MS. HEGGIE:  Yes.

17         THE COURT:  I'll allow you to -- this is a fairly

18    straightforward case so try to stick within the 120 paragraphs,

19    but if you need to go over a little bit, you can go over.  But,

11:24:41  20    you know, break out like a separate set of paragraphs for each

21    plaintiff because, you know, one has a Capital One credit card

22    account and one has whatever.

23         MS. HEGGIE:  We can do headings that way, Your Honor.

24         THE COURT:  So do headings that way so that I can keep

11:25:03  25    track of the four plaintiffs.  But then, you know, I would

1  assume that the rest of the facts are going to fall in line

2  with the rest of plaintiffs because it's the same letter and

3  the same language.

4  MR. NEWBURGER:  I think much of that is true, Your

5  Honor.  I've read the Court's procedures on this.  I know

11:25:22

6  Ms. Heggie is familiar with them, and I'll probably let her

7  take the lead on working that out to be sure it's done the way

8  you require.

9  THE COURT:  Okay.  All right.  So when can you get --

10  so March 9th would be the close of fact discovery.  When could

11:25:38

11  you get the defendants' motion on file?

12  MS. CHATMAN:  Plaintiff will -- it will be

13  crossmotions, Your Honor.

14  THE COURT:  Okay.  That's fine.  If you want, you can

15  do it one of two ways.  You can cross-move simultaneously, or I

11:25:55

16  can stagger it so that defendants move first and then

17  plaintiffs file a cross-response and crossmotion.  Which way

18  would you prefer?

19  MR. NEWBURGER:  I would suggest whichever the Court

20  finds to be the most efficient and the least wasteful of your

11:26:15

21  time, Your Honor.  I've done it both ways.

22  THE COURT:  Well, I have to read everything anyway, so

23  it's whatever is easiest for you.

24  MS. HEGGIE:  I would prefer staggering, Your Honor.

25  THE COURT:  Okay.  All right.  So for defendants --

11:26:28

1          MS. CHATMAN:  Can plaintiffs move first if we stagger
2    the matters?
3          MR. NEWBURGER:  I won't object to that, Your Honor.
4          THE COURT:  That's fine.  All right.  Plaintiffs can
5    go first.
6          MR. NEWBURGER:  I'm not picking a fight on that.
7          THE COURT:  Okay.  That's fine.  So plaintiffs' motion
8    for summary judgment, when do you want to get it on file?
9          MS. CHATMAN:  Can we have -- since fact discovery
10   closes March 9th, can we have 45 days thereafter, Your Honor?
11         THE COURT:  Sure.
12         THE CLERK:  April 24th.
13         THE COURT:  All right.  Then defendants' response and
14   crossmotion?
15         MR. NEWBURGER:  Might we have 30 days, Your Honor?
16         THE COURT:  Sure.
17         MR. NEWBURGER:  Full disclosure to the Court, I'm
18   going to be bumping up against a problem.  It is likely that I
19   will be out of the country starting somewhere around the week
20   that includes June 7th.  I teach FDCPA law in the Philippines
21   and India every year for one of my corporate clients, and I
22   know I'm scheduled to leave around then.  So I want to be sure
23   I've got as much of this done by then as possible.  I think
24   that leaves enough time.  I know I can work while I'm
25   traveling, but it gets much more difficult.

1    THE COURT:  Sure.  Well, we'll work around that.

2    MR. NEWBURGER:  Thank you.

3    THE COURT:  Let's see.  So the response and

4  crossmotion then would be due May 24th.

11:28:04  5    MS. HEGGIE:  May 24th.

6    THE COURT:  All right.  Then plaintiffs' reply and

7  cross-response?

8    MS. CHATMAN:  May we have 28 days?

9    THE COURT:  I'm sorry?

11:28:15  10    MS. CHATMAN:  May we have 28 days?

11    THE COURT:  All right.

12    THE CLERK:  So that's June 21st.

13    THE COURT:  All right.  Then defendants' reply --

14  cross-reply?

11:28:29  15    MR. NEWBURGER:  I'm just looking, Your Honor.  I've

16  got a -- Ms. Chatman and I have a docket call on June 28th on a

17  case here in Austin.  If that case still remains, I don't know

18  what Judge Sparks is going to do, but I would suggest I think

19  June 6th would give me enough time.  I'm sorry.  July 6th.  I

11:28:56  20  apologize.  Oh, wait.  We've got the July 4th holiday, Your

21  Honor.  I'm sorry.  Would the Court mind if we took till July

22  13th?

23    THE COURT:  No, that's fine.

24    MR. NEWBURGER:  Thank you.

11:29:12  25    THE COURT:  Then why don't you come back on November

1    13th for a ruling on the motions for -- crossmotions for

2    summary judgment, and that will be at 9:30.

3          MS. HEGGIE:  9:30?  Okay.

4          THE COURT:  Then lastly what's the issue with regard

11:29:30    5    to your costs, Mr. Newburger?  Have those been paid?

6          MR. NEWBURGER:  They have not.  Ms. Chatman complained

7    that my time was too much, and I offered to reduce it by 1.5

8    hours.  That money comes out of my pocket because I won't

9    charge my client if she's not paying it given the Court's

11:29:47    10    ruling.  I have not heard back.

11          MS. CHATMAN:  The issue, Your Honor, the hotel costs

12    and the flight, we understand, but Mr. Newburger was charging,

13    I think, six hours for waiting at the airport.  So I think we

14    had an issue with that.

11:30:06    15          THE COURT:  Well, Mr. Newburger had to --

16          So, Mr. Newburger, what would your flight have been

17    originally?

18          MR. NEWBURGER:  Originally I would have gone out that

19    night, Your Honor.  But had I known that Ms. Plewa wasn't

11:30:29    20    showing up, I would have switched to the previous night's

21    flight at 7:30, not flying during business hours and being home

22    the night before.  Instead, I had to go to O'Hare and wait till

23    I could get home that day.  We already knew Ms. Chatman wasn't

24    showing, so I would have arranged to leave the night before but

11:30:49    25    for expecting to be there for Ms. Plewa.

1    THE COURT:  So --

2    MR. NEWBURGER:  I know Ms. Chatman doesn't control --

3  I'm sorry.  I don't want to interrupt.

4    THE COURT:  That's all right.  What time did you get

5  to O'Hare?

6    MR. NEWBURGER:  Your Honor, that I'd have to check.

7  If you'll bear with me, I was looking for the time I sent her

8  on this.

9    THE COURT:  Yes, just let me -- read to me what the

10  time is.

11    MR. NEWBURGER:  I apologize.  It will take me just a

12  moment, I think.  I'm searching for that now, Your Honor.

13    THE COURT:  Okay.  If you recall, what was the total

14  amount?

15    MR. NEWBURGER:  I know the difficulty is it was

16  approximately 6.1 hours of time on the traveling back.  Part of

17  that was time spent getting to the airport in traffic, but much

18  of it was time spent just waiting till I could get on a plane

19  to fly home and then the time it took to get home.  Ms. Chatman

20  complained that I would have had to go home from the airport no

21  matter what.  I didn't think she was unreasonable in saying it

22  was a lot of time, which is why I had offered to reduce the

23  time to address that concern.

24    THE COURT:  The travel time.

25    MR. NEWBURGER:  Yes, Your Honor.

11:30:58
11:31:07
11:31:31
11:31:55
11:32:09

1          THE COURT:  Okay.  So the travel time, I agree.  I

2    think that that should be reduced because no matter what, you

3    would have been going home from the airport, whether it was the

4    night before or the next day.

11:32:26    5          MR. NEWBURGER:  I agree.

6          THE COURT:  Okay.  You believe that that was an hour

7    and a half?

8          MR. NEWBURGER:  No.  Actually, it only takes me about

9    30 minutes to get home from the airport.  I was trying to

11:32:40   10    accommodate on more than just that.

11          THE COURT:  Okay.

12          MR. NEWBURGER:  Again, I anticipated the Court would

13    expect me to bend and, therefore, I tried to do that.  But it

14    only takes me a half-hour to get home from the airport.

11:32:53   15          THE COURT:  All right.  Then you would have to do that

16    anyway, so we will take off that half an hour.  But with regard

17    to the time that you spent at the airport waiting to get a

18    flight back, that's time that should be compensated.  With

19    Ms. Plewa, had it been clear that Ms. Plewa was not going to

11:33:39   20    come and had counsel known about that, then he wouldn't have

21    been waiting around trying to get a flight back.  So that needs

22    to be paid.

23          MR. NEWBURGER:  And, Your Honor, I completely agree

24    with the Court.  But in all fairness I did offer to reduce my

11:33:55   25    time by an hour and a half, and I won't break my word.  So

1  unless the Court is saying you're overruling that offer, I

2  would still maintain my offer to reduce my time.  My clients

3  won't suffer because I won't charge them that time.  I just

4  don't like breaking my word.

11:34:14
5          THE COURT:  Ms. Chatman, are you going to accept the

6  offer?

7          MS. CHATMAN:  Well, Your Honor, I just want some

8  clarification about the sanctions, because I thought that the

9  order said that plaintiffs were sanctioned.  So is this

11:34:28
10  sanctioned against plaintiffs?  I guess I don't believe the

11  other plaintiffs in this case should be sanctioned.

12          THE COURT:  No, the sanction was against your law

13  office and you.

14          MS. CHATMAN:  Oh, okay.

11:34:48
15          THE COURT:  Hopefully next time you will let people

16  know ahead of time when things aren't going to happen.

17          MS. CHATMAN:  I guess I would say respectfully, Your

18  Honor, we did everything we could in this case.

19          THE COURT:  There have been multiple examples,

11:35:15
20  Ms. Chatman, so let's not go down that road.  Let's not go down

21  that road.  There have been multiple times when we've had --

22  when things have been rescheduled, and we have had multiple

23  discovery disputes in this case because people were not clear

24  about what was going to happen when.  So let's not go down that

11:35:47
25  road.

1          So what is the total now, Mr. Newburger?

2          MR. NEWBURGER:  Your Honor, I apologize.  I'm

3    frustrated.  I was trying to find that e-mail, and for some

4    reason my system is not pulling it up.  I am embarrassed, and I

5    sincerely apologize.

6          MS. HEGGIE:  I may have it.

7          THE COURT:  Oh, that's all right.  Ms. Heggie is

8    looking to see if she has it.

9          MR. NEWBURGER:  I'm very embarrassed.

10          THE COURT:  Do you know what that was?

11          MS. CHATMAN:  I think it was about eight hours, Your

12    Honor, because I think he charged -- off the top of my head,

13    the first two entries weren't very long, less than two hours.

14    His largest entry was the six hours.  So I think total, just

15    without any deductions, it was around $4,000.  I think it was

16    $4,402, something like that.

17          MR. NEWBURGER:  I thought it was just under that, but

18    it's in that range.  I think Ms. Chatman is certainly in the

19    ballpark.  So the Court knows, Your Honor, LVNV is billed at a

20    reduced rate of $75 off my standard hourly rates, which are

21    still below market.  The discounted rate that they are charged

22    is the rate at which I requested reimbursement.

23          THE COURT:  Okay.  So we will deduct an hour and a

24    half of your time off of that total bill, whatever that is.

25          So, Ms. Chatman, when will that be paid?

1       MS. CHATMAN:  Within two weeks, Your Honor.

2       THE COURT:  So it needs to be paid no later than

3 February 28th.

4       MS. CHATMAN:  That's fine.

11:37:28  5       THE COURT:  If it is not paid, then we're going to

6 have some problems.

7       MS. CHATMAN:  We plan on paying it, Your Honor.

8       THE COURT:  Okay.  When I ordered it paid the last

9 time, we're here because it wasn't paid.

11:37:51  10       MS. CHATMAN:  Well, okay, Your Honor.  Yes, Your

11 Honor.

12       THE COURT:  All right.  Then we'll see everybody back

13 here in November for a ruling.

14       MR. NEWBURGER:  Thank you, Your Honor.

11:38:05  15       MS. CHATMAN:  Thank you, Your Honor.

16       THE COURT:  Okay.  Thank you.

17       MS. HEGGIE:  Your Honor?

18       THE COURT:  Yes?

19       MS. HEGGIE:  I'm sorry.  There's one housekeeping

11:38:13  20 matter.

21       THE COURT:  Sure.

22       MS. HEGGIE:  Ms. Chatman filed a motion for leave to

23 file a sur-reply which is set for hearing, I think, the 20th of

24 February.  I presume that will be stricken.

11:38:22  25       THE COURT:  Yes, that's stricken.

1        MS. HEGGIE:  Okay.  Thank you, Your Honor.

2        THE COURT:  Okay.  Thanks.

3     (Proceedings concluded.)

4                    C E R T I F I C A T E

5        I, Patrick J. Mullen, do hereby certify that the

6   foregoing is a complete, true, and accurate transcript of the

7   proceedings had in the above-entitled case before the Honorable

8   SARA L. ELLIS, one of the judges of said Court, at Chicago,

9   Illinois, on February 14, 2018.

10

11                         */s/ Patrick J. Mullen*
                          Official Court Reporter
12                        United States District Court
                          Northern District of Illinois
13                        Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25